UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORA MELIE, M.D., | Case No.:  08 CV 5226 |
| Plaintiff, | |
| -against- | |
| EVCI/TCI COLLEGE ADMINISTRATION, PETER SLATER, SAYED AKHAVI and NANNETTE JACOBS, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... -ii-

PRELIMINARY STATEMENT ..................................................................... 1

PLAINTIFF'S ALLEGATIONS ..................................................................... 3

ARGUMENT.................................................................................................. 6

   THE STANDARDS FOR A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)....... 6

POINT I ......................................................................................................... 7

   PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE HE
   WAIVED HIS RIGHT TO RECOVER UNDER THE FACTS ALLEGED WHEN HE
   FAILED TO SUE WITHIN 90 DAYS OF RECEIPT OF THE FIRST RIGHT-TO-SUE
   LETTER ON OCTOBER 23, 2006.............................................................. 7

POINT II ........................................................................................................ 8

   PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED  BECAUSE HE
   FAILS TO ALLEGE FACTS SUPPORTING ANY OF HIS CLAIMS.................................. 8

POINT III...................................................................................................... 16

   PLAINTIFF FAILS TO STATE AN ERISA CLAIM BECAUSE HE WAS NOT DENIED
   ANY BENEFITS BY DEFENDANTS AND FAILED TO EXHAUST HIS
   ADMINISTRATIVE REMEDIES. .......................................................... 16

POINT IV...................................................................................................... 18

   PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY OF THE INDIVIDUAL
   DEFENDANTS....................................................................................... 18

CONCLUSION............................................................................................... 19

Zerilli-Edelglass v. New York City Transit Authority,
333 F.3d 74 (2d Cir. 2003).........................................................................................7

## FEDERAL STATUTES

42 U.S.C. § 1981......................................................................................2, 3, 8, 19

42 U.S.C. § 2000e-5(f)(1)..........................................................................................7

29 U.S.C. § 1002(3) (2008).......................................................................................16

29 U.S.C.§ 1140.......................................................................................................17

6

# TABLE OF AUTHORITIES

## FEDERAL CASES

Baldwin County Welcome Ctr. v. Brown,
466 U.S. 147 (1984)..............................................................................................7

Belfi v. Prendergast,
191 F.3d 129 (2d Cir. 1999)................................................................................11

Bell Atlantic Corp. v. Twombly,
127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).........................................................6

Benaim v. HSBC Bank USA,
94 F. Supp. 2d 518 (S.D.N.Y. 2000)..................................................................18

Bennett v. New York City Department of Corrections,
705 F. Supp. 979 (S.D.N.Y. 1989) .....................................................................11

Cianfrano v. Babbitt,
851 F. Supp. 41 (N.D.N.Y. 1994), cert. denied, 439 U.S. 984 (1978) .........................13

Dawson v. Bumble & Bumble,
398 F.3d 211 (2d Cir. 2005)..................................................................................8

Dister v. Continental Group, Inc.,
859 F.2d 1108 (2d Cir. 1988)...............................................................................17

Gebhardt v. Allspect, Inc.,
96 F. Supp. 2d 331 (S.D.N.Y. 2000).....................................................................6

Georgy v. O'Neill,
No. 00 Civ. 0660, 2002 U.S. Dist. LEXIS 4825 (E.D.N.Y. Mar. 25, 2002) ..................12

Gray v. Board of Higher Education,
692 F.2d 901 (2d Cir. 1982)....................................................................................8

Green v. Maraio,
722 F.2d 1013 (2d Cir. 1983)..................................................................................6

Hector v. Wal-Mart Group Health Plan,
100 F. Supp. 2d 135 (N.D.N.Y. 2000)....................................................................18

Kennedy v. Empire Blue Cross and Blue Shield,
989 F.2d 588 (2d Cir. 1993)............................................................................17, 18

Leonelli v. Pennwalt Corp.,
887 F.2d 1195 (2d Cir. 1989)..................................................................18

Lightfoot v. Union Carbide Corporation,
110 F.3d 888 (2d Cir.1997).....................................................................17

Ludwig v. NYNEX Serv. Co.,
838 F. Supp. 769 (S.D.N.Y. 1993) ..........................................................18

Luxenberg v. The Guardian Life Insurance Co. of America,
2004 U.S. Dist. LEXIS 3121 (S.D.N.Y. Mar. 2, 2004) ............................13

Mormol v. Costco Wholesale Corp.,
364 F.3d 54 (2d Cir. 2004)......................................................................18

Oliveras v. Garage Management Corporation,
2000 U.S. Dist. LEXIS 12928 (S.D.N.Y. 2000) ....................................9, 10

Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon,
541 U.S. 1 (2004)....................................................................................16

Readington v. Staten Island University Hosp.,
06-4152-CV, 06-4179-CV, 81, 11 ............................................................6

Sanders v. N.Y. City Human Resource Admin.,
361 F.3d 749 (2d Cir. 2004).................................................................8, 9

Shamoun v. Board of Trustees, Liquor Salesmen's Union Local 2 Pension Fund,
357 F. Supp. 2d 598 (E.D.N.Y. 2005) ......................................................18

Snell v. Suffolk County,
782 F.2d 1094 (2d Cir. 1986)............................................................11, 14

Tomassi v. Insignia Finance Group, Inc.,
478 F.3d 111 (2d Cir. 2007).....................................................................12

Venti v. EDS,
236 F. Supp. 2d 264 (W.D.N.Y. 2002) ....................................................13

Weinstock v. Columbia University,
224 F.3d 33 (2d Cir. 2000).................................................................1, 14

Wimmer v. Suffolk County Police Department,
176 F.3d 125 (2d Cir. 1999).....................................................................15

Defendants Technical Career Institutes, Inc. ("TCI") (incorrectly named "EVCI/TCI College Administration" in the Complaint), Peter Slater, Sayed Akhavi and Nannette Jacobs, (the "Individual Defendants") (collectively referred to herein as "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their motion to dismiss Plaintiff's Amended Complaint pursuant to F.R.C.P. 12(b)(6).

## PRELIMINARY STATEMENT

As referenced in Plaintiff's Amended Complaint, ¶9(A), on September 25, 2006, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race and national origin discrimination. (Ex. "1"). On October 23, 2006, Plaintiff was issued a Dismissal and Notice of Rights. (Ex. "2"). Plaintiff failed to bring suit within 90 days of October 23, 2006. On February 27, 2007 Plaintiff filed a second, identical charge of discrimination with the EEOC, again alleging race and national origin discrimination based on the same operable set of facts he alleged in September 2006, but this time asserting claims against the individually named Defendants. (Ex. "3"). On March 5, 2008, the EEOC issued a Dismissal and Notice of Rights. (Ex. "4"). Plaintiff commenced suit in the instant action May 30, 2008.

Plaintiff filed an Amended Complaint August 19, 2008, (Ex. "5") asserting a list of claims for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Employment Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA").

Plaintiff's complaint should be dismissed because Plaintiff fails to state a claim for which relief can be granted.[1]

---

[1]      Plaintiff alleges no specific claims under the New York State Human Rights Laws (NYSHRL) except to claim pendant jurisdiction in Paragraph 2 of the Amended Complaint. Moreover, even if he did, such claims should also be dismissed as the standards of review are identical to Title VII. See Weinstock v. Columbia University, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (noting "identical standards" apply to employment discrimination claims brought

1

As a threshold matter, Plaintiff failed to commence suit within 90 days of receipt of his first Notice of Rights on October 23, 2006.   Filing a second, identical charge of discrimination in February 2007 after he waived his rights to sue on the facts alleged cannot resurrect the rights he waived.

Plaintiff has not suffered an adverse employment action and remains employed by TCI subject to the terms of a Collective Bargaining Agreement ("CBA"), as he has been since 2001.   Even if a part time teaching schedule for one semester following a reduction in the school's enrollment, made in accordance with the CBA is construed as an adverse employment action, Plaintiff fails to allege any facts that would suggest such action was taken because of a discriminatory animus on the part of Defendants.

Additionally, Plaintiff did not suffer retaliation because the alleged retaliatory conduct, reassignment to a part-time teaching schedule, occurred *before* Plaintiff filed his first Charge of Discrimination with the EEOC.   Consequently, Plaintiff's Amended Complaint for retaliation against TCI should be dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Plaintiff utterly fails to state an ERISA claim because (1) he has not been denied any ERISA protected benefits to which he is entitled and (2) he has failed to fulfill administrative prerequisites prior to bringing a claim under ERISA.   Indeed, Plaintiff is still employed and receiving the benefits associated with his job position.

Moreover, all of the individual Defendants should be dismissed from the action. Title VII and ERISA do not provide for individual liability.   As for Plaintiff's alleged claim under 42 U.S.C. § 1981, he makes no allegations relative to Nannette Jacobs or Sayed Akhavi

---

under Title VII...[and] New York Executive Law § 296).  Thus, Defendants request to the extent Plaintiff may be deemed to allege NYSDHRL claims, they should be dismissed as well.

alleging race or national origin discrimination. Plaintiff's single allegation against Dr. Slater that he made a comment regarding Plaintiff's nationality is insufficient as a matter of law to sustain his claim under 42 U.S.C. § 1981. Finally, Plaintiff made no factual allegations under New York State law or even identified what New York State laws he claims were violated, therefore his claims against the individual Defendants in this respect should be dismissed.

<u>**PLAINTIFF'S ALLEGATIONS**</u>

Plaintiff Ora Melie was hired by TCI on May 10, 2001 to teach Computer Networking and Engineering. He remains employed in this capacity to date. Throughout his employment, Plaintiff has been a member of Professional Union Local 2110-UAW-AFL-CIO. His employment is subject to a CBA, including provisions for layoff in the event of a downturn in class enrollment. (Amended Complaint, ¶7, and Ex. "6").[2]

On or about September 16, 2005, EVCI purchased TCI, and Dr. John J. McGrath, President of EVCI met with TCI faculty shortly thereafter. During that meeting Plaintiff alleges Dr. McGrath made a comment disparaging black males and further alleges the comment was directed to Plaintiff personally. (Amended Complaint at ¶ 9(F)).

Plaintiff alleges TCI'S March 24, 2006 call to the New York City Police to investigate whether Plaintiff had a gun was a pretext to discharge him. (Amended Complaint at ¶ 9(A)). Contrary to this allegation, Plaintiff was obviously not discharged because of the incident as evidenced by his continued employment to the date of this writing. Additionally, Plaintiff raised no factual allegations to show Defendant's call to the New York City Police was precipitated by bias because of race or nationality.

---

[2]    The facts set forth herein are based upon the Amended Complaint and documents referenced therein, attached to the Affirmation of Marjorie Kaye, Jr., dated September 5, 2008.

Sometime in or about June, 2006, Plaintiff alleges he met with Dr. Peter Slater, TCI's Vice President, to discuss Plaintiff's request to attend a Microsoft seminar in Boston. (Amended Complaint at ¶ 9(G)). Plaintiff alleges that during this meeting, Dr. Slater made a disparaging remark about Nigeria as a place of unrest, the country of Plaintiff's origin. (Amended Complaint ¶ 9(G)). Plaintiff does not allege that the comment had any impact on his request to attend the seminar, which request was approved.

On August 9, 2006, Plaintiff was appointed coach of TCI's intramural soccer team and paid a stipend of $2,500.00 under terms of an agreement he signed, separate and apart from the terms of his employment under the CBA. (Ex. "7")

On August 29, 2006, Plaintiff was informed that due to reduced student enrollment he would not be provided with a full-time teaching load. He was further informed that the selection of faculty to receive reduced course loads was made in accordance with the CBA (Amended Complaint at ¶ 9(B)) (See also, Letter from Peter Slater, dated August 29, 2006 referenced in Plaintiff's Amended Complaint; Ex. "8"). At no time did Plaintiff's employment cease, and Plaintiff was not "laid off." Instead, per the terms of the CBA, Plaintiff's employment status for the Fall 2006 semester was changed from full time to part time, effective September 13, 2006. (Ex. "6").

After Plaintiff was notified of the reduction in his teaching assignments, on September 25, 2006, Plaintiff filed a Charge of Discrimination with the EEOC, Charge No. 520-2006-03916 ("First Charge") against TCI, alleging employment discrimination on the basis of race. (Ex. "1"). The EEOC dismissed the First Charge, finding no probable cause and issued Plaintiff a Right-To-Sue letter on October 23, 2006. (Ex. "2"). Plaintiff did not commence suit within 90 days of receipt of the October 23, 2006 Right-To-Sue Letter.

On October 5, 2006, Plaintiff was removed from his position as a soccer coach for TCI's intramural team by the Athletic Director, Pernell Hosier. (Amended Complaint at ¶ 9(C)) (Ex. "9").

Plaintiff alleged during the Fall 2006 semester he was removed as an unpaid open house representative because he had threatened to sue the college. (Amended Complaint at ¶9(C)).

In March, 2007, Plaintiff was restored to full time status retroactive to January 18, 2007 and continued to work as an instructor in TCI's Computer Networking and Engineering department. (Ex. "10").

On February 2, 2007, Plaintiff filed another Charge of Discrimination with the EEOC, Charge No. 520-2007-00055 ("Second Charge") adding the individual Defendants named herein and alleging the same facts as set forth in his first agency charge, claiming discrimination on the basis of race and national origin. (Ex. "3"). The EEOC dismissed the Second Charge, finding no probable cause and issued Plaintiff a Right-To-Sue letter on March 5, 2008. (Ex. "4").

On May 23, 2007, Plaintiff's employment status for the Summer 2007 and Fall 2007 semesters was changed from full-time to part-time, eliciting no protest from Plaintiff. (Ex. "11"). Plaintiff continued to be employed by TCI and received the benefits afforded to him under the CBA.

On January 15, 2008, Plaintiff resumed a full time teaching schedule as TCI made arrang and Plaintiff continues to work as a professor in TCI's Computer Networking and Engineering department. (See Ex. "12").

On or about May 30, 2008, Plaintiff filed a Complaint with this Court alleging employment discrimination on the basis of race and national origin and unlawful retaliation. Plaintiff subsequently filed an Amended Complaint on or about August 19, 2008.[3]

## ARGUMENT

### THE STANDARDS FOR A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

When deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court must accept as true all well-plead factual allegations, since a motion to dismiss for failure to state a claim tests only the legal sufficiency of a complaint. See, e.g., Green v. Maraio, 722 F.2d 1013, 1015 (2d Cir. 1983). However, in order to avoid dismissal a plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions." Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000). To survive a motion to dismiss, the plaintiff cannot rely on a "formulative recitation of the elements of a cause of action" and must at a minimum, sufficiently plead the facts underlying the claim "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); Readington v. Staten Island University Hosp., 06-4152-CV, 06-4179-CV, 81, *11 (2d Cir. December 14, 2007) (same).

---

[3]    Plaintiff's Amended Complaint is dated on the first page "April 19, 2008," but a check of the Court's docket for this case reveals that the Amended Complaint actually was filed on or about August 19, 2008.

## POINT I

### PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE HE WAIVED HIS RIGHT TO RECOVER UNDER THE FACTS ALLEGED WHEN HE FAILED TO SUE WITHIN 90 DAYS OF RECEIPT OF THE FIRST RIGHT-TO-SUE LETTER ON OCTOBER 23, 2006

After Plaintiff filed his first charge of discrimination, he received a Notice of Right to Sue Letter from the EEOC on October 23, 2006. However, Plaintiff did not bring suit based upon his first charge to the EEOC. Instead, after the time to file suit had passed, Plaintiff filed a second, identical charge of discrimination with the EEOC on February 27, 2007 and was again given a Right-To-Sue Letter on March 27, 2008. The only discernible difference between the two charges is that Plaintiff added individual defendants Peter Slater, Sayed Akhavi and Nannette Jacobs to his first charge, none of whom are subject to suit under Title VII. (See Point IV below).

Because Plaintiff failed to commence his action within 90 days of his receipt of the EEOC's first Notice of Right to Sue his Amended Complaint should be dismissed with prejudice. The law is well settled that a plaintiff seeking to assert discrimination claims under Title VII must commence suit within 90 days of receiving a Notice of Right to Sue from the EEOC. See 42 U.S.C. § 2000e-5(f)(1); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149 (1984). See also Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74 (2d Cir. 2003) (dismissing *pro se* plaintiff's Title VII complaint because it was filed ninety-two days after receipt of Notice of Right to Sue). The Supreme Court has specifically stated that the "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr., 466 U.S. at 152.

7

Here, the EEOC mailed a Notice of Right to Sue to Plaintiff, dated October 23, 2006. (Amended Complaint, ¶12), and he did not bring suit. Instead, Plaintiff filed a second identical charge with the EEOC after the 90 day window to bring suit had closed. Thus, Plaintiff's claims are time barred. The Court should dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## POINT II

### PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE HE FAILS TO ALLEGE FACTS SUPPORTING ANY OF HIS CLAIMS.

#### A.    PLAINTIFF FAILS TO STATE A DISCRIMINATION CLAIM BECAUSE HE HAS NOT ALLEGED AN ADVERSE EMPLOYMENT ACTION.

In order to state a cause of action for discrimination on the basis of race and national origin under Title VII, Plaintiff must set forth facts demonstrating (1) he is a member of a protected category; (2) he satisfactorily performed his job; (3) he was subjected to an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. Dawson v. Bumble & Bumble, 398 F.3d 211, 216 n.2 (2d Cir. 2005). In order to state a claim under 42 U.S.C. §1981, the plaintiff must prove the same elements as he would in a claim under Title VII of the Civil Rights Act of 1964, i.e., a prima facie case of discrimination. Gray v. Board of Higher Education, 692 F.2d 901, 905 n.8 (2d Cir. 1982). Here, Plaintiff's cause of action fails because he has not been subjected to an adverse employment action.

The law defines "adverse employment action" as "a materially adverse change in the terms and conditions of employment." Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of

8

benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). Plaintiff has not alleged any such treatment. Critically, Plaintiff's employment is dictated by the terms of the CBA and he *has remained employed in his faculty position since March 2001 up to and including the present date*. Plaintiff's allegations do not raise any issue of fact refuting this point.

Plaintiff's claim of being "laid off" in August of 2006 is simply untrue as reflected in the letter he received signed by Defendant Slater dated August 29, 2006 and relied upon by Plaintiff in his pleading. (Amended Complaint ¶9(B)). As the letter states, Plaintiff did not receive a full time teaching assignment because of insufficient student enrollment. (Ex. "8"). Plaintiff's change in status was effected pursuant to the CBA governing the terms and conditions of Plaintiff's employment. Specifically, the CBA directs that selection of faculty for full time assignments is based upon seniority. (Ex. "6" at pp. 34-36). Plaintiff cannot be said to have suffered an adverse employment action for Defendant's appreciation of the terms of the CBA governing his employment. In Oliveras v. Garage Management Corporation, 2000 U.S.Dist. LEXIS 12928, *9-*10 (S.D.N.Y. 2000), the court held that an offer of transfer to another location for plaintiff, a garage attendant, in accordance with the CBA, a transfer that would interfere with plaintiff's pastoral duties, was not an adverse employment action because the plaintiff would ultimately remain employed upon transfer. In this instance, Plaintiff taught all of his registered classes during the Fall 2006 semester. In the Spring 2007 semester, TCI, although still unable to assign Plaintiff a full tmie teaching schedule, assigned him a full time schedule through a combination of evening classes and a tutoring assignment in the Learning

9

Center.  As a result, Defendant's adherence to the terms of the CBA to reassign Plaintiff's teaching load in August 2006 should not be construed as an adverse employment action.

Plaintiff makes two further allegations that he was subjected to adverse employment actions.  First, Plaintiff alleged he was removed as the coach of TCI's intramural soccer team because he had commenced proceedings against the school.  TCI's intramural soccer coach position is not a term or condition of his employment as a faculty member of TCI.  It is a discrete, separate agreement between Plaintiff and the college which he agreed to when he became coach.  (Ex. "7").  Therefore, we respectfully submit that Plaintiff's removal as soccer coach cannot be construed as an adverse employment action as it has no impact on Plaintiff's status as faculty employed by TCI.

Finally, Plaintiff alleges that in the Fall of 2006, he was removed as a TCI open house representative.  Being an open house representative at TCI is an unpaid position, therefore, removing Plaintiff as an open house representative does not affect the terms and conditions of his employment and cannot qualify as an adverse employment action for the purposes of supporting his discrimination claim.  Id. at 755.

It is not in dispute that at all times relevant to the instant case Plaintiff has been and continues to be employed by Defendant in his original position as a member of the faculty.  Any changes to Plaintiff's employment status during his tenure were made in accordance with the terms of his CBA, based on student registration.  Because Plaintiff's terms and conditions of employment are dictated by the CBA, Plaintiff has not suffered any adverse employment actions for changes made pursuant to the CBA based on seniority rules to which Plaintiff and all other employees subject to the CBA agreed to be bound.

**B.    PLAINTIFF FAILS TO STATE A DISCRIMINATION CLAIM BECAUSE HE DOES NOT ALLEGE ANY FACTS GIVING RISE TO AN INFERENCE OF DISCRIMINATION.**

Plaintiff's discrimination claim should be dismissed because he fails to allege any facts giving rise to an inference of discrimination relative to any action taken during his employment by Defendants.  In order to sustain a claim of discrimination, a plaintiff must allege that an adverse employment action was taken against him *because* of a discriminatory animus on the part of his employer.  Belfi v. Prendergast, 191 F.3d 129, 139 (2d Cir. 1999) (holding "a Title VII plaintiff must also produce evidence of discriminatory animus in order to make out a *prima facie* case").  Here, Plaintiff must set forth facts that demonstrate Defendants took the claimed actions relative to him because they harbored a discriminatory animus toward him based on his race and Nigerian national origin.  He does not do so.

Indeed, Plaintiff's allegations of discrimination are at best isolated acts or comments, in at least one instance alleged to have been made by an individual who was not involved in decisions impacting Plaintiff.  For these reasons, the allegations cannot support his cause of action.  See e.g. Snell v. Suffolk County, 782 F.2d 1094, 1102 (2d Cir. 1986) (stating that a few isolated incidents of racial enmity do not give rise to a Title VII violation); Bennett v. New York City Dep't of Corrections, 705 F. Supp. 979, 982 (S.D.N.Y. 1989) (indicating that, in order to prove a racially hostile atmosphere, a plaintiff must prove more than a few isolated instances of racial friction).

Plaintiff alleges he was laid off in August 2006 due to "a discriminatory layoff policy based on race, national origin and color," but provides no facts to support his claim. (Amended Complaint at ¶ 15).  First, as set forth in Point II.A. supra, Plaintiff was not laid off. His transition to part-time status was mandated by the terms of the CBA that sets forth the process to follow when enrollment is not enough to sustain a full course load for all faculty.

11

That process was followed in the Fall 2006 semester. Moreover, Plaintiff was returned to full time status for the Spring 2007 semester. Significantly, Dr. Shah (Asian) who also received notice he would not be assigned a full time teaching load was restored to same for the Fall 2006 semester based upon his seniority. Mr. Morales, (Hispanic) was allotted sufficient hours in the Learning Center as a tutor in the Fall 2006 semester to obtain full time status. Mr. Shah and Mr. Morales' circumstances do not support Plaintiff's allegations that his reduction in course credits is racially motivated. Defendants respectfully submit that Plaintiff's speculative allegation without basis in fact is legally insufficient to plead discrimination and the claim should be dismissed.

Next, Plaintiff alleges that Dr. John J. McGrath, the President of EVCI, which purchased TCI in September 2005, made a disparaging comment about black males during an introductory faculty meeting. Notably, Plaintiff has not set forth a single allegation that indicates Mr. McGrath played any part in the decision to transition him to part time status in August 2006 or had any authority over the terms and conditions of Plaintiff's employment at all.

Second, the alleged comment, made in the Fall of 2005, predated Plaintiff's August 2006 appointment to part time faculty status by a year, belying any inference the two events were related or that the August 2006 event was borne of discriminatory animus. Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007) (holding, "the more remote and oblique the allegedly discriminatory remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination"); Georgy v. O'Neill, No. 00 Civ. 0660, 2002 U.S. Dist. LEXIS 4825, at *6 (E.D.N.Y. Mar. 25, 2002) (holding that alleged reference to national origin by non-decision maker six months prior to plaintiff's termination was "the kind of isolated stray remark insufficient, without more, to raise an inference of

discrimination"); Venti v. EDS, 236 F. Supp. 2d 264, 277 (W.D.N.Y. 2002) (holding that coworker's statement that plaintiff was "too old" to be pregnant did not support inference of discrimination because it was not connected to employer's decision to terminate and speaker had no input regarding termination decision). Plaintiff therefore cannot use this isolated comment as evidence of discrimination.

Finally, the alleged comment by Dr. McGrath, according to Plaintiff, was made to the entire faculty, negating any suggestion that it was made based upon *Plaintiff's* race or his Nigerian citizenship.

Plaintiff further alleges that on February 22, 2006, Defendant Jacobs enforced a decision by Defendant Akhavi to permit an allegedly less qualified faculty member to head TCI's faculty training. (Amended Complaint at ¶ 9(H)(i)). Even if true, this allegation contains no facts that would suggest Ms. Jacobs or Dr. Akhavi made their decisions *because* of Plaintiff's race of national origin, therefore the allegations do not state a valid claim. "Federal Courts are not in the business of adjudicating whether employment decisions are prudent or fair. Instead, [their] sole concern is whether unlawful discriminatory animus motivates a . . . decision.'" Luxenberg v. The Guardian Life Ins. Co. of Am., 2004 U.S. Dist. LEXIS 3121, at *22-23 (S.D.N.Y. Mar. 2, 2004). The issue in a discrimination case is "not whether the basis on which the employer acted was sound; it is whether that basis was lawful." Cianfrano v. Babbitt, 851 F. Supp. 41, 48 (N.D.N.Y. 1994) ("the law does not require . . . that employment be rational, wise or well-considered – only that it be nondiscriminatory"), cert. denied, 439 U.S. 984 (1978). Plaintiff merely alleges his subjective belief that he should have been granted the faculty training position claiming he was better qualified. This allegation is insufficient as a matter of law and should be dismissed.

Additionally, Plaintiff merely invokes the term "conspiracy" without any facts to attempt to link Plaintiff's change to part time faculty status in the Fall of 2006 to either Ms. Jacobs or Dr.. Akhavi. This speculative claim raises no inference of discrimination based upon race or national origin on the part of Defendants Jacobs and/or Dr. Akhavi and should be dismissed.

Finally, Plaintiff alleges a single comment was made by Defendant Dr. Peter Slater in June of 2006 that purportedly disparaged Nigeria. (Amended Complaint at ¶ 9(G)). At worst, it is an isolated comment, which as a matter of law cannot support a *prima facie* inference of discrimination. See Snell, supra, 782 F.2d at 1102.

Assuming, for the purposes of this motion, the comment was made, Plaintiff sets forth no facts to suggest the alleged comment was related to a decision, almost two months later, to transition Plaintiff to part-time status.[4] Plaintiff's only allegation in this respect is his conclusory and speculative statement that the legitimate business reason provided for reducing Plaintiff's course load – namely, a reduction in enrollment and the application of the CBA seniority system to assign courses to faculty in that circumstance - was false. (Amended Complaint, ¶H(iii)) See Weinstock, supra., 224 F.3d at 42 (upholding dismissal of discrimination claim where defendant "articulated a legitimate, non-discriminatory reason for the employment action"). In light of Plaintiff's utter failure to set forth facts linking Dr. Slater's alleged June 2006 comment to the August 2006 decision to reduce Plaintiff's teaching load, this allegation does not raise an inference of discrimination and therefore cannot support Plaintiff's claim of discrimination.

---

[4] In fact, the decision to reduce course assignments rests with Dean Pansy Jones, who is African American. Dr. Slater signed letters regarding reduction in teaching assignments to faculty as an administrative function.

14

**C.    PLAINTIFF FAILS TO STATE A RETALIATION CLAIM BECAUSE THE ALLEGED RETALIATORY CONDUCT OCCURRED *BEFORE* THE PROTECTED ACTIVITY OR DOES NOT CONSTITUTE AN ADVERSE EMPLOYMENT ACTION.**

In order for Plaintiff to state a cause of action for unlawful retaliation, he must allege (1) participation in a protected activity known to the employer; (2) an adverse employment action; and (3) a causal connection between the alleged adverse employment action and protected activity.  Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999). Here, Plaintiff's retaliation claim fails for several reasons.  First, as discussed in Point II.A. supra, Plaintiff has not alleged he was subjected to an adverse employment action.  Therefore, his retaliation claim fails as a matter of law and should be dismissed.

Even if Plaintiff's August 2006 transition to part time status could be construed as an adverse employment action, his retaliation claim still fails.  Plaintiff alleges that his protected activity consists of the first and second charge he filed with the EEOC.  (Amended Complaint at ¶ 9(A)).  The first charge was filed on or about September 26, 2006.  (Ex. "1").  Yet, Plaintiff's reassignment to part time status occurred on August 29, 2006, *some twenty-eight (28) days before Plaintiff filed his charge*.  Therefore, contrary to Plaintiff's allegation, Defendants could not have retaliated against him in August 2006 because he had not yet engaged in protected activity.

Finally, Plaintiff's alleged removal as soccer coach and open house representative cannot support his retaliation claim because, as discussed in Point II.A. supra, they are not adverse employment actions and neither position is part of his duties as faculty at TCI.  Indeed, while Plaintiff was removed from these positions, his employment continued uninterrupted. Accordingly, Plaintiff's retaliation claim fails because the alleged retaliatory conduct of reducing Plaintiff's teaching load occurred prior to Plaintiff's protected activity.  Removing Plaintiff as

soccer coach and as an open house host did not have any impact on the terms and conditions of his employment which at all times are subject to a CBA. Therefore, Plaintiff's retaliation claim should be dismissed as a matter of law.

## POINT III

### PLAINTIFF FAILS TO STATE AN ERISA CLAIM BECAUSE HE WAS NOT DENIED ANY BENEFITS BY DEFENDANTS AND FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

Plaintiff alleges in his First Cause of Action that Defendants violated ERISA by "depriving Plaintiff of most, if not all the substantial ERISA protected benefits of his employment" (Amended Complaint at ¶11). This claim must be rejected for several reasons. First, Plaintiff has remained employed in his original position since his hire in March 2001 and continues to receive benefits due him under the terms of the CBA. By contrast, the only specific lost "benefits" Plaintiff identifies in his Amended Complaint are the coaching assignment and unpaid open house representative positions, neither of which are an ERISA covered benefit.

Title I of ERISA defines the term "employee benefit plan" to encompass "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both." Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 7 (2004); 29 U.S.C. § 1002(3) (2008). The same omnibus section defines "participant" as "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . ., or whose beneficiaries may be eligible to receive any such benefit." Id.; 29 U.S.C. §1002(7) (2008). Plaintiff does not allege any employee benefit plan at all from which he is eligible to receive benefits nor does he specify any benefits denied to him. Plaintiff simply alleges that moving him from full-time to part-time status for the relevant period deprived him of unspecified benefits

covered under ERISA in violation of 29 U.S.C.§ 1140. At best, all he pleads is that a consequence of the temporary shift to part-time status was that he lost the opportunity to receive certain unspecified benefits.

First, It is well-established law in this circuit that no action lies under section 1140 where a plaintiff only claims, as Plaintiff does here,  that benefits were lost as a consequence of the employment action. Lightfoot v. Union Carbide Corporation, 110 F.3d 888,906 (2d Cir.1997) (No action under section 510 "[w]here an employee's ERISA claim is based only on a claim that the employee has been deprived of the opportunity to accrue additional benefits through more years of employment…."); Dister v. Continental Group, Inc., 859 F2d 1108, 1111 (2d Cir. 1988) ( No ERISA cause of action lies where the loss of pension benefits was a mere consequence of, or incidental to, a termination of employment.) Thus, as a matter of law, Plaintiff fails to state a claim under section 1140 of ERISA and Plaintiff's ERISA claim should be dismissed with prejudice .

Second, even assuming for the purposes of this motion that Plaintiff has identified ERISA covered benefits to which he was denied, and he passes the hurdle section 1140 presents to him, his ERISA claim still fails because Plaintiff did not exhaust the administrative process in the plans as a perquisite to bringing in these claims in this lawsuit.

"The doctrine of exhaustion of administrative remedies provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 592 (2d Cir. 1993).  The Second Circuit Court of Appeals recognizes and follows this "firmly established federal policy favoring exhaustion of remedies in ERISA cases." Id. at 594 (internal questions omitted).  Accordingly, a long line of Second Circuit precedent clearly establishes that a claimant must exhaust administrative remedies before an action may be brought under

§1132(a)(1)(B) of ERISA for denial of benefits.  See, e.g., Kennedy, 989 F.2d at 594; Shamoun v. Board of Trustees, Liquor Salesmen's Union Local 2 Pension Fund, 357 F. Supp. 2d 598, 602-603 (E.D.N.Y. 2005); Benaim v. HSBC Bank USA, 94 F. Supp. 2d 518, 519 (S.D.N.Y. 2000); Ludwig v. NYNEX Serv. Co., 838 F. Supp. 769, 781 (S.D.N.Y. 1993).  For example, in Hector v. Wal-Mart Group Health Plan, 100 F. Supp. 2d 135, 136 (N.D.N.Y. 2000), the plaintiff commenced an action for health benefits under an ERISA-covered employee benefit plan.  Id. at 135.  Because the plaintiff provided no evidence that he availed himself of the plan's appeal process before filing suit, the court dismissed the action due to plaintiff's failure to exhaust his remedies under the plan.  Id.

Here, Plaintiff's ERISA claim is also fatally flawed because he did not initiate, let alone exhaust, administrative remedies with respect to any claims for benefits.  Accordingly, because Plaintiff fails to allege he made a claim for benefits under any of the employee benefit plans prior to filing this action, Plaintiff's ERISA claim should be dismissed with prejudice for failure to exhaust his administrative remedies.

## POINT IV

## PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY OF THE INDIVIDUAL DEFENDANTS

It is well settled that Title VII and ERISA do not permit lawsuits against individual employees.  See Mormol v. Costco Wholesale Corp., 364 F.3d 54, 59 (2d Cir. 2004) (no individual liability under Title VII); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (holding, "in a [ERISA] recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable.").  Moreover, Plaintiff makes no allegation regarding any claims against the individually named Defendants under the New York State Human Rights Law.  Therefore, to the extent Plaintiff asserts such claims against the Individual Defendants, they should be dismissed as a matter of law.

18

Additionally, while 42 U.S.C. § 1981 does provide for individual liability, Plaintiff fails to make any allegation at all against Defendants Jacobs and Akhavi relating to race or national origin discrimination. Instead, Plaintiff merely alleges his subjective belief that he should have been granted a faculty position over another employee. Moreover, Plaintiff fails entirely to allege Ms. Jacobs or Dr. Akhavi had anything to do with the decision to reduce his teaching assignment in August 2006. Therefore, because Plaintiff's allegations against Dr. Akhavi and Ms. Jacobs contain no reference to or inference of discrimination based on race or Nigerian nationality, they should be dismissed in their entirety.

Finally, with respect to Defendant Slater, Plaintiff's lone allegation that Dr. Slater made a single disparaging comment regarding Nigeria is too isolated and remote to sustain an inference of discrimination. See Point II.B. supra. Further, Plaintiff cannot sustain a retaliation claim against Dr. Slater because Plaintiff's alleged protected activity occurred after Dr. Slater had taken his alleged retaliatory act. See Point II.C. supra. Therefore, Plaintiff fails entirely to state a cause of action against Defendant Slater.

Accordingly, should the Court decide not to dismiss the Complaint in its entirety, the Individual Defendants should be dismissed with prejudice for failure to state a cause of action against them.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss the Complaint should be granted because Plaintiff's Complaint fails to state a cause of action. In the alternative, this Court should dismiss the Individual Defendants because Plaintiff does not state a cause of action against any of them.

19

Respectfully submitted,

JACKSON LEWIS LLP
    59 Maiden Lane, 40th Floor
    New York, New York 10038
    (212) 545-4000

Dated: September 5, 2008
    New York, New York

By: _____
John A. Snyder II (JS-4708)
Marjorie Kaye, Jr. (MK-7141)
Paul P. Parisi (PP 3946)

ATTORNEYS FOR DEFENDANTS

20