UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORA MELIE, M.D.,

                              Plaintiff,

        -against-

EVCI/TCI COLLEGE ADMINISTRATION,
PETER SLATER, SAYED AKHAVI and
NANNETTE JACOBS,

                              Defendants.

Case No.: 08 CV 5226

**AFFIDAVIT OF MARJORIE
KAYE, JR. IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

STATE OF NEW YORK    )
                     )ss:
COUNTY OF NEW YORK   )

Marjorie Kaye, Jr., an attorney duly admitted to practice law before this Court, states under penalty of perjury as follows:

1.  I am an attorney with Jackson Lewis LLP, the attorneys of record for all Defendants named herein.

2.  I am fully familiar with the facts and procedural history of the instant matter and make this Affidavit based upon a review of the files in my office.

3.  I make this Affidavit in support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

4.  Attached hereto as Exhibit 1 is a true and correct copy of Plaintiff's initial charge of discrimination filed with the United States Equal Employment Opportunity Commission, dated September 25, 2006.

5.  Attached hereto as Exhibit 2 is a true and correct copy of a Dismissal and Notice of Rights regarding Plaintiff's initial charge of discrimination dated October 23, 2006.

6.  Attached hereto as Exhibit 3 is a true and correct copy of Plaintiff's second charge of discrimination filed with the United States Equal Employment Opportunity Commission, dated February 27, 2007.

7.  Attached hereto as Exhibit 4 is a true and correct copy of a Dismissal and Notice of Rights regarding Plaintiff's second charge of discrimination dated March 5, 3008.

8.  Attached hereto as Exhibit 5 is a true and correct copy of Plaintiff's Amended Complaint.

9.  Attached hereto as Exhibit 6 is a true and correct copy of the Collective Bargaining Agreement by and between Technical Career Institutes, Inc. and T.O.P. Local 2110 UAW-AFL-CIO, Instructors Laboratory Technicians and Maintenance Persons and attendant Memoranda of Agreement in place through the current date.

10. Attached hereto as Exhibit 7 is a true and correct copy of an agreement between Plaintiff and Defendant TCI for Plaintiff to coach the college's soccer team.

11. Attached hereto as Exhibit 8 is a true and correct copy of correspondence to Plaintiff dated August 29, 2006 from Dr. Peter Slater.

12. Attached hereto as Exhibit 9 is a true and correct copy of correspondence to Plaintiff from Pernell Hosier, Athletic Director for TCI discharging Plaintiff as soccer coach.

13. Attached hereto as Exhibit 10 is a true and correct copy of a payroll change notice dated January 18, 2007 and accompanying email reflecting restoration of Plaintiff to full time faculty status.

14. Attached hereto as Exhibit 11 is a true and correct copy of a payroll change notice dated May 10, 2007 reflecting Plaintiff's change in status from full time faculty to adjunct faculty.

15. Attached hereto as Exhibit 12 is a true and correct copy of a payroll change notice dated January 16, 2008 reflecting Plaintiff's change in status from part time to full time faculty.

Marjorie Kaye, Jr.

Sworn to before me this
5th day of September, 2008

Notary Public

Jason A. Zoldessy
Notary Public, State of New York
No. 02Z06150173
Qualified in New York County
Commission Expires July 24, 2010

# EXHIBIT 1

EEOC FORM 131 (5/01)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| TECHNICAL CAREER INSTITUTES, INC.<br>Personnel Director<br>320 West 31st Street<br>New York, NY 10001 | **Ora Melie** |
| | THIS PERSON (*check one or both*) |
| | [X] Claims To Be Aggrieved |
| | [ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**520-2006-03916** |

## NOTICE OF CHARGE OF DISCRIMINATION
### (See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act   [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by _____ a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Peter Holland,**<br>**Investigator** | **New York District Office - 520**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|
| *EEOC Representative* | |
| *Telephone* **(212) 336-3781** | |

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| October  16, 2006 | **Spencer H. Lewis, Jr.,**<br>**Director** | |

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA.  These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge.  (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below).  Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action.  The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected.  The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes.  The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made.  Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you.  If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ FEPA ☒ EEOC | 520-2006-03916 |

_____ and EEOC

| NAME Mr. Ora Melie | NUMBER 646 5228324 | |
|---|---|---|
| STREET ADDRESS CITY, STATE AND ZIP CODE 62 Danforth Ave   Jersey City   NJ   07305 | | DATE OF BIRTH 03/13/61 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (*If more than one list below*).

| NAME EVCI Corp/TCI Akhavi,Slater | NO. OF EMPLOYEES/MEMBERS THOUSANDS | TELEPHONE NUMBER 914-623-0700 212 594 4000 |
|---|---|---|
| STREET ADDRESS CITY, STATE AND ZIP CODE 1 Van Der Donck Street 2nd Floor Yonkers, NY 10701 TCI 320 W 31 St New York   NY 10001 | | COUNTY Westchester NY New York |
| NAME Local 2110 UAW | NO. OF EMPLOYEES/MEMBERS THOUSANDS | TELEPHONE NUMBER 212-387-0220 |
| STREET ADDRESS **Local 2110 UAW**, 113 University Place, 5th floor, **New York**, NY 10003 | | |

| CAUSE OF DISCRIMINATION BASED ON (*Check appropriate box(es)*) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE   ☒ COLOR   ☒ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN   ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (*Specify*) | March 24th 06 Gun Incident, Akhavi Aug 29th Termination Of Melie by Slater/Akhavi CONTINUING ACTION |

1. Upon the purchase of TCI by EVCI there was a formal introductory meeting to the faculty where a senior EVCI executive mentioned that most black men before the age of 35 have spent time in jail And that EVCI was committed to helping minorities. He also urged faculty to actively get involved in the high school recruiting process or jobs may be in jeopardy. Melie had been fruitful in procuring more minority students from queen's tech high and Boys and girls high school in Brooklyn. This level of involvement  still could not save the black mans job

2. Feb 22nd, 2006 Chair Roy Lau (chairman) assigns the faculty development training of exchange to Mr. Fortuna though Mr. Melie is fully certified than any other faculty member in exchange. In a meeting with Akhavi in his office he mentions that iif any other instructor had any one of melies credentials that they would be teaching the course. When asked to use his power as the dean to rectify the situation, he insisted that the sole decision of the dean was a more cost effective approach. According to the union rules these academic decisions are made by faculty. Other faculty members like Reyes and Aponte have been paid to present new technology to peer faculty.

3. March 24th 2006, Akhavi for gun possession "gun incident". Dean Akhavi falsified Statements to accuse, discredit, humiliates and possibly charges Mr. Melie for a federal crime.  The NYC police dept was on the scene shortly to verify the false accusation

4. May, 22nd 2006, Melie applies Thru Akhavi for Faculty development with Microsoft tech ed conference in Boston. Melie had a meeting with Dr. Slater in his office in which Slater mentioned that Melie was from Nigeria a part of the world in which the people were constantly fighting and unrest to explain Mr. Melies attitude. Melie Mentioned this to the union legal rep and reps to no avail  Mr. Melies proposed faculty training would never be considered or approved until on an email of June 6th to Dr. Slater.  Mr. Melie concluded that it was of racial intent that the proposal was not being considered. The next mourning on the 7th  Slater sent an email reluctantly approving the faculty development conference at Microsoft Tech Ed

5. June 26th 2006, Dr. Slater also insisted that though never in the history of tci has anyone been compensated half of their expenses while on a college approved conference; he would and did pay half of Melies costs. Melies findings at the conference were on Microsoft premium business product Sharepoint services in which Melie presented to curriculum committee with the support of dean Blake was excluded from the minutes under the watch of union rep Nanette Jacobs and VP Dr. Slater.

6. May 31st Akhavi harassment charges Melie of non response to his invalid question on certification for credit/grade

7. Aug 29th Dr. Slater sent Mr. Melie a layoff letter he considered to be based on the union seniority policy while there were many students yet to be registered. On Sept 20th   President Melville sent a public statement that our current enrolment of 3,284    students which supersedes that of last year. This data also suggests that the new students were the desired high school grads instead of mostly ATB students. If Mr. Melie based on the union seniority list could have a full schedule last fall, the why cant he have one this year that there are more registrants this fall?

   These items are beyond the scope of the union and its reps to resolve. The reps may work in concert with the administration to their benefit neglecting their initial charge to protect the union member. Also the NYPD involvement in the "gun incident " of 3/24/06

| I want this charge filed with the EEOC and the State FEPA.  I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – (When necessary to meet State and Local Requirements) |
| --- | --- |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>*Ora Melie*<br><br><br>Date<br>Charging Party (*Signature*) | SIGNATURE OF COMPLAINANT<br><br>*Ora Melie*<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE:<br>(Month, day and year)<br><br>09/25/2006 | 

CAROL BROWNE
Notary Public, State of New York
No. 01BR6098511
Qualified in New York County
Commission Expires Sept. 15, 2007

<u>Document Retention Notice **Pursuant to Charge Of Discrimination**</u>

YOU ARE HEREBY GIVEN NOTICE NOT TO DESTROY, CONCEAL OR ALTER ANY PAPER DOCUMENTS OR ELECTRONIC DATA INCLUDING DATA GENERATED BY OR STORED ON ANY COMPUTER OR COMPUTER STORAGE MEDIA (E.G., HARD DISKS, FLOPPY DISKS, BACKUP TAPES), THAT RELATE TO THE CLAIMS AND DEFENSES IN THE ACCOMPANYING CHARGE OF DISCRIMINATION. FAILURE TO COMPLY WITH THIS NOTICE, EITHER THROUGH INTENTIONAL ACTS OR NEGLIGENCE, CAN RESULT IN SANCTIONS FOR SPOLIATION OF EVIDENCE. SANCTIONS COULD INCLUDE MONETARY PENALTIES AND OTHER COURT-IMPOSED ACTION.

A.    Paper Documents to be Preserved:  Hard-copy information which should be preserved includes, but is not limited to:

1. Personnel files;
2. Employee data;
3. Payroll information;
4. Personnel policies, procedures, and regulations;
5. Letters, memoranda and notes;
6. All complaints of discrimination or unfair treatment;
7. All documents related to internal investigations; and
8. All other documents containing information relevant to the subject matter of the charge of discrimination.

Note that even where hard-copy documents exist, the Commission may still seek the same information in an electronic format simultaneously.

B.    Electronic Data to be Preserved:  Electronic information which should be preserved includes but is not limited to:

1. Electronic mail (e-mail) and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received which is relevant to the subject matter of the charge of discrimination;
2. Databases (including all records and fields and structural information in such databases), containing any reference to or information about the human resources or personnel information of your employees;
3. Word processing files, including prior drafts, "deleted" files and file fragments, containing information about or relevant to the subject matter of the charge of discrimination;
4. Electronic data files and file fragments created or used by electronic spreadsheet programs, where such data files contain information relevant to the subject matter of the charge of discrimination; and
5. All other electronic data containing information relevant to the subject matter of the charge of discrimination.

C. **Additional Procedures**: The following procedures should be observed or undertaken to further maintain potentially relevant electronic data:

1. **Online Data Storage on Mainframes and Minicomputers:** With regard to online storage or direct access storage devices attached to your mainframe computers or minicomputers: you should not modify or delete any electronic data files, "deleted" files, or file fragments existing at the time of the filing of this charge, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible.

2. Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes and Other Removable Electronic Media: With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that, at the time of the filing of the charge, contained any electronic data meeting the criteria listed in paragraph 1 above. You should stop any activity that may result in the loss of such electronic data, including rotation, destruction, overwriting or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with your computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes and all other media, whether used with personal computers, minicomputers or mainframes or other computers, and whether containing backup or archive data sets and other electronic data, for all of your computer systems.

3. Retention of Data Storage Devices: You should not to dispose of any electronic data storage devices or media that may contain electronic data meeting the criteria listed in paragraph 1 above.

4. Fixed Drives on Stand-Alone Personal Computers and Network Workstations: With regard to electronic data meeting the criteria listed in paragraph 1 above, which existed on fixed drives attached to stand-alone microcomputers or network workstations at the time of the filing of the charge. You should not alter or erase such electronic data, and should not perform other procedures (such as data compression and disk de-fragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and of completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings (including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies.

5. **Programs and Utilities:** You should preserve copies of all application programs and utilities, which may be used to process electronic data described herein.

6. Evidence Created Subsequent to This Notice: With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not be destroyed and you should take whatever steps are appropriate to avoid destruction of evidence.

# EXHIBIT 2

EEOC Form 161 (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Mr. Ora Melie**
**62 Danforth Avenue**
**Jersey City, NJ 07305**

From: **Equal Employment Opportunity Commission**
**New York District Office**
**33 Whitehall Street, 5th Floor**
**New York, New York 10004-2112**

☐ *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2006-03916** | **Rosemary Wilkes, Supervisor** | **212-336-3771** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statute(s).

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Spencer H. Lewis, Jr., District Director

10/23/06
*(Date Mailed)*

Enclosure(s)

cc:    **Respondent: Technical Career Institutes, Inc.**

# FACTS ABOUT FILING
# AN EMPLOYMENT DISCRIMINATION SUIT
# IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. New York State has four federal districts:

- The **United States District Court for the Southern District of New York** is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester.

- The **United States District Court for the Eastern District of New York** is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk.

- The **United States District Court for the Western District of New York** is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates.

- The **United States District Court for the Northern District of New York** is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneinda, Onandaga, Oswego, Otsego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's *pro Se* Attorney has offices at 10 Broad Street in Utica New York.

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit **must** be filed in U.S. District Court within **90 days** of the date you receive the enclosed final action. Once this 90 day period is over, unless you have filed suit, you will have lost your right to sue.

(Over)

## DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *pro se* complaint. Every district court has either a clerk or staff attorney who can assist you in filing *pro se*. To find out how to file a *pro se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file *pro se*, you must file your suit in the appropriate court within 90 days of receiving this mailing.

## WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists *pro se* complainants for specific instructions on how to seek counsel. The appointment of counsel in any *pro se* complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $250.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *pro se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

## HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association                                  New York State Bar Association
(312) 988-5522                                             (800) 342-3661

   National Employment Lawyers Association Referral Service
   (212) 819-9450

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

## HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. **If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.**

# EXHIBIT 3

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| T C I  College Administration<br>Director, Human Resources<br>320 West 31st Street<br>New York, NY 10001 | **Ora Melie** |

THIS PERSON (*check one or both*)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**520-2007-01904**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **16-APR-07** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by ___ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by ___ to ___

If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Peter  Holland,
Investigator**

*EEOC Representative*

*Telephone*  **(212) 336-3781**

**New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004**

Enclosure(s): [X] Copy of Charge

---

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE    [X] COLOR    [ ] SEX    [ ] RELIGION    [X] NATIONAL ORIGIN    [ ] AGE    [ ] DISABILITY    [X] RETALIATION    [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| March 21, 2007 | Spencer H. Lewis, Jr.,<br>Director | |

Enclosure with EEOC
Form 131 (5/01)

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| x | EEOC | 520-2007-01904 |

| New York State Division of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ora Melie | 646-522-8324 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 62 Danford Avenue | Jersey City   NJ   07305 | 03/13/1961 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| EVCI/TCI | 50+ | 212-336-0865 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 330 West 34th Street | New York   NY   10001 | New York |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| Peter Slater/Seyed Akhavi/Nannette Jacobs | 212-336-0865 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 330 West 34th Street | New York   NY   10001 | New York |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[X] RACE   [X] COLOR   [ ] SEX   [ ] RELIGION   [X] NATIONAL ORIGIN
[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST                    LATEST

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

See Addendum.

RECEIVED
FEB 2 8 2007
EEOC-NYDO-CRTIU

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | ANTHONY D. ENSANGO |
| | Notary Public, State of New York |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)* |
| Date   2/27/07   Charging Party *(Signature)* | 27/02/2007 |

EEOC FORM 5 (REV. 3/01)

## NATURE OF THE COMPLAINT

I have been retaliated against in my employment as an Technical Trainer/Instructor with the Technical Career Institute (TCI) at 330 West 34th Street New York, NY 10001 as a result of my having engaged in constitutionally protected activity, namely commencing a complaint or charge against TCI with the Equal Employment Opportunity Commission and on account of my race,[Black] national origin [African] and nationality [Nigerian].

## EMPLOYMENT CONTRACT

My employment is governed by an employment contract which guarantees a full time position with full benefits and salary of $55, 000 per annum at an hourly rate of $63.00 per hour for a forty hour week (19 contact hours) in the Computer Networking in the Engineering Division of the respondent. My employment is additionally regulated under a collective bargaining agreement between TCI and The Technical Office and Professional Union Local 2110 - UAW - AFL -CIO..

## MY QUALIFICATIONS

I hold a Baccalaureate degree in Communications and professional certifications as:

a)      MCP;
b)      MCT;
c)      MCSE (2003 Security & Messaging)
d)      MCSE (2000 Security & Messaging)
e)      MCSE (NT)
f)      MCSA (2003 Security & Messaging)
g)      MCSA (2000 Security & Messaging)
h)      CISCO CCNA
i)      CISCO Wireless
j)      Security+ (CompTIA)
k)      Network+ (CompTIA)
l)      A+ (CompTIA)

## STATEMENT OF FACTS

### *(1) My* Prior EEOC Charges/Complaints Nos : 520-2006-03916 & 520-2007-00055:

In or about March 24, 2006 without any basis and or any vestige of justification whatsoever, respondents wilfully made a false allegation and complaint to the police of, and concerning me that I was in possession of prohibited firearm on the premises of the institution and was threatening to cause violence and harm to named individuals. The complaint was determined by the police to be false and unfounded after an investigation.

It was later uncovered that the false and malicious complaint against me was only one in a chain of a pattern of racially motivated discrimination against me by respondents with the ultimate object of un justly removing me from my job, based on pretense.

I thereupon commenced my prior EEOC Charges/Complaints Nos. **520-2006-03916 & 520-2007-00055** against respondents.

### 2)    PRETEXTUAL LAY OFF

During the pendency and investigation of my complaints by the EEOC, in retaliation for my engagement in a protected activity namely, commencing a EEOC charge, and as a direct consequence thereof, respondents issued a letter dated August 29, 2006, discharging me from my employment as a full time employee on the pretext of a lay-off for the fall Term of 2006. To date I have not been recalled as a full time staff. The letter of August 29, 2006, read as follows;

> *"The final assessment of TCI's Fall, 2006 schedule indicates that there will not be enough sections running to offer classes to all of our faculty. Courses have been staffed in accord with the union's rules regarding seniority. Unfortunately, you will be among the faculty not receiving a full time teaching schedule for the upcoming term".*

## EVIDENCE OF PRETEXT:

a). As at August 29, 2006, when the letter was written, TCI was still conducting students registration exercise and therefore, it was presumptuous to make an assessment at the time for the fall term.

b). The report rendered by President of TCI for the Fall session 2006, indicates that TCI recorded a record enrolment of 3.284 students which was higher than the previous fall term. The school also reportedly recorded an ATB ratio of 60/40 in contrast with its goal and former ratio of 50/50. Interestingly, there were no lay offs during the previous fall term.

c). Additionally, TCI reported in an official statement of 9/12/06, that the official Student Loan Cohort Default Rate (CDR) received from the US Dept of Education was 2.3% "which marked the TCI's sixth year with a CDR under 5%". Thus, in terms of revenue, respondent was not in a worse position than the previous fall.

c) Only three lay off letters were issued variously to me, Mr. Sha Alarm and Mr. Vijilio Morales. Mr. Sha Alarm ranked senior to me while Mr. Vejilio Morales ranked junior to me. Mr. Sha Alarm however during the fall term notwithstanding the lay-off letter received his full schedule to remain a full time faculty member for the 2006 fall term in question and to date he has not been laid off. Mr. Vejilio Morales for his part was also not laid off but was assigned as an ESL instructor to make up for his full time faculty requirement.

d) By the provisions of collective bargaining agreement by virtue of my seniority, I should have had a first option to take up the ESL instructor position but by reason or retaliatory discrimination against me, respondent gave the position to Mr. Morales.

e). Respondents attempted to explain away their reason to by-pass me upon my union questioning the impropriety, by falsely characterizing me as "not qualified" to teach ESL. (English As A Second Language) to justify their preference for Mr. Vijilio Morales.

f). It was a requirement for my Baccalaureate degree in Communications to take and pass several courses in English Language, English Literature, Literature in English and English Communication skills over a period of 6 semesters. In contrast, Mr. Vijilio Morales, does not possess any formal English Language skills. He is qualified as a communications technician. Mr. Morales does have a previous experience instructing students in Mathematics in the learning center where ESL is offered but his performance richly disqualified rather than commended him for the position. Conceding, Mr. Vijilio Morales' mediocre past performance at the learning center respondents preferred to give him an accommodation rather than give me my rightful position respondents stated in their letter of 9/25/06, as follows:

> *"Since Mr. Morales' performance in the learning center during his last assignment there was less than optimal, he is asked to meet to discuss Management expectations for this position. As a faculty member, he will continue to report to Dean Ahkavi, but as a learning Center tutor, he will report to Jill Maggs, Vice president for Retention".*

3.    **STUDENTS PLUG AND PLAY ACTIVITIES**

Since in or about 2001, upon invitation of the students, I initiated and began hosting an extra curricular activity for the students in which with the approval of the school, the students engaged in a competition in a contest to determine the student who can build a computer in the least time. This competition enhances computer A+ skills of the students. Over the years, to the knowledge of the respondents, I have co-ordinated this competition. In the fall of 2006, however, respondents removed me from this position and Mr. Ahkavi stated specifically that since I had

commenced proceedings against the school, I was not welcome in any of the school's activities. The competition is organized under the aegis of "IT CERT Club", a student club.

4.    **OPEN HOUSE REPRESENTATIVE FOR TCI**

For a period of five years previously, I had represented the Networking and Electronic Security Systems (ESS)department at TCI open house school nights successfully. This was a paid position for which I earned wages on the average for six hours per day. In the fall 2006, and since then, I have been removed from said position without any justification. Specifically, as evidence of the retaliatory and discriminatory animus, Vice President Mr. Slater wrote that I had made it clear that I was commencing proceedings against the school, therefore I was not qualified to represent the school.

He Stated:

> "....*Secondly, and for the record, I am responsible for denying you the opportunity to do open house work. You have made no secret about your intentions to sue TCI, ..*"

5.    **UNDERLYING RACE, NATIONAL ORIGIN AND DISCRIMINATION ON THE BASIS OF NATIONALITY:**

The conduct of respondents is chiefly actuated by their deep seated prejudice against me as an individual of African descent and Nigerian National origin. None of the other faculty members similarly situated, who have unlike me, received preferential treatment rather than an adverse employment action, is of my race and/or national origin. Mr. Vijilio Morales who although junior to me in ranking but for whom I was passed over, is Hispanic. Mr. Shah Alarm who also received a letter of lay-off like me but who unlike me, was immediately fully reinstated is Asian. I believe that I was targeted for selective and special treatment because of my race,

national origin and nationality.

**Racially Provocative Pronouncement by CEO**: Upon information and belief, it is the policy of respondent TCI to be prejudiced against black people. In his maiden meeting with the faculty of the school, the CEO of EVCI, the parent company of respondent TCI Mr. McGrath speaking selectively and derogatively of and concerning people of black race and culture stated that at age 35, most if not all black males would have had a prison record, with the full knowledge of my presence there as a black male and with his full attention focused on me.

**Profiled as an Individual with a Violent Propensity**: On or about June 2006, when I applied for permission to proceed on a career enhancement seminar with Microsoft in Boston, Mr Peter Slater invited me to his office ostensibly to discuss and approve the seminar for me . Immediately upon my arrival in his office, after scornfully sizing me up with wearing a hateful look on his face, without any prompting, he stated that I had a violent propensity which is attributable to my nationality, Nigeria a place of unrest "where people are always killing each other". This he stated, explains my conduct.

**Profiled as an Individual Who Would Carry Prohibited Firearms:** The very kernel of my prior EEOC complaints is the selective treatment I received as a Black male by being profiled as "violent" with a propensity to carry prohibited firearms on my person at all times including within the school premises and for which respondents quickly invited the police to apprehend me.

_____
Ora Melie

SWORN TO BEFORE ME
THIS 27th DAY OF FEBRUARY, 2007.

ANTHONY O. EMENGO
Notary Public, State of New York
No. 02EM5070138
Qualified in Queens County
Commission Expires December 09, 2010

NOTARY PUBLIC

Page 6 of 7

## LIST OF SUPPORTING MATERIALS

1. Letter dated August 29, 2006 authored by Dr. Peter Slater, Vice President and Provost for Academic Affairs.

2. Email Letter dated September 18, 2006 authored by Dr. Peter Slater

3. Email letter dated 20, 2006 authored by Melville James.

4. E-mail letter dated October 23, 2006 authored by Dr. Peter Slater in which Dr. Slater stated the reasons for the adverse employment action meted to me in part as follows: ***Secondly, and for the record, I am responsible for denying you the opportunity to do open house work. You have made no secret about your intentions to sue TCI, ..***"

5. Collective Bargaining Agreement between TCI and The Technical Office and Professional Union **Local 2110 - UAW - AFL -CIO**.

6. Prior EEOC complaints Nos. **520-2006-03916 & 520-2007-00055**

EEOC FORM 131 (5/01)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **T C I  College Administration**<br>**Director, Human Resources**<br>**320 West 31st Street**<br>**New York, NY 10001** | **Ora Melie** |
| | THIS PERSON *(check one or both)*<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**520-2007-01904** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **16-APR-07**    a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by                to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
to
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Peter Holland,**
**Investigator**

*EEOC Representative*

*Telephone*   **(212) 336-3781**

**New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE   [X] COLOR   [ ] SEX   [ ] RELIGION   [X] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

## See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **March 21, 2007** | **Spencer H. Lewis, Jr.,**<br>**Director** | |

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

# EXHIBIT 4

EEOC Form 161 (1/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Ora Melie<br>62 Danford Avenue<br>Jersey City, NJ  07305 | From: | New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, NY  10004 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No.<br>520-2007-01904 | EEOC Representative<br>Roxanne Zygmund | Telephone No.<br>212-336-3764 |
|---|---|---|

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
#### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Spencer H. Lewis, Jr.,                March 5, 2008
Director                              (Date Mailed)

Enclosures(s)

cc:  Anthony C. Emengo, Esq.          Michael R. Cooper, Esq.
     472 Union Avenue, Suite 1000     JACKSON LEWIS, LLP
     Williamsburg, NY  11211          59 Maiden Lane
                                      New York, NY  10038

Enclosure with EEOC
Form 161 (1/08)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     --     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     --     Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

| | | |
|---|---|---|
| ORA MELIE | ) | |
| Plaintiff, | ) | **AMENDED COMPLAINT** |
| | ) | **WITH DEMAND FOR** |
| -against- | ) | **A JURY TRIAL** |
| | ) | |
| EVCI/TCI College Administration, Peter | ) | |
| Slater, Sayed Akhavi and Nannette Jacobs | ) | |
| Defendants | ) | **April 19, 2008.** |

-----------------------------------------------------X

TAKE NOTICE that as and for a verified complaint in this action, plaintiff by his attorneys ANTHONY EMENGO, P.C., alleges against all the defendants jointly and severally as follows:

1.This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).

## JURISDICTION

2. Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343; 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, Title VII Section 704(a)  Civil Rights Act of 1964, 42 U.S.C.A.  s. 2000e and pendant jurisdiction of this court is invoked in respect of all related claims under New York law.

3. Plaintiff has satisfied all procedural requirements prior to commencing this action and was issued with a Right to Sue Letter by the Equal Employment Opportunity Commission. This action is commenced within 90 days of the said letter Release of Jurisdiction (Copy attached)

1

which plaintiff received on or about March 10, 2008 and plaintiff requests a trial of all issues by a jury of his peers.

## PARTIES

4.Plaintiff is a resident of the State of New Jersey employed as an Technical Trainer /Instructor with the Technical Career Institute (TCI) at 330 West 34th Street New York, NY 10001.

5. Defendants EVCI/TCI College Administration (TCI) is an educational institution located at 330 West 34th Street New York, NY 10001.

6. Defendants Peter Slater, Sayed Akhavi and Nannette Jacobs are employees of the defendant  EVC/TCI who acting in concert with other defendants and in their personal capacities retaliated against plaintiff and denied him his civil rights. as a result of my having engaged in constitutionally protected activity, namely commencing a complaint or charge against TCI with the Equal Employment Opportunity Commission and on account of race, national origin and nationality.   The discriminatory conduct of which plaintiff complains about in this action includes, retaliation, failure to promote, harassment, and unequal terms and conditions of employment.

## STATEMENT OF FACTS

7. Plaintiff's employment is governed by an employment contract which guarantees a full time position with full benefits and salary  of $55, 000 per annum at an hourly rate of $63.00 per hour for a forty hour week (19 contact hours) in the Computer Networking in the Engineering Division of the respondent. Plaintiff's  employment is additionally regulated under a collective bargaining agreement between TCI and The Technical Office and Professional Union Local

2

2110 - UAW - AFL -CIO.

8. Plaintiff holds a Baccalaureate degree in Communications and the following professional certifications:  a)MCP; b)MCT; c)MCSE(2003 Security & Messaging) d).MCSE (2000 Security & Messaging) e) MCSE (NT) f). MCSA (2003 Security & Messaging)  g). MCSA (2000 Security & Messaging); h). CISCO CCNA. i)CISCO Wireless; j) Security+ (CompTIA); k)Network+ (CompTIA); l)A+ (CompTIA).

9. Examples of the conduct of defendants which plaintiffs alleges will constitute retaliation, failure to promote, harassment, and unequal terms and conditions of employment, complained of in this action are:

**(A) Prior EEOC Charges/Complaints Nos : 520-2006-03916 & 520-2007-00055.**

In or about March 24, 2006 without any basis and or any vestige of justification whatsoever, respondents wilfully made a false allegation and complaint to the police of, and concerning plaintiff that he was in possession of prohibited firearm on the premises of the institution and was threatening to cause violence and harm to named individuals. The complaint was determined by the police to be false and unfounded after an investigation. Defendants sought to use the false and malicious complaint as a pretextual reason to discharge plaintiff. Plaintiff thereupon commenced my prior EEOC Charges/Complaints Nos. **520-2006-03916 & 520-2007-00055** against defendants.

**B)**    **Plaintiff is selected for  pretextual discriminatory layoff  lay off:** During the pendency and investigation of Plaintiffs complaints by the EEOC,, and as a direct consequence thereof, respondents issued a letter dated August 29, 2006, discharging him from his employment as a full time employee on the pretext of a lay-off for the fall Term of 2006.

3

    <u>C).</u> In the fall of 2006 plaintiff was removed from the position of coaching and hosting extra curricular activity for the students. Defendant Mr. Ahkavi stated specifically to plaintiff that the reason for his removal was that he had commenced proceedings against the school. He was therefore, not welcome in any of the school's activities.

    **D). Removal from position as open house representative:** In the fall 2006, Plaintiff was removed from his position as an open house representative for the school. Defendant Mr. Slater wrote that since plaintiff had made it clear that he was commencing proceedings against the school, he was therefore not qualified to represent the school. He wrote "....***Secondly, and for the record, I am responsible for denying you the opportunity to do open house work. You have made no secret about your intentions to sue TCI, ..***"

    <u>E).</u>. Other faculty members who were not of plaintiff's race and origin did not receive same treatment as plaintiff. Mr. Vijilio Morales a Hispanic, who was junior to plaintiff was passed over. Mr. Shah Alarm, an Asian, like plaintiff received a letter of lay-off but unlike plaintiff, he was quickly reinstated, while plaintiff was not.

    **F). Racially Insensitive and Provocative Pronouncement by CEO**: Articulating the policy of Defendant TCI in his maiden meeting with the faculty of the school, the CEO of EVCI, the parent company of Defendant TCI Mr. McGrath, spoke selectively and derogatorily of, and concerning people of black race and culture, he stated that "at age 35, most if not all black males would have had a prison record", with the full knowledge of plaintiff's presence there as a black male and with his full attention focused on plaintiff.

    <u>G).</u> Plaintiff was **<u>profiled as an Individual with a violent propensity</u>**: On or about June 2006, when plaintiff applied for permission to proceed on a career enhancement seminar with

4

Microsoft in Boston, Defendant Mr Peter Slater invited him to his office with the stated purpose to discuss and approve the seminar but immediately upon arriving in the office, he scornfully sized up plaintiff with a hateful look on his face and without any prompting, stated that plaintiff had a violent propensity which is attributable to his nationality, Nigeria, a place of unrest "where people are always killing each other".

**H)**.Numerous other instances of retaliatory, discriminatory conduct, harassment, failure to promote and and unequal work opportunity suffered by plaintiff at the hands of the defendants abound, which will be founded upon at the trial, such as:

i). Ms. Nannatte Jacobs acting in concert with other defendants at a meeting on 2/22/06 supported and enforced a decision by Defendant Akhavi which was in contravention of the Union Rules that academic decisions are made by faculty. Said decision allowed a less qualified and uncertified faculty member, in place of plaintiff who was fully certified in the field, to head faculty development training in "exchange".

ii).Ms. Nannette Jacobs a union representative contary to her charge to represent and protect the employee, was acting in concert with the administration to the detriment. Sharepoint services report which melie presented to curriculum committee with the support of dean Blake was excluded from the minutes under the watch of union representative, Nanette Jacobs and Vice President Dr. Slater.

iii). On 8/29/07, Dr. Slater sent Mr. Melie a layoff letter falsely claiming that the layoff was based on the union seniority policy, and that it was necessitated by the fact of low registration.

## AS AND FOR A FIRST CAUSE OF ACTION

5

10).  Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 9, as if fully set forth herein.

11. Plaintiffs  employment is governed by an employment contract which guarantees a full time position with full benefits and salary  of $55, 000 per annum at an hourly rate of $63.00 per hour for a forty hour week (19 contact hours) in the Computer Networking in the Engineering Division of the respondent. Plaintiff's said employment is additionally regulated under a collective bargaining agreement between TCI and The Technical Office and Professional Union Local 2110 - UAW - AFL -CIO. Until 2006, plaintiff enjoyed his employment whereby he was legally entitled to and was receiving benefits in the form of Salary, health insurance, vacation, sick leave, holiday pay as well as other welfare benefits. Plaintiff had a legitimate expectation of advancement and long term continued employment. Defendants acting in concert, in violation of 29 U.S.C.§1140, by their conduct intentionally interfered with Plaintiffs employment relationship and legitimate expectancy of continued employment for the wrongful purpose of depriving Plaintiff of most, if not all the substantial ERISA protected benefits of his employment, as alleged in the proceeding paragraphs.

12. By engaging in the foregoing conduct, defendant  has violated plaintiff's rights under Employment Retirement Income Security Act..

13. By acting as described above, defendant acted with malice or with reckless disregard for plaintiff's rights, causing plaintiff injury and entitling plaintiff to consequential and liquidated damages.

14. The actions of the defendants were wilful, wanton, intentional, oppressive and outrageous, justifying the imposition of punitive damages in an amount sufficient to deter

defendant and others from like conduct in the future.

## AS AND FOR A SECOND CAUSE OF ACTION

15. Plaintiff is an individual of African origin and black race. Defendant adopted a discriminatory lay off policy based on based on race, national origin and color to the detriment of plaintiff. The conduct of respondents is chiefly actuated by their deep seated prejudice against plaintiff as an individual of African descent and Nigerian National origin.

16.None of the other faculty members similarly situated, who have unlike plaintiff , received preferential treatment rather than an adverse employment action, is of plaintiff's race and/or national origin.

17. Mr. Vijilio Morales who although junior to plaintiff in ranking but for whom plaintiff was passed over is Hispanic. Mr. Shah Alarm also received a letter of lay-off like plaintiff but who unlike plaintiff, was immediately fully reinstated is Asian. Plaintiff was targeted for selective and special treatment because of his race, national origin and nationality.

18. Defendant's employment practices and procedures have a disparate impact on plaintiff's equal employment opportunity based on his race, in violation of the Title VII Section 704(a) in Violation of, 42 U.S.C.A. s.1981 and Civil Rights Act of 1964, 42 U.S.C.A. s. 2000e.

19. As a result of the foregoing, plaintiff has suffered loss and damages.

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury and an award of punitive damages as may

be determined by a jury of plaintiff's peers and reasonable attorneys' fees and the costs of this action, including attorneys' fees and costs for representation in the proceedings before the EEOC and specifically for:

      1. Monetary damages as general and special damages in an amount not less than **One Million Dollars** ($1m.) for lost of wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits;

      2. An award of damages in an amount **One Million Dollars** ($1.m) to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

      3. An award of punitive damages as may be determined by a jury of plaintiff's peers;

      4. An award of reasonable attorneys' fees and the costs of this action, including attorneys' fees for representation in this Federal action.

Dated: Williamsburg, New York.
       August 19, 2008.

                    ANTHONY C. EMENGO, ESQ.,
                    Attorney for Plaintiff
                    472 Union Avenue Suite 1000,
                    Williamsburg, New York 11211
                    (718) 937-8000

                    By:_____ *Anthonycemengo*_____
                    ANTHONY C. EMENGO, (AE0582)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ORA MELIE

                                 Plaintiff,

    -against-                           **CERTIFICATE OF MERIT**

EVCI/TCI College Administration, Peter
Slater, Sayed Akhavi and Nannette Jacobs
                      Defendants         **August 19, 2008.**
------------------------------------------------------X

       I, **ANTHONY C. EMENGO, ESQ.,** attorney for the plaintiff, do hereby certify

that I have reviewed the facts of this case and have had numerous conferences with the

plaintiff, and together other colleagues and associates, I have thoroughly researched all the

questions of Law raised in the Complaint herein.

       I have also consulted with experts in the field of law involved in the case herein and

as a result thereof, I have concluded that there is a reasonable basis for the commencement

of the above captioned action.

Dated: Williamsburg, New York.
        August 18, 2008.

                                ANTHONY EMENGO, P.C.,.
                                Attorneys for Plaintiff
                                472 Union Avenue, Suite 1000,,
                                Williamsburg, New York, 11211
                                (718) 937-8000

                                By:____*Anthonycemengo*____
                                Anthony C. Emengo, Esq.(AE0582)

9

# EXHIBIT 6

# COLLECTIVE BARGAINING AGREEMENT

## By and Between

## TECHNICAL CAREER INSTITUTES, INC.

### And

## T.O.P. LOCAL 2110 UAW - AFL-CIO

### Unit Covered:

## INSTRUCTORS, LABORATORY TECHNICIANS AND MAINTENANCE PERSONS

## OCTOBER 10, 1998 - OCTOBER 9, 2001

# TABLE OF CONTENTS

ARTICLE  TITLE                                                                    PAGE

1. DEFINITIONS ................................................................................. 1

2. RECOGNITION OF BARGAINING UNIT ..................................... 7

3. WORK COVERED ....................................................................... 8

4. HIRING HALL .............................................................................. 9

5. UNION SECURITY AND CHECK-OFF ........................................ 10

6. RECOGNITION OF RIGHTS ....................................................... 12

7. THE UNION AS PARTY AT INTEREST ...................................... 14

8. STRIKES AND LOCKOUTS ......................................................... 14

9. NON-DISCRIMINATION .............................................................. 15

10. HOURS ......................................................................................... 15

11. SALARY RATES .......................................................................... 24

12. COMPENSATION PRACTICES .................................................. 25

13. CONTINUOUS SERVICE CREDIT ............................................. 28

14. SENIORITY .................................................................................. 30

15. LAYOFF PAY ............................................................................... 37

16. VACATIONS ................................................................................. 38

17. HOLIDAYS ........................................................................................... 42

18. LEAVES OF ABSENCE............................................................................ 43

19. PAYMENT FOR ABSENCE...................................................................... 48

20. COMPLAINTS, GRIEVANCE PROCEDURE AND ARBITRATION .......... 52

21. UNION ACTIVITIES................................................................................ 57

22. HEALTH CARE INSURANCE ................................................................. 60

23. GENERAL PROVISIONS ........................................................................ 61

24. TUITION EXEMPTION AND AID .......................................................... 72

25. DISCHARGE OR DISCIPLINE............................................................... 75

26. SUBCONTRACTING............................................................................... 75

27. 401(K) PLAN.......................................................................................... 76

28. ALCOHOL AND DRUG ABUSE POLICY ............................................... 77

29. HEALTH, SAFETY, HYGIENE, AND VIDEO DISPLAY TERMINALS...... 77

30. CREDIT UNION ..................................................................................... 79

31. DURATION AND NOTICE OF CHANGE OF TERMINATION.................... 80

APPENDIX "A" - POLICY AND PROCEDURE REGARDING ALCOHOL
AND DRUG ABUSE

## AGREEMENT

THIS AGREEMENT, made and entered into this 10th day of October, 1998, by and between TECHNICAL CAREER INSTITUTES, INC., a New York corporation and college of technology having its principal offices located at 320 West 31st Street, New York, New York 10001 (hereinafter the "Company" or "TCI"), for and on behalf of the college, and T.O.P. Local 2110, AFL-CIO, with principal offices located at 113 University Place, New York, New York 10003, (hereinafter "the Union"), for and on behalf of the employees it represents in the collective bargaining unit.

## ARTICLE 1. DEFINITIONS.

A.    Wherever used in this Agreement, the following words and phrases shall have the following meaning and interpretation:

1.    The College - "The College" means that Day College and Evening College operated by the Employer at its premises, 320 West 31st Street, New York, New York.

2.    Employee - "Employee" or "Employees" means employees in the occupational classifications specifically included in the Bargaining Unit.

3.    Faculty Member - "Faculty Member" shall include those employees in both the Day College and Evening College classified as Instructors.

4.    Adjunct Instructor - Any instructor who works less than a full-time base load will be categorized as Adjunct. The benefits will be those of the present Evening College instructors, with a cap on hours at 20 or more causing reclassification to Full Instructor.

5.    Technicians - "Technicians" shall include those employees classified as Laboratory Technicians.

6.    Maintenance Person - "Maintenance Person" shall include those employees classified as either Handyperson or Porter.

7.    Teaching Hour - A "teaching hour" is defined as 55 minutes of class instruction. "Teaching hours" may run consecutively, consolidating breaktime for laboratory purposes.

8.    SAC - An "SAC" is a 55-minute accountable, weekly academic Advisement Hour, during which all full-time faculty will advise new students and students on academic probation in accordance with the following:

a) The students to be advised will consist of all new day students and day students on Academic Probation (Advisees).
b) Allocate all Advisees among all full-time faculty members (Faculty Advisors). All members of the full-time faculty will be assigned as Advisors.

2

c) Faculty Advisors will be provided with mutually agreeable guidelines and a series of workshops on advising, given during the faculty professional development hour.

d) TCI will provide an advisement room with secretarial help.

e) Letter will be sent to students advising them of their weekly advisor and advisor hour. Lists will be provided to Faculty Advisors of their Advisees.

f) Faculty Advisors shall:

♦ During the first two weeks of each semester meet with Advisees as a group or groups and discuss academic advisement with students. Faculty will establish times to see each Advisee on a regular basis dependent upon students' needs, but generally not more than two additional times during the semester for passing students unless such student requests more frequent meetings. Students who are failing or on probation and require more attention should be met with as needed, and more often than two additional times during the semester.

♦ Faculty Advisors will be advised of students' poor attendance and will discuss attendance with Advisees.

♦ Faculty Advisors will interact with Student Services and The Learning Center as appropriate.

♦ Faculty Advisors will refer students with faculty problems to Student Services for handling.

♦ Faculty Advisors will submit a weekly report to Management detailing advisement activity for the prior week.

♦ Faculty Advisors will recommend all changes in a student's academic program, including change of section, change of major, and withdrawals.

3

9.    <u>Faculty Development</u> - "Faculty Development" means in-service training and continuing education activities designed to enhance and improve the subject-matter knowledge, interpersonal skills, and classroom management of instructors.

10.    <u>Base Workload</u>:

a)    The weekly Base Workload for Instructors in the Day College shall consist of 19 teaching hours, one SAC hour and one Faculty Development hour.

b)    The Base Workload for Instructors in the evening college consists of a minimum of 9 teaching hours and a maximum of 12 teaching hours per week, whereby assignments will be made following seniority up to the minimum schedule and extra hours will only be granted if all evening faculty requesting schedule are satisfied.  The base workload can be reduced through mutual agreement or with a request to work two or less evenings.

11.    <u>College Academic Year</u> - The "College Academic Year" is the period of time consisting of three semesters, each of a fourteen-week duration.

4

a)    <u>Summer Term Teaching Schedule</u>

(i)    The minimum summer base load for a full-time faculty member shall be 18 hours, and the base hourly rate shall be the base weekly salary x 1/19.

(ii)    Evening faculty members shall receive a 7.2% differential for each instructional hour they work during a Summer term.

b)    Evening faculty members shall continue to receive pay for a fifteen-week period for Fall and Spring terms.

12.    <u>Inter-term Days</u> - "Inter-term Days" are the weekdays immediately following the Fall and Spring Terms, when no classes are scheduled.

13.    <u>Promotion</u> - A "Promotion" is a change in the employee's occupational classification to one outside of the bargaining unit.

14.    <u>Demotion</u> - A "Demotion" is a change in the employee's occupational classification to an occupational classification with a lower maximum rate.

15.    <u>Layover Hours</u> - "Layover Hours" are those unscheduled hours in any day which fall between a Day College Faculty Member's first and last scheduled Day College hours.

16.    <u>Base Salary Rate</u> - "Base Salary Rate" as used herein shall be defined in accordance with the following:

a)    <u>FOR DAY COLLEGE FACULTY MEMBERS</u>:

<u>Base Weekly Salary</u> - The weekly pay for a base workload.

<u>Base Hourly Rate</u>: - Base weekly salary x 1/20

<u>Base Daily Salary</u> - Base weekly salary divided by the number of workdays scheduled in a normal week.

b)    <u>FOR EVENING COLLEGE FACULTY MEMBERS</u>:

<u>Base Hourly Rate</u>: - Equivalent weekly salary of Day Instructors x 1/21

<u>Base Weekly Salary</u> - Base hourly rate (as defined above) x employee's average weekly number of scheduled teaching hours in a biweekly period.

<u>Base Daily Salary</u> - Base hourly rate x the number of employee's teaching hours scheduled on that day.

6

c)    FOR ALL FACULTY MEMBERS:    Additional
Teaching Hour Rate:

Day College Faculty Member:  Base   weekly   salary   x
1/20.
Evening College Faculty Member:    Base weekly salary
x 1/21.

d)    FOR LABORATORY TECHNICIANS AND
MAINTENANCE PERSONS:

Base Weekly Salary - The weekly pay for the normal
weekly schedule of 37 hours.

Base Hourly Rate - Base weekly salary divided by the
number of hours in the normal workweek.

Base Daily Salary - Base weekly salary x 1/5.

e)    FOR ALL EMPLOYEES:

Base Monthly Salary - Base weekly salary x 4-1/3.

## ARTICLE 2. RECOGNITION OF BARGAINING UNIT.

The Company recognizes the Union as the sole and exclusive

bargaining agency with respect to rates of pay, wages, hours and other conditions of

employment for all Instructors, Laboratory Technicians, and Maintenance Persons

7

employed by TCI in its college, excluding all other employees and further excluding student employees, office clerical employees, confidential employees, all professional employees, watchmen and guards, and all supervisors within the meaning of the National Labor Relations Act, as amended.

### ARTICLE 3. WORK COVERED.

A.    The work covered by this Agreement consists of the preparation, presentation, and other related duties of those curricula and courses, including the technical support of related laboratories, which are offered in the Day College and Evening College at 320 West 31st Street, New York, N.Y.  Except in emergencies or as otherwise provided in this Agreement,  this work shall be performed by the employees in the bargaining unit so long as such employees are qualified and available to do the work.

B.    In the event that new programs, one time, special inter-term and or weekend courses are offered by TCI, the Company will canvass its seniority list of Faculty employees to seek qualified personnel to teach such programs as follows:

The company will prepare a list of qualified personnel.  From that list, in seniority order, assignments will be offered.  In the event no one accepts the

assignment, the Company, at its discretion may make assignment in reverse order of seniority or hire from the outside to cover such special assignments.

C.    Academic Deans and other qualified personnel may be scheduled to perform bargaining unit work subject to the following restrictions:

1.    In no event shall the number of hours taught by all such personnel exceed 25 hours per week.

2.    No more than five hours per week out of the 25 hours per week maximum may be taught by personnel other than Academic Deans, except when the Company must schedule other personnel for additional hours to cover restricted courses which cannot be taught by members of the bargaining unit.

3.    The College's policies concerning the utilization of student employees, who are excluded from the bargaining unit, shall be continued.

## ARTICLE 4. HIRING HALL.

The Company agrees to use the union hiring hall on a non-exclusive basis. Vacancy notices shall be sent to Stewards, the Union and to the hiring hall at the same time other sources of employment shall be contacted. The acceptance or rejection of any applicant supplied by the hiring hall will be solely within the prerogative of management and shall not be subject to arbitration.

## ARTICLE 5. UNION SECURITY AND CHECK-OFF.

A.    It shall be a condition of continued employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing.  It shall also be a condition of continued employment that all employees covered by this Agreement and hired on or after the effective date of this Agreement shall become and remain members in good standing in the Union on the 30th day following the beginning of such employment or on the 30th day following the execution of this Agreement, whichever is later.

B.    In application of Paragraph A. above, when the Company is notified by the Union in writing that an employee is delinquent in the payment of Union dues, or has failed within the time prescribed by the Union to make proper application and pay the required initiation fee, the Company shall immediately terminate such employee.

C.    The Union agrees that it will indemnify and hold the Employer harmless from any recovery of damages sustained by reason of any action taken under the Union Security Clause of this contract.

10

D.    Upon written notice from the Union, the Company will deduct all membership dues as provided for in the authorization form set forth below, upon condition that at the time of such notice the Union shall furnish the Company with a written authorization executed by the employee in the following form:

> "I hereby authorize and direct my employer to deduct from my wages and to pay over to the Union on such notice from the Union such amounts including initiation fees and assessments (if any owing by me) as my membership dues in said Union as may be established by the Union and become due to it from me during the effective period of this authorization.  The authorization may be revoked by me as of any anniversary date hereof by written notice signed by me of such revocation, received by my employer and by the Union, by registered mail, return receipt requested, not more than sixty (60) days and not less than fifty (50) days before any such anniversary date, or on termination date of the collective bargaining agreement covering my employment, by like notice, prior to such termination date, whichever occurs sooner."

The Company will notify the Union promptly of any revocation of such authorization received by it.

E.    The Company agrees to notify the Union and Steward/Chapter Chairperson when a new member of the bargaining unit is hired.  Such notification shall also apply when there is a change in status of existing employees. In addition:

11

1.    The Company will distribute membership and dues deduction cards to employees on the 1st day of employment and will forward completed cards to the Steward/Chapter Chairperson; and

2.    Change of status, when completed, will be copied and given to Steward/Chapter Chairperson.

3.    The Company will provide the chief steward and the main Union office with a monthly listing of all new hires, promotions, terminations, or any other change in the employment status of a bargaining unit member.

F.    The Company will forward all initiation fees and union dues deducted from employees' wages to the Union within fifteen (15) days after the end of the month in which the monies were withheld.

## ARTICLE 6. RECOGNITION OF RIGHTS.

A.    Except as otherwise expressly provided in this Agreement, the Company shall retain all of its rights and functions of ownership or management and nothing herein shall limit the Company in its exercise thereof.  Accordingly, the Company has, among others, the rights to manage the College, to direct the working force, to select its supervisory personnel, to hire new employees, to assign work, to

12

discipline, suspend or discharge employees for cause, to promote, to demote for cause, to transfer or lay off employees, to make such reasonable rules and regulations relating to the conduct of its employees as it considers necessary or advisable, to require employees to observe such rules and regulations, and to determine all schedules, procedures and methods necessary or advisable for the efficient performance of its business, provided the same are not inconsistent with the express provisions of this Agreement.

B.    It is further agreed that the Company shall have the freedom of action to discharge its responsibility for successful operation of its business, including but not limited to, the rights to decide the number and location of its colleges and programs, the curricula, courses, programs, special areas, special assignments, and that these rights shall be vested exclusively in the Company.

C.    The enumeration of management rights and functions herein shall not be deemed to exclude other rights or functions of management not herein enumerated, nor in any way be prejudicial to the rights, duties and responsibilities of the Union, as the collective bargaining representative of the employees in the unit, to process grievances with respect to the application of any express provision of the Agreement, except that management rights vested exclusively in the Company shall

13

be arbitrable only to the extent that they are abridged by express provisions in this Agreement.

## ARTICLE 7.  THE UNION AS PARTY AT INTEREST.

The Union shall require its members to comply with the terms of this Agreement.  The parties agree that the maintenance of a peaceable and constructive relationship between them and between the Employer and the employees requires the establishment and cooperative use of the machinery provided for in this contract for the discussion and determination of grievances and disputes, and that it would detract from this relationship if individual employees or groups of employees would, either as such individuals or groups, seek to interpret or enforce the contract on their own initiative or responsibility.  No individual worker may initiate any arbitration proceeding or move to confirm or vacate an award.

## ARTICLE 8. STRIKES AND LOCKOUTS.

It is agreed that the Company shall not engage in any lockout, and that the Union shall not, during the term of this Agreement, cause, authorize, give leadership to, or take part in any strike, picketing, sitdown, slowdown, boycott,

14

collective refusal to work or other curtailment or restriction of work unless and until all steps of grievance procedure and arbitration shall have been employed and one of the parties hereto fails or refuses to comply promptly with any final decision made against such party hereunder.

## ARTICLE 9. NON-DISCRIMINATION.

It is agreed that there shall be no coercion, intimidation, or discrimination by the Company or the Union, or by any employee represented by the Union against any employee because of race, color, sex, national origin, creed, membership or non-membership in the Union, or activities on behalf of the Union, or any other activity or belief held to be the lawful prerogative of the individual.

## ARTICLE 10. HOURS.

A.    Normal Work Week - The normal workweek for all employees covered by this Agreement shall be as follows:

1.    Day College Faculty Members.  The normal workweek shall consist of the base workload to be performed by the Faculty Members from

Monday through Friday during each term (excepting days off for holidays for the term beginning or ending during the week). The base workload shall be scheduled within one of the following time periods:

a) 8:00 a.m. to 3:25 p.m., Monday through Friday, except that one day may be scheduled from 8:00 a.m. to 4:25 p.m.

b) 11:20 a.m. to 6:05 p.m., Monday through Friday, except that one day may be scheduled from 10:00 a.m. to 6:05 p.m.

2. <u>Evening College Faculty Members</u>. Except for the tutoring of Evening College students, faculty members will be assigned in the Evening College between the hours of 6:05 p.m. and 10:05 p.m. Exceptions may be made upon mutual agreement. Faculty members may be scheduled to conduct classes on any evening, Monday through Friday. Saturday classes may be scheduled from 8:00 a.m. to 4:00 p.m. and assigned on a voluntary basis except for Evening College faculty hired after October 9, 1992.

a) All faculty who teach for just two hours on an evening, one of which hours ends at 10:05 p.m., shall be assigned a paid standby hour on said evening; the three hours shall be consecutive.

16

b)  All faculty scheduled to teach six hours in a week shall be assigned evening college hours on two evenings per week. Evening College faculty scheduled to teach six hours in a week shall be assigned four teaching hours on one evening per week and two hours on the second evening per week only on a voluntary basis.

c)  No less than 2 weeks prior to the commencement of a term, Evening College faculty whose names appear on the Evening College seniority list, who desire assignments after 9:20 p.m., shall request them from the Vice President of Academic Affairs. Evening College faculty who do not request these hours shall not be assigned Evening College hours after 9:20 p.m. as such hours shall be deemed voluntary.

d)  Saturday assignments shall be for a minimum of 3 consecutive hours.

e)  Paragraphs b and c above shall not apply to Evening College faculty hired after October 9, 1992.

3.  <u>Technicians and Maintenance Persons</u>.  The normal weekly schedule shall be five days, Monday through Friday, each consisting of

17

seven hours and twenty-four minutes.  The hours shall be scheduled consecutively except for one meal period of one hour internal to the time period applicable below:

Technicians:        7:45 a.m. to 10:00 p.m.

Maintenance Persons:

Monday - 4:00 a.m. to 11:06 p.m.

Tuesday through Friday - 5:00 a.m. to 11:06 p.m.

Technicians and Maintenance Persons shall work the same schedule each week, except by mutual agreement.

        B.    Flex Week - Normal workweek to be a five-day contiguous period.  All applicable provisions to be modified to reflect present Saturday/Sunday practices.

        1.    All employees on the payroll prior to October 10, 1983, shall have the option to accept or deny assignments to other than a Monday to Friday workweek.

        2.    Employees hired on or after October 10, 1983, will be assigned by the Company, consistent with the operational requirements to these schedules.

18

C. <u>Hours Beyond Standard</u>.  When extra hours are assigned to the bargaining unit, such hours will be distributed as equitably as possible among those employees desiring additional hours, providing such employees are available and qualified to work such additional hours.  The Company will seek voluntary acceptance of such work among qualified and available employees in the bargaining unit as long as this procedure result in acceptance.  When such work must be assigned, it will be in inverse order of seniority among those qualified.

D. <u>On-And-Off Premises Requirements</u>.  It is recognized by the Union that preparation for classroom work, grading, and other duties directly related to teaching but not requiring contact with students, are the responsibility of each faculty member and are compensated for by the base hourly rate.  It is agreed that such duties may be performed on or off the college premises.  Duties not directly related to teaching hours will be performed on or off school premises at the discretion of the Company.

E. <u>Layover Hours</u>.

1.     For a Day College faculty member without extra hours, the number of layover hours will not exceed two hours in one day or four hours in one week.

2.    For a Day College faculty member with more than a standard teaching load in the Day College, the number of permissible layover hours shall be increased by one layover hour for each two hours scheduled above standard.

3.    For a Day College faculty member whose teaching scope is restricted, these restrictions on layover hours shall not apply, nor do these restrictions apply when layover hours result from scheduling accommodations made at a faculty member's request.

4.    Where a Day College faculty member is required to teach at more than one facility in a single day, the Company shall schedule travel time between facilities during layover hours.

F.    Reduced Schedules.

1.    A faculty member who is 65 years or older, with at least 10 years of service, shall, upon request, be granted a reduced schedule (i.e., one-half the faculty member's normal schedule).

2.    A faculty member working a reduced schedule shall continue to receive benefits, including health benefits, and shall have the option of obtaining coverage for his/her spouse by paying the premiums for such coverage.

20

3.    Faculty members who request and work a reduced schedule waive any right to return to a full time position. The College, at its sole discretion, may permit a faculty member who is working a reduced schedule to return to full time status.

G.    <u>Scheduling of 4-Day Workweeks.</u>    The college shall endeavor, where operationally feasible, to grant a 4-day workweek to faculty who have reasonable reasons for such a request. The number of 4-day workweek schedules allowed per semester will be capped at 25% of the number of day faculty. Only faculty who are teaching at base load (19 hours) or less will be considered eligible for such a 4-day workweek schedule request. The Vice President of Academic Affairs will determine eligibility to participate in the 4-day workweek. Priority will be given to requests based on personal or family medical needs, requests to attend graduate school, and other professional development activities, which benefit the College.

H.    <u>Contact Hours for Writing Instructors.</u>  Faculty members teaching at least base load with four or more writing courses in their semester schedule shall

21

have their contact hours for the semester reduced by 1 hour. Their overtime rate of pay will remain at 1/20. Eligible courses: ENG101 – English Composition I; ENG102 – English Composition II; ENG202 – Technical Writing; RE088 – Basic Communications I; RE099 – Basic Communications II; ENG221 – Writing for IET Technicians; ENG222 – Writing for HVAC/R Technicians; WS101S – Basic Writing Structures; WS201N – Intermediate Writing; WS201C – Intermediate Writing; and WS301N – Advanced Writing Structures; and any new writing courses that are added.

I.      The Leaning Center.

     a.      The Learning Center will be staffed by:

          (i)      Laid-off faculty members who shall receive faculty pay and benefits.

          (ii)      Full and part-time (20 hours per week) tutors hired from outside the current bargaining unit who shall receive the same hourly pay and benefits as the full and part-time (respectively) laboratory technicians.

          (iii)      TCI students who shall not be part of the bargaining unit.

b.    There shall be one guaranteed ESL / Prep Tech position in the Learning Center.

c.    Work schedules will be as follows:

(i)    Laid-off faculty members shall work a 35-hour schedule, which includes two 15-minute breaks and a half-hour lunch period each day.

(ii)    Full-time tutors shall have a 40-hour workweek schedule, which includes daily: a 1-hour unpaid lunch and two 15-minute paid breaks. The tutors will be entitled to the two paid 15-minute breaks per day on the premises, to be scheduled by the Supervisor, for the purpose of getting coffee and returning to his/her work assignment. Tutors shall be paid at the same hourly rate as Laboratory Technicians.

d.    It is understood that laid-off faculty members will be considered for open positions in the Learning Center for which they are qualified and that they shall not be entitled to bump tutors receiving laboratory technician pay and benefits.

e.    There shall be at least one full-time employee for each part-time employee (excluding TCI students).

23

## ARTICLE 11. SALARY RATES.

A.    Except for the salary increases set forth in this Article, all employees covered by this Agreement shall continue to receive the salaries in effect on the effective date of this Agreement.    Salary increases will be granted in accordance with the schedule listed below:

| Effective Date | Day Instructors | Technicians and Maintenance Persons |
|---|---|---|
| October 10, 1998 | $30.00 per week | $30.00 per week |
| October 10, 1999 | $30.00 per week | $30.00 per week |
| October 10, 2000 | $30.00 per week | $30.00 per week |

B.    Effective October 10, 1998, the minimum starting weekly salaries shall be as follows:

| Classification | 10/10/98 | 10/10/99 | 10/10/00 |
|---|---|---|---|
| Faculty | $641.50 | $671.50 | $701.50 |
| Technician | $518.50 | $548.50 | $578.50 |
| Porter | $493.50 | $523.50 | $553.50 |
| Handyperson | $518.50 | $548.50 | $578.50 |

24

Third Shift Porters          $499.50          $529.50          $559.50

Night maintenance employees will receive a 10% pay differential.

## ARTICLE 12. COMPENSATION PRACTICES.

A.    Extra Compensation.

1.    Faculty Members will be compensated for teaching hours worked beyond their Base Workload at their additional teaching hour rate.

2.    Laboratory Technicians and Maintenance Persons shall be compensated for hours worked in excess of their normal daily or weekly schedule as follows:

DAILY:    All time from the end of their normal work day, to the eighth hour, at their Base Hourly Rate; all hours beyond eight hours, at time and one-half their Base Hourly Rate.

WEEKLY: Base Hourly Rate for all hours less than forty; all hours beyond forty, at time and one-half their Base Hourly Rate.

SATURDAY:    For all hours worked, at time and one-half their Base Hourly Rate.

SUNDAY:  For all hours worked, at double their Base Hourly Rate.

B.    Holidays.  If employees work on a day observed as a recognized holiday, they will be paid as follows:  Technicians and Maintenance Persons at time

and one-half their Base Hourly Rate, or for faculty at the Additional Teaching Hourly Rate, whichever is applicable, for all hours worked in addition to the holiday pay as defined in Article 17. When the Company determines that such work will be performed by bargaining unit employees, it will seek voluntary acceptance of such work among qualified and available employees in the bargaining unit in an equitable manner, as long as this procedure results in acceptance. When such work must be assigned, it will be in the inverse order of seniority among those qualified.

C.    Days On Which No Regularly Scheduled Classes Are Held. If Day College Faculty Members perform counseling duties on days on which no regularly scheduled classes are held (except holidays), they will be paid at their additional teaching hour rate for all hours worked. On inter-term days, this will be in addition to receiving their base daily salary for that day. When the Company assigns such work, it will seek voluntary acceptance of such work among qualified and available employees in the bargaining unit in an equitable manner, as long as this procedure results in acceptance. When such work must be assigned, it will be in the inverse order of seniority among those qualified.

D.    Merit Increases. The Company reserves the sole discretion to grant merit increases.

26

E.    <u>Department Chairs and Deputy Chairs.</u>

1.    The titles department chair and deputy chair are bargaining unit titles, as well as academic titles.  Department chairs and deputy chairs will not be involved in disciplinary actions.  The College has the sole discretion to appoint and remove department chairs and deputy chairs.  Such appointment or removal shall not be deemed a promotion or a demotion for purposes of the collective bargaining agreement.  There will be department chairs and/or deputy chairs in the Arts and Sciences, IET, HVAC, OT, and EET departments.  Department chairs and/or deputy chairs may be appointed in other departments.

2.    Chairpersons and deputy chairs shall receive the same salary each week of the year (e.g., intercession, vacation, etc.).

3.    No continuous service credit as a department chair or deputy chair shall be given prior to October 10, 1987.  After five years' continuous service as a chair or deputy chair, should a department chair or deputy chair lose the position other than through voluntary resignation, he/she shall be compensated with an increase in his/her base salary of $25.00 per week per term.  Should a department chair or deputy chair, after ten years continuous service as a chair or deputy chair, lose the position other than through voluntary resignation, he/she shall be

compensated with an increase in his/her base salary of $40.00 per week per term. Should a department chair or deputy chair, after fifteen years' continuous service as a chair or deputy chair, lose the position, including through voluntary resignation of the position, he/she shall be compensated with an increase in his/her base salary of $40.00 per week per term.

4.    Department chairs will be compensated with 6 hours of release time and 6 hours of additional pay. Deputy chairs will receive 3 hours of release time and 3 hours of additional pay.

## ARTICLE 13. CONTINUOUS SERVICE CREDIT.

A.    The principle of continuity of employment is recognized in accordance with and subject to the provisions of this Agreement, and each employee shall accumulate continuous service credit with the Company from the first date of his/her unbroken continuous service. Continuous service credit shall accumulate during leaves of absence or layoff only as provided in this Agreement.

B.    The continuous service credit of an employee shall be broken under the following conditions, and, when so broken, an employee for all purposes shall be considered a new employee without prior service credit if, and when, rehired:

1.   Resignation  or  other  voluntary  termination  of  employment.

2.   Discharge for just cause.

3.   Failure to report to work after layoff within two (2) calendar weeks after written notice by the Company to the employee to report to work, or on the date specified by the Company which shall not be less than two (2) calendar weeks from the date of notice to return; recall after layoff for the summer term shall be upon three (3) days' written notice (within the first two weeks of the summer term); or failure to notify the Company within one (1) calendar week after such notice to return is given, of the employee's intention to return to work. Such notice shall be deemed sufficient if sent to the employee by registered or certified mail, at the last address furnished by the employee to the Personnel Department of the Company.

4.   Layoff without recall to work within two (2) years from the date of such layoff.

5.   Absence without authorization or notification for three (3) consecutive days, unless satisfactory evidence of inability to report is shown.

6.   Unauthorized absence beyond the time limits of an approved leave of absence or vacation, unless satisfactory evidence of inability to report is shown.

7.   Engaging in gainful employment (unless authorized) during leave of absence.

## ARTICLE 14. SENIORITY.

A.   <u>Seniority Policy.</u>  The Company and the Union accept the principle of employee seniority commencing with the first date of the employee's continuous service with the Company in its college.  The principles of seniority which will apply as set forth in this Article are based upon four seniority groups, as follows:

      1.    Day College Faculty Members

      2.    Evening College Faculty Members

      3.    Technicians

      4.    Maintenance Persons

Each employee will accumulate seniority in the seniority group in which he/she is working or as otherwise provided in this Agreement.

B.   <u>Probationary Period.</u>  Each new employee shall be hired as a probationary employee and shall not be considered to have seniority until after he/she completes the probationary period, as follows:

      1.    <u>Faculty Members.</u>  At the beginning of the third consecutive term (exclusive of the summer term if not worked) of actual teaching following the date of appointment to the faculty, except that an employee's probationary period may be extended to the beginning of the fourth complete and consecutive term (exclusive of

the summer term if not worked) by mutual agreement between the Company and the Union.

2. <u>Technicians and Maintenance Persons.</u>    One month following employee's date of hire, with a possible extension of an additional month upon mutual agreement.

No questions shall be raised by the Union concerning any disciplinary action taken by the Company, including termination, while an employee is within the probationary period in a manner satisfactory to the Company.  An employee shall be considered a regular employee and his/her group seniority will be equal to the continuous service credit accumulated, except in the Evening College, where seniority will be determined as outlined in subparagraph F herein.

C.    <u>Seniority of Technicians Transferred Within the Bargaining Unit</u>.  An employee in the Technician seniority group who is transferred to one of the Faculty seniority groups and who has established no seniority therein will serve a probationary period in a manner satisfactory to the Company.  The employee's group seniority in the new group will accumulate from his/her date of transfer to that seniority group.  An employee so transferred will retain his/her previously accumulated seniority in the Technician Seniority group until he/she has accumulated the seniority he/she had in the Technician Seniority group as of the date he/she was transferred.

31

D.  <u>Seniority of Employees Transferred Out of the Bargaining Unit</u>. When an employee has established group seniority and is or has been transferred to an occupational classification not included in the bargaining unit, and such employee is thereafter again employed by the Company within the bargaining unit within one year of the date of transfer, such employee shall be deemed to have retained his/her previously acquired group seniority.

E.  <u>Seniority of Union Representative</u>.  For the purpose of layoff of bargaining unit employees, duly elected or appointed officers of the Union who have more than one year's seniority (or four terms in the Evening College) shall, during their term of office, be considered to have top seniority in their seniority group within the bargaining unit.  The total number of employees with such seniority are 10 and the Union shall advise the Company of their names in writing. For each additional 25 faculty or technician/maintenance hires over and above the number of employees as of the first of this contract, the company will recognize one additional steward with such seniority:

Faculty - 9

Technician/Maintenance Seniority Group - 1

F.    <u>Seniority of Evening College Faculty Members</u>.    Seniority for Evening College Faculty shall be computed on the basis of the number of terms worked.  For each completed term worked, an Evening Instructor shall receive one unit of seniority.  Seniority shall be frozen during any term(s) an Evening Instructor is on authorized leave.  An Evening Instructor with twenty or more units of seniority will be granted a one-term leave at his/her discretion without loss of seniority. There shall be no more than two such persons taking leaves in any one term.

G.    <u>Seniority of Faculty members Transferred Between the Day College and Evening College</u>.

1.    Evening College Faculty Members transferred to the Day College.  A Faculty Member in the Evening College seniority group who is transferred to the Day College shall have his/her seniority adjusted on the basis of one year of seniority in the Day College for each twelve units of seniority in the Evening College seniority group.

2.    Day College Faculty Members Transferred to the Evening College.  A Faculty member in the Day College seniority group who is transferred to the Evening College shall have his/her seniority adjusted as follows:  four units of

seniority in the Evening College for one year in the Day College, unless he/she has previously established seniority in the Evening College. In the latter event, he/she will receive whichever seniority is greater.

H.    <u>Instructors Who Resign from the Day College</u>. Instructors who resign from the Day College but continue to teach in the Evening College shall lose their right of employment in the Day College.

I.    <u>Layoff</u>. Layoff shall be made in the following manner in the seniority group affected:

1.    DAY COLLEGE FACULTY

a)    Consistent with operational requirements, extra teaching hours available to the bargaining unit in the Day College will be eliminated before any Day College Faculty Member is laid off.

b)    The layoff of Faculty Members shall commence with the least senior first. Faculty Members who teach courses which require capabilities and qualifications which are not possessed by more senior Faculty Members may be retained out of seniority order to meet the operational needs of the College. Faculty members whose register of courses preclude reassignment to other areas may be laid off out of seniority order based upon the availability of class assignments in their restricted subjects.

c)    Faculty Members who have been transferred from the Technician seniority group and who still retain seniority in that group in accordance with Article 14 C., may exercise such

seniority to replace the least senior Technician, provided that such Technician group seniority is greater than that of the least senior Technician.

### 2.    EVENING COLLEGE FACULTY

Reductions in the Evening College seniority group shall be accomplished by the layoff of Faculty Members commencing with the least senior first, and in accordance with the limitations outlined in I.1.b) above.

### 3.    TECHNICIANS

Technicians will be laid off commencing with the least senior first.

### 4.    MAINTENANCE PERSON

Consistent with operational requirements, Maintenance Persons shall be laid off commencing with the least senior first.

The Company shall give two weeks' notice to the employee to be laid off. Unless the employee is recalled within the first two weeks of a term, and completes that term, the employee must complete a full term before he/she is again eligible for such notice.

J.    <u>Recall.</u>    Recall of employees from layoff shall be effected as follows:

1.    Employees shall be recalled by seniority group in inverse order of layoff, subject to the qualifications outlined in Section I. of this Article 14.

2.    No new employee shall be hired in the Evening College seniority group unless all employees on layoff from the Day College seniority group have been offered the opportunity to accept such work, subject to the qualifications outlined in Section I. of this Article 14.

K.    <u>Seniority Lists</u>. Separate seniority lists shall be maintained by the Company for each of the four seniority groups designated in the first section of this Article. Twice each year, or less often by mutual agreement, the Company shall supply the Union with such seniority lists and posts such lists on the Company bulletin board for a period of thirty days. An employee may contest the accuracy of his/her seniority status and if an error is established, correction shall be made. After said thirty days, the seniority status of all employees shown on such list, as corrected, shall be incontestable.

## ARTICLE 15. LAYOFF PAY.

A.    Any employee, other than an adjunct instructor, who meets the continuous service credit requirements stated herein, shall be entitled to layoff pay when he/she is laid off for lack of work for a period in excess of thirty calendar days; except, however, in cases where the layoff is due to fire, flood, explosion, bomb, earthquake, or Act of God, causing damage to the Company's premises, or from strikes or work stoppages, or any condition beyond the control of the Company which makes it impractical for the College to operate.

B.    The layoff pay to which an employee may be entitled under this Article shall be based on the base salary rate which the employee is receiving at the time of layoff, as follows:

| LENGTH OF SERVICE | LAYOFF PAY |
|---|---|
| Six months to one year | One week |
| One year but less than two | Two weeks |
| Two years but less than five | Three weeks |
| Over five years | Four weeks |

C.    Layoff pay shall be paid at the end of a waiting period of thirty calendar days from the date of such layoff. An employee who is reinstated to regular employment during the waiting period shall not be entitled to layoff pay, as herein provided. For the purpose of this Article, any employee who receives layoff

pay, as herein provided, and who subsequently is reinstated to employment with the Company shall not again be eligible for additional layoff pay until he/she accumulates additional continuous service credit with the Company. When such continuous service credit is so reestablished, the employee shall again be entitled to layoff pay in accordance with his/her continuous service from the date of his/her reinstatement.

## ARTICLE 16. VACATIONS.

A.    <u>Eligibility and Payment</u>. Vacation entitlement is earned from the date of hire to the date taken on the basis of one day per month for each month of continuous service, up to a maximum of ten days. Additional vacation days shall be granted as set forth in the following table:

| Continuous Service Credit As of Date of Hire | Vacation Entitlement In Current Year |
|---|---|
| more than 2 years but less than 3 years | 11 days |
| more than 3 years but less than 4 years | 12 days |
| more than 4 years but less 5 years | 13 days |
| more than 5 years | 15 days |

In addition, full-time technicians and maintenance persons shall receive 16 days vacation entitlement after 6 but less than 10 years of continuous service, and 17 days after 10 or more years of continuous service credit.

Payment for vacation for an employee will be made at the Base Salary Rate of the employee in effect on the last day he/she worked prior to the first day of his/her vacation. Total vacation pay will be based upon the Base Daily Salary times the number of days of vacation entitlement. Vacation payment will be made to each eligible employee on the last scheduled day of work prior to his/her vacation.

Vacation payment to employees who teach in the Evening School and who qualify for vacation in accordance with the above will be computed as a percentage of gross pay from date of hire to the date taken in accordance with the following schedule:

| Continuous Service Credit As of Date of Hire | Vacation Entitlement In Current Year |
|---|---|
| 6 months | 2.0 percent |
| 9 months | 4.0 percent |
| more than 2 years but less than 3 years | 4.4 percent |
| more than 3 years but less than 4 years | 4.8 percent |
| more than 4 years but less than 5 years | 5.2 percent |
| more than 5 years | 6.0 percent |

39

If a recognized holiday is observed during an employee's scheduled vacation, it shall be considered a holiday and the displaced vacation day will be rescheduled.

B.    <u>Payment in Lieu of Vacation</u>.  When the Company requests an employee to forego vacation to which he/she is entitled, the employee shall be given payment in lieu of vacation equivalent to the vacation payment to which he/she is entitled.

C.    <u>Vacation Period</u>.  Unless otherwise scheduled by the Company, vacations for Faculty Members will be scheduled during the period of summer recess, i.e., three weeks (excluding Labor Day) immediately preceding the beginning of the fall term.  Vacations must be taken in multiples of full days.

Vacations for Technicians and Maintenance Persons will be scheduled during the period from April 1 to October 31, inclusive.  Vacations will be granted, so far as possible, at a time most desired by the employees, but the right to fix the time for vacation is reserved by the Company in order to assure orderly and efficient operation.  Vacations must be taken in multiples of full days.

D. <u>Winter Recess</u>. Only Day College Faculty Members will receive a winter recess, which shall be scheduled annually between December 24 and January 1, inclusive.

Except for recognized paid holidays, Day College Faculty Members will be paid at their Base Daily Salary Rate for each weekday (Monday through Friday) which falls within this recess period.

E. <u>Vacation Pay Upon Termination</u>. An employee shall not be entitled to vacation pay if that employee quits without giving two weeks' notice, unless there are extenuating circumstances, or is discharged for just cause. An employee who is entitled to vacation pay shall be paid an amount equal to X/10 of what his/her entitlement would have been that year had he/she not been terminated. "X" is the number of full months worked from September 1 to the date of termination, to a maximum of ten. An employee who is terminated during a term does not accrue entitlement for any of the months of the uncompleted term.

## ARTICLE 17. HOLIDAYS.

A.    Holidays.  The Company will observe the following recognized

paid holidays:  New Year's Day, Martin Luther King's Birthday, Presidents Day,

Good Friday, Memorial Day, Independence Day, Labor Day, Columbus Day

Thanksgiving Day, the day after Thanksgiving and Christmas Day.  When such a

holiday falls on Saturday, it will be observed on the preceding Friday.  When such a

holiday falls on Sunday, it will be observed on the following Monday.

B.    Payment for Holidays.  Employees will be paid their Base Daily

Salaries for each recognized holiday which is observed on their regular workdays

(i.e., Monday through Saturday).

C.    Holiday Pay for Faculty Teaching in the Evening College.

1.    If a holiday falls on a day when an Instructor in the
Evening College is normally scheduled to work, he/she
shall receive holiday pay.

2.    If a holiday falls during a period when classes are not in
session, an Instructor who has completed a teaching
assignment during the preceding term will receive holiday

42

pay if the holiday falls on a day he/she would have been normally scheduled to teach during that preceding term.

## ARTICLE 18. LEAVES OF ABSENCE.

A.    <u>Application for Leaves of Absence</u>.  Except for military service, a leave of absence shall be applied for in writing on the forms to be provided for that purpose.

B.    <u>Military Service</u>.  Day College Employees who enter the Armed Forces of the United States shall be granted a leave of absence for the period of such service, and upon honorable discharge therefrom shall be reemployed by the Company, as provided by the Universal Military Training and Service Act. Continuous service credit and duly established seniority privileges shall be retained and accumulated during such leave of absence.  An employee with six months or more of continuous service credit will be paid a military duty allowance equal to the difference between his/her regular Company pay and any lesser amount of his/her total military pay as follows:

1.    If he/she has assumed the required military service obligation of six months or less, the payment will be

43

based on the difference between the ten working days'
base pay with the Company and ten days of military pay.

2.  If he/she has assumed the required military service
obligation of more than six months, the payment will be
based on the difference between his/her base monthly
salary for one month with the Company and one month of
military pay.

C.  <u>Non-War Military Duty Absence and Payment</u>.  A Day College
employee with six months or more of continuous service credit who is called for and
performs non-war military duty shall be granted a leave of absence and will be
compensated for the difference between his/her total military pay and the base
payment he/she would have received for the hours he/she was thereby required to
lose from his/her normal work schedule, but not to exceed ten days at his/her base
daily salary if he/she is called for training, or five days at his/her base daily salary if
he/she is called because of an emergency.  Continuous service credit and duly
established seniority privileges will accumulate during such leave.

D.  <u>Jury Duty Absence and Payment</u>.  A Day College employee who
is called for and who performs jury duty shall be granted a leave of absence and will

44

be compensated by the Company for the difference between the payment received for such jury duty and the payment he would have received for the base hours he was thereby required to lose from his/her regular work schedule, so long as his/her total payment does not exceed his/her base weekly salary. Differential payment shall be made so long as such jury duty continues, only upon presentation of documentary proof of jury duty and the payment received thereof. Continuous service credit and duly established seniority privileges will accumulate during such leave. Employees shall use their best efforts to serve as jurors at such times as will not interfere with normal college operation.

E.    <u>Leaves of Absence for Union Activity</u>. Any member of the Union with at least one year of unbroken continuous service credit, who shall be a duly elected or appointed officer or representative of the Union shall, on written request of the Union, be granted a leave of absence without pay for such Union activity, for a period not to exceed one year, provided the number of such persons on such leaves shall not exceed a total of two at any one time. A leave of absence without pay under this paragraph shall be renewed from year to year upon written request from the Union. Continuous service credit and duly established seniority privileges shall be retained and accumulated during such leave of absence.

45

F.    <u>Other Approved Non-Paid Leaves of Absences</u>.  Employees with sixty days or more of continuous service credit with the Company may be granted a leave of absence for up to six months for family care, quarantine, marriage, or voluntary service with a government agency; leaves of absence may also be granted for other miscellaneous reasons.  In case of death in the employee's immediate family, an employee shall be granted a leave of absence for up to two weeks, provided the Company is convinced there is justification for such leave. Application for such approved absence should be made to the immediate supervisor in accordance with the provisions of this Agreement.  Requests for such leaves shall not be unreasonably denied.   Continuous service credit and duly established seniority privileges shall be retained and accumulated during such leave of absence.

G.    <u>Disability Leave</u>.  An employee shall be granted a disability leave upon appropriate certification from an attending physician as to character and duration.  Any employee returning from a disability leave of up to four months shall be returned to his/ her former job.  Any employee returning from a disability leave of more than four months may be returned to a job comparable to his/ her previous one.  During the first three months of a disability leave, the Company will continue to provide health insurance coverage to the employee as provided for herein.  Such

46

coverage will be continued for up to four months upon written request of a physician.  Continuous service credit and duly established seniority privileges shall be retained and accumulated during such leave of absence.

H.    Disability Leave for Pregnancy.  For employees documenting disability due to pregnancy, TCI shall allow the use of accrued sick time to be used for compensation in week one of the disability.  For weeks two through five of the disability, TCI shall supplement the employee's New York State disability payment up to the amount of the bargaining unit member's weekly base pay.  For faculty members whose pregnancy disability begins or ends mid-semester, the College shall, at its discretion, assign the faculty member to the classroom or arrange an administrative schedule for the period prior to the pregnancy-disability leave, and return the faculty member to the classroom or arrange an administrative schedule for the remainder of the semester in which the faculty member returns to work.

I.    Faculty Sabbatical Leave.  The College may grant up to three semesters paid leave with benefits to one faculty member or may grant a shared leave to two or three faculty members to be equivalent to one full-time base salary per calendar year. Faculty applications for sabbatical leave must be submitted to the respective department chair who shall then recommend the selected application(s) to

the Vice President for Academic Affairs. Recommendations from department chairs shall be submitted to the Vice President for Academic Affairs no later than April 15th of each year. In a division that does not have a department chair, the deputy chair shall recommend (and submit) the selected applications. The Vice President for Academic Affairs will make the final determination for approved sabbatical leave by May 15th of each year.

## ARTICLE 19. PAYMENT FOR ABSENCE.

The Company agrees to the payment for absence due to illness or disability of Day College Employees as set forth in this Agreement.

1.    During each full year of employment, each Day College Instructor or full-time Technician or Maintenance Person shall accumulate sick leave credit at the rate of one day per month to a maximum of ten days per year. Any unused sick leave accumulated (maximum of 100 days) prior to October 10, 1989 shall be usable for sick leave, but will not be paid for as unused sick leave. Sick leave accrued since October 10, 1989 and unused shall be paid for in accordance with the schedule below. It is specifically understood and agreed that such sick leave previously accumulated may be used only for a bona fide illness.

48

The Company reserves the right to require that such illness be certified by an attending physician as to character and duration. The Company shall receive credit for payments made to any such employee during this period of illness or for any insurance benefits provided by the Company to such employee.

        a.    Up to seven days sick leave accrued in a calendar year but not used in that year shall be paid by December 31st of that year.

        b.    Commencing on October 10, 1992 employees may bank up to a maximum of 40 unused sick days.

        c.    An employee whose employment ceases because of layoff shall be entitled to payment of all unused banked sick leave at the time of the layoff.

        d.    Except in the case of a termination on the grounds of misconduct, at the time employment ceases because of resignation or termination, an employee shall be entitled to payment of unused sick leave banked since October 10, 1992 as follows:

| | |
|---|---|
| after 3 years of service | 50% of banked sick leave |
| after 5 years of service | 75% of banked sick leave |
| after 7 years of service | 100% of banked sick leave |

2.     Five days per year of sick leave (or one-half of an employee's annual sick leave entitlement if it is less than the ten-day maximum) may be used when the employee's presence is required at home because of the illness of a family member requiring his/her care.

3.     A Day College employee shall be paid for time lost due to death in his/her immediate family.  Payment for such lost time shall not exceed daily base pay for up to five regular workdays, which must be consecutive, and one of such days shall include the day of the funeral.  The immediate family is defined as the employee's spouse, common-law spouse, mother, father, sisters, brothers, sister-in-law, brother-in-law, children, grandparents, grandparents-in-law, mother-in-law, and father-in-law.

4.     An Evening College faculty member shall be entitled to a paid bereavement leave of one day for a death in the faculty member's immediate family. The immediate family is defined as the employee's spouse, common-law spouse, mother, father, sisters, brothers, sister-in-law, brother-in-law, children, grandparents, grandparents-in-law, mother-in-law, and father-in-law.

5.     If approved in advance by his/her immediate supervisor, a Day College employee shall be paid for not more than four regular work days of base

pay for the time lost due to personal business during a calendar year. However, none of the said four personal days may be taken for the day or days before or after a holiday, inter-term day, vacation day, or any other time when the College is normally closed.

6. Evening College faculty and Day College faculty working evenings with four units of seniority shall be entitled to four sick days and one personal day per calendar year. Only two sick days may be used in a term except that if a third or fourth sick day is required, the College may require submission of a doctor's note prior to payment of a third or fourth sick day in a single term. Said sick and personal days shall be compensated at the rate of three hours per day. None of the said personal or sick days may be taken for the day or days before or after a holiday, inter-term day, vacation or any other time when the College is normally closed. Banking provisions set forth above in Article 19, Section 1 shall apply to all faculty working in the evening college.

## ARTICLE 20. COMPLAINTS, GRIEVANCE PROCEDURE AND ARBITRATION.

A.    Complaints.  Complaints may be settled or otherwise disposed of, without formalities, between employees and appropriate Company representatives.  At the option of the employee, a representative of the Union may be present.  Answers to a complaint shall be given within five days after discussion is concluded on such complaint.  Such time may be extended by mutual agreement of the parties.  Nothing herein shall be construed as restricting the rights of the individual employees to present complaints to the Company through the regular channels of the Company, or the rights of the Company to adjust such complaints, provided that such adjustment shall not conflict with the provisions of this Agreement.

B.    Grievances.  A grievance is defined as an alleged violation arising out of the application of an express provision of this Agreement.  Only such a grievance, when reduced to writing, shall be processed in accordance with the following steps in this grievance procedure, except in the case of a Dismissal Grievance, which may be taken immediately to Step 2 and then processed in accordance with the remaining steps of this grievance procedure.  All time limits,

including mutually agreed extensions thereof, shall be strictly adhered to by both parties. If the Company fails to respond in writing within the applicable time limit, the Union may appeal to the next step. Any appeal must be made in writing to the Company representative at the next higher step. If the Union fails to appeal in writing within the applicable time limit, the grievance shall be deemed settled on the basis of the Company's last reply. In the case of all grievances, time shall be considered of the essence. A grievance shall include (1) a clear statement of the grievance, and (2) the specific remedy requested of the Company. The aggrieved employee may be present at the respective steps of the grievance procedure.

     C.   <u>Submission of Grievances</u>. All grievances shall be submitted as soon as practicable after the occurrence upon which the same is based, but in no event later than seven working days if the same is a Dismissal Grievance or thirty calendar days if the same is a grievance arising from any other cause. The failure to submit a grievance within such period shall constitute a bar to further action thereon. If it is determined under the grievance and arbitration procedure that an adjustment in wages is appropriate, such adjustment shall be applied retroactively to the date of occurrence, provided that such date is not more than ninety calendar days prior to the date upon which the grievance was presented.

53

    D.    <u>Grievance Steps and Representatives of the Parties Therein</u>.  A grievance shall be negotiated in each of the following successive steps between the representatives of the parties specified in each step.  Any agreement reached in writing between those representatives designated at any step shall be binding on all parties to the Agreement and shall preclude any further action on the subject grievance.

    STEP 1:    Between the Immediate Supervisor and the Employee Designated by the Union as Step 1 Grievance Committee Member.  The first step meeting shall be held within five working days from the date the grievance is filed with the Company, unless a new date is set by written mutual agreement.  The supervisor shall give the Grievance Committee Member a reply to the grievance within five days after the meeting with the Committee Member.  If this reply is unsatisfactory, the Grievance Committee may appeal the decision to Step 2, provided such appeal is received by the Company within five working days after receipt of the supervisor's reply.  A meeting in Step 2 shall be held within seven working days after receipt

by the Company of notice of appeal unless a postponement is jointly agreed to in writing by the Company and Union representatives designated in Step 2.

STEP 2:    Between the Next Level of Supervision and the Two Employees Designated by the Union as Step 2 Grievance Committee Members. A representative of Local 2110 may be present at this and successive steps of the grievance procedure. The Company representatives shall give their written reply within five working days after the meeting with the Grievance Committee Members.    If this reply is unsatisfactory, the Grievance Committee may appeal this reply to Step 3, provided the appeal is received by the Company within five working days after the receipt of the Company representative's reply.    A meeting in Step 3 shall be held within ten working days after receipt by the Company of notice of appeal unless a postponement is jointly agreed to in writing by the Company and Union representatives designated at Step 3.

STEP 3:    Between the Company Designated Representatives and the Chief Grievance Committee Member (an Employee) and Two Employees as Designated by the Union for Step 3. The Company representatives shall make a reply in writing not later than ten working days after meeting with the Union representatives. If this reply is unsatisfactory, the grievance may be appealed to arbitration as herein provided.

E.    Arbitration. A grievance which has not been settled or disposed of in accordance with the steps of the grievance procedure outlined above may be submitted by the Union to arbitration not later than ten working days after receipt of the Step 3 reply. The Union may submit the dispute to arbitration by sending a letter specifying the issue to be arbitrated to the American Arbitration Association and the Company. The arbitrator shall be designated pursuant to the procedure followed by the American Arbitration Association. Neither party shall be required to arbitrate more than one grievance in any one arbitration, except by mutual agreement. Subject to this Section, the parties agree that the decision or award of such Arbitrator shall be final and binding on each of the parties. The authority of the Arbitrator shall be limited to determining questions involving the application of

56

express provisions of this Agreement, and no other matter shall be subject to arbitration, hereunder. The Arbitrator shall have no authority to add to, subtract from or to change any of the terms of this Agreement, to change any rate in the schedule of salary rates or to establish a new salary rate. Each party shall bear the expenses of preparing and presenting its own case. The cost, if any, of the Arbitrator and incidental expenses mutually agreed to in advance shall be borne equally by the parties hereto. In no event shall the same question or issue be the subject of arbitration more than once. No employee will be compensated for time spent in arbitration proceedings.

## ARTICLE 21. UNION ACTIVITIES.

A.    <u>Activities of Union Members</u>. Except as otherwise provided in the Agreement, no employee shall engage in any Union activity or business on Company time. Nor shall any officer of the Union or employee engage in such activity or business on Company premises, except during the free time of the officer and all other employees involved.

B.    <u>Recognition of Grievance Committee Members</u>. The number of Grievance Committee Members to be recognized by the Company shall be determined by mutual agreement of the parties. However, at no time shall the total

number of Grievance Committee Members in the bargaining unit exceed one Grievance Committee Member for every 25 bargaining unit employees.

C.  Duties of Grievance Committee Members.  The duties and activities of the Grievance Committee Members (except where otherwise specifically agreed between the parties) while acting as such shall be limited to the handling of grievances and complaints in accordance with the grievance procedure. Faculty Members who act as Grievance Committee Members shall not leave the classroom to engage in the settlement of grievances and complaints under the grievance procedure, or other recognized Company/Union business, except where such activity cannot be undertaken at other times.  Technicians or Maintenance Persons who act as Grievance Committee Members shall continue at their regular work in the same manner as other employees, except when they are engaged in the settlement of grievances and complaints under the grievance procedure.

When a Grievance Committee Member is required to leave his/her assigned work for the orderly and expeditious handling of a grievance, complaint or other recognized Company/Union business, he/she shall obtain the prior approval of his/her supervisor and such approval shall not be unreasonably withheld.  If

necessary, the Grievance Committee Member shall remain at his/her assigned work until a reasonable time is afforded to provide a substitute in his/her place.

    D.    <u>Payment for Time Spent Handling Grievances</u>.   All Union business and activity shall be on the employee's own time except that time spent on recognized Company/Union business and administration of this Agreement by Grievance Committee Members, adjustment of grievances during the complaint stage by the Grievance Committee Members, and adjustment by Grievance Committee Members, shall be paid as follows:

    1.    Faculty Members shall be paid for time lost from classroom assignments.

    2.    Technicians/Maintenance Persons shall be paid for time lost from normal working hours.

    E.    <u>Payment for Attendance at General and Executive Council Meetings</u>.  If stewards and local officers cannot schedule their attendance at Union general and executive council meetings on non-working time, such attendance shall be on a paid basis as long as reasonable prior notice is given to the Company.

    F.    <u>Time Off for Union Meetings</u>.  Employees shall be entitled to one (1) hour off with pay per year for Union meetings.  Requests for additional time off with pay for Union meetings shall not be unreasonably withheld.

G.    <u>Office Space and Release Time for Chief Union Steward</u>.  The college agrees to provide office space for the chief union steward to be used for union activities.  The chief union steward will receive one-third paid release from work schedule (at least 6 hours of release time), if part of the faculty bargaining unit.

## ARTICLE 22.  HEALTH CARE INSURANCE.

1.    TCI will provide regular full-time Day College employees who have completed their probationary period with health care coverage pursuant to an employer sponsored health care plan.

2.    TCI will pay the full premium cost of the Local 2110 Community Based GHI Plan for employees electing either individual or family coverage.

3.    Evening College faculty may enroll in the group health insurance plan at the group rate plus 2%.

## ARTICLE 23.  GENERAL PROVISIONS.

A.    <u>Effect of Law</u>.  In the event that now or hereafter there is any state or federal law or any directive, order, rule or regulation made pursuant thereto,

which is in conflict with any provision of any agreement between the parties, it shall supersede such provision or provisions and shall thereafter govern and control the relations and conduct of the parties so long as such law, directive, order, rule or regulation shall remain in force and effect. In the event that this or any other agreement existing between the parties hereto, now or hereafter requires the approval of any governmental authority before becoming effective, the same will and shall be subject to such approval.

      B.     <u>Separability</u>. If any provision of this Agreement is held invalid, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect.

      C.     <u>Waiver</u>. The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make such demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the parties, for the life of this Agreement, waive the right, and each agrees that the other shall not be obligated, except as otherwise provided in this Agreement, to bargain collectively with respect to any

subject or matter referred to or covered in this Agreement, waive the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of any of the parties at the time this Agreement was negotiated or signed.

D.    Notices.    Except where otherwise specifically provided, any notice under this Agreement will be properly given if it is in writing and sent by registered or certified mail or delivered in person and duly acknowledged in writing and if directed to the Union, it is addressed to the Union headquarters, attention of the Union's designee; if directed to the Company, it is addressed to the president at his/her office; if directed to an employee, it is addressed to the last address furnished by him/her in writing to the Personnel Department.

E.    Filling of Vacancies.    Before hiring employees from the outside as Day College Instructors, the Company will consider Evening College Faculty Members for such positions; and, before hiring employees from the outside as Evening College Instructors, the Company will consider Day College Faculty Members for such positions. Qualified employees, as determined by the Company,

shall be offered such positions in the order of seniority. If a vacancy cannot be filled in this manner, the Company will consider qualified Technicians, as determined by the Company.

Any Faculty Member or Technician wishing appointment to a Day College or Evening College position shall register this desire in the personnel office. The personnel office shall notify the Union of such registration in writing.

F.    Job Descriptions.

1.    Every employee other than faculty shall receive a copy of his/her job description.

2.    Should the Company choose to change the volume, function, or the duties or responsibilities of an existing job, it shall give the Union two weeks' advance notice thereof, specifying the proposed changes, their effective date, and the proposed change in the wage or job grade, if any.

3.    Notice of newly-created bargaining unit positions shall be given to the Union at the earliest possible time, but in no event less than two weeks prior to the creation of said new job. The Company shall include in the notice of a new bargaining unit job, its job grade, title, job description and effective date, and

shall promptly meet with the Union upon request to discuss the proposed new position.

G.    Dress Code.  Employee attire shall be appropriate for the nature of their job and the area in which they work.

H.    Record of Disciplinary Action.  Except for reprimands involving incidents of violence, or harassment based on sex, race or any other protected classification, which shall remain in an employee's record for an eighteen month period, the Company will consider reprimands or disciplinary action against an employee as cleared from his/her record after a twelve-month period from the date of issuance, provided that there have been no further infractions during that period. The employee's record may be cleared earlier, when, in the judgment of the Company, his/her past service record warrants such action.

I.    Tools.  All tools and test equipment required by Technicians in performance of their assigned tasks shall be supplied by the Company.  Each employee shall be responsible to account for the tools and test equipment so supplied, ordinary wear and tear excepted.  Non-expendable tools and test equipment lost, damaged, or stolen through employee negligence, shall be replaced or paid for by the employee.  It shall be the employee's responsibility to request

replacements for tools and to maintain his/her tool supply in good and complete condition.

      J.    <u>Bulletin Boards</u>.  The Company agrees to provide space for a bulletin board for posting non-controversial notices and announcements concerning Union meetings, Union elections, appointments to office, and Union social or recreational affairs.  It is agreed that only notices approved by the Company shall be posted.  Approval of such posting shall not be unreasonably withheld.

      K.    <u>Evaluations</u>.

      1.    The evaluation of Instructors shall be ongoing.  Such evaluations shall be performed twice a year for Instructors during their first three years of continuous employment.  Instructors with continuous employment of more than three years shall be evaluated once a year, except in the event of need.

      2.    The evaluation of Instructors shall be performed by members of the faculty and a representative of the Dean's Office.  The evaluators will confer with the evaluated Instructor prior to summarizing a report to be submitted to the Vice President for Academic Affairs.  In the event of dispute, the items in dispute will be noted.  The summary will be submitted.

3.    In the event the evaluation indicates further review, the Vice President for Academic Affairs may evaluate the Instructor, or make recommendations based upon the report.

4.    Evaluation teams will be drawn from a list of qualified people, prepared by a faculty-management committee.    Membership on this committee shall not exclude an individual's participation on evaluation teams.

5.    Student Evaluations.  The College may review student evaluations of faculty members.  Said evaluations may be used for counseling to enhance job performance, but may not be used to discipline a faculty member and shall not be included in the faculty member's personnel file.

L.    Visitation Rights.   Upon prior approval from the Company, Union representatives may visit the College for the purpose of conferring with employees covered by this Agreement.   Such visits shall not disrupt College operations.

M.    Cancellation of Classes.  When a publicly known emergency exists (such as public transit breakdowns or severe weather conditions), it shall be the duty of Evening College Instructors to contact the College to verify whether or not classes are to be held.  An Evening Instructor who is advised by the Dean to

66

report for work and does so, shall receive his/her normal day's pay whether classes are held or not.

N.    Class Size.

1.    Except during the first two weeks of any term, or three weeks if the start should occur on a Thursday or Friday, the maximum number of students scheduled for any class shall not exceed the following at the time of final enrollment:

| | |
|---|---|
| ESL Courses | 25 students |
| Remedial Math Courses | 25 students |
| Writing Courses | 25 students |
| College Seminar | 25 students |
| Lab Class | 30 students |
| Computer Lab Class | 25 students |
| Lecture Class | 35 students |

This limitation shall not apply to the microprocessor course or other such special courses.

2.    In the event the above maximums cannot be observed, if at the time of final enrollment there is an overage of: (1) more than one, but less

than six students the instructor shall receive an additional 10% hourly rate of pay, or (2) more than five but less than eleven students, the instructor shall receive an additional 25% extra hourly rate of pay. In the event the overage is more than ten students, management will make an effort to split the class.

       3.    Instructors responsible for their class plus an additional class of over seven students shall receive double pay therefor.

       O.    <u>Supply Allowance</u>. Faculty members shall receive a supply allowance of $15.00 per year to be used as needed.

       P.    <u>Life Insurance</u>. After the completion of the probationary period, employees aged 64 and younger shall be entitled to life insurance coverage in the amount of twice their base annual salary up to a maximum of $300,000. After 65 and through age 75, maximum coverage will be reduced by 35% in five-year intervals (*i.e.*, at 65, 70, and 75 years). For ages 80 and above maximum, coverage will be reduced by an additional 25% at five-year intervals (*i.e.*, at 80, 85, 90, and 95). TCI reserves the right to change life insurance providers as long as equivalent coverage is provided.

Q.  <u>Transitchek</u>.  The college will participate in the transitchek program.  Participation will be voluntary and shall be paid by the bargaining unit members wishing to take advantage of this program.

R.  <u>Assignment of Faculty to Disciplines within Departments</u>.  The Vice President of Academic Affairs will work with deans and department faculty to determine the proper assignment of each faculty member to an appropriate academic department.  A list of agreed-to assignments will be produced by September 1, 1999.  For all faculty members for whom a department assignment is not agreed by September 1, 1999, there will be a single arbitration in which a mutually agreed arbitrator will make a final determination as to the appropriate departmental assignments for those faculty members.  If an arbitrator cannot be agreed to, an arbitrator will be chosen in accordance with arbitration provision in the faculty CBA.

A good faith effort will be made to assign courses to each faculty member in their primary discipline within the department for base load and for overload.  If base load and/or overload cannot be filled from courses within their primary discipline for a particular faculty member, courses in other disciplines and/or departments for which that faculty member is qualified will be assigned, if available.  Disagreements

69

regarding course assignment will be resolved through the grievance process defined in the faculty CBA.

There shall be no layoffs as a direct result of the above change in the method of course assignments; this shall not preclude layoffs caused by reduced enrollment or other economic causes.

    S.    <u>Faculty Participation on Middle States Committees</u>.  In order to adequately develop College-wide participation in Middle States Committees, TCI will solicit the faculty for volunteers.  However, in the event that the College determines that there are not enough volunteers, TCI faculty shall be assigned to serve on no more than one committee per the life of this agreement without additional compensation.

    T.    <u>Faculty Training (Other Than Harassment and Sensitivity)</u>.  TCI will provide training workshops for faculty, without providing additional compensation, as long as faculty members are not required to attend such training. For other employees, any training workshops provided by TCI during normal working hours shall be without extra pay.

    U.    <u>Required Attendance at Graduation</u>.  The faculty will be required to attend the TCI graduation ceremony, without additional pay, as long as it

is scheduled between 11:00 a.m. and 4:00 p.m., Monday through Friday, excluding contracted holidays.

V.    <u>Harassment and Sensitivity Training</u>.  Each collective bargaining unit member shall be required to attend harassment and sensitivity training, up to nine hours a year, without additional pay.  Training must be scheduled in such a way as to be consistent with Article 10.E of CBA.

W.    <u>Benefits.</u>  Day faculty working in the Evening College shall be entitled to evening benefits.

X.    <u>School Calendars</u>.  School calendars shall be prepared by the College and included in the collective bargaining agreement.  For good reason and upon notice to the Union, the College may modify the calendar for a term, except with respect to any aspects of the schedule which affect terms and conditions of employment subject and to provisions within the collective bargaining agreement which may only be modified through negotiation provided that the Union is notified of the change to the calendar no later than two weeks prior to the end of the previous term.

## ARTICLE 24. TUITION EXEMPTION AND AID.

A.    Tuition Exemption.    When approved in advance by the immediate supervisor, employees and their immediate families (spouse, common law spouse, and any adult children) may be permitted to attend courses listed in the College catalog, provided that such courses are available and the person is qualified as determined by the Company.    The only cost to be borne by the College for a sponsored student shall be tuition.

B.    Tuition Reimbursement.    TCI is committed to supporting employees who wish to improve their knowledge and teaching competence.    TCI will establish a $30,000 dollar reimbursement pool in the first year of this Agreement, $30,000 dollar reimbursement pool in the second year of this Agreement, and a $30,000 dollar reimbursement pool in the third year of this Agreement.    The tuition reimbursement pool will be effective from October 1 to September 30 of the following year, commencing on October 1, 1998.    If the total amount of reimbursement requested in a given year is less than the tuition reimbursement pool allowance, the remainder shall be carried forward to the following year.    But in no case shall the total reimbursement pool allowance for any given year exceed $60,000.

The following conditions must be met in order to be eligible for tuition reimbursement:

    1.    After a full year of employment, members of the Collective Bargaining Unit are eligible for tuition reimbursement benefits for courses offered at other colleges or universities. The proposed course work should not be available at TCI and must be such that it will directly improve the skills of the employee in performing his/her present duties.

    2.    The course must be pre-approved by the Vice-President of Academic Affairs for all instructors and by department Vice Presidents for all other employees.

    3.    The employee must maintain good academic standing. Tuition reimbursement will be made only for those courses with a grade of "C" or better for under graduate work and a grade of "B" or better for graduate work.

    4.    The employee is responsible for the payment of all fees and expenses other than tuition.

    5.    If the employee is separated from employment, except in the case of layoffs TCI will pay for the term which the employee was enrolled in at the

point of layoff, the individual is responsible for the payment of the balance of the term.

6.    The employee will be reimbursed at the end of the semester upon submission of the following:

(a) Proof of payment of tuition charges from the qualified institution's bursar's office.

(b) Proof of successful completion of the course with the appropriate grades as noted above.

TCI will not advance tuition payments.

7.    TCI will reimburse the employee 100% of tuition up to a maximum of SUNY's per credit charge.

(a)    Tuition reimbursement will be calculated net of any scholarships, and or grants.

8.    Employees shall receive a 5% increase if they achieve a degree and/or another degree.

9.    Flex or Release Time.    Flex or release time to be allowed whenever possible and consistent with operational requirements for educational purposes.  Such flex or release time shall not be unreasonably denied.

## ARTICLE 25.  DISCHARGE OR DISCIPLINE.

No employee shall be discharged or disciplined by the Company except for just cause.  The Company will notify the Union in writing of any discharge by the next workday following the discharge.  Copies of any written warnings will be provided to the Union.

## ARTICLE 26.  SUBCONTRACTING.

A.     Anything to the contrary notwithstanding, the Company shall continue to have the right to retain subcontractors for maintenance work, when in the judgment of the Company special skills or equipment is required or when the work cannot be completed on a timely basis due to lack of manpower available. This right shall not be exercised to permit layoff or cause a discharge of covered employees.

B.      Nothing contained herein shall be deemed to amend the contract or change its application with respect to any employee within the bargaining unit covered by the contract at its inception.

## ARTICLE 27.  401(K) PLAN.

The Company shall administer the 401(K) Plan in accordance with the terms of the Technical Career Institutes, Inc. Deferred Savings Plan plan document which shall be modified from time to time and may include employees outside the unit.  The Company shall contribute 50 percent of an employee's contribution per year up to six percent of an employee's total earnings for the particular year.  Such contributions shall be made within fifteen (15) days after the end of the month in which contributions are to be made.  The maximum employee contribution per year shall be governed by law.  Vesting, effective October 10, 1992, shall be as follows:

After two years of service - 25 percent

After three years of service - 50 percent

After four years of service - 100 percent

## ARTICLE 28.  ALCOHOL AND DRUG ABUSE POLICY.

The Company's Alcohol and Drug Abuse Policy is attached hereto as Appendix "A."

## ARTICLE 29.  HEALTH, SAFETY, HYGIENE, AND VIDEO DISPLAY TERMINALS.

A.    The Company will make every effort to provide a clean and safe working environment, and to comply with all applicable health and safety laws. The Company will promptly correct health and safety hazards after they are brought to its attention.

There shall be a Union Health & Safety Committee which shall meet with management at regular intervals to discuss issues with respect to health, safety and hygiene conditions.

B.    During Registration periods only, employees performing intensive video display terminal ("VDT") work shall be entitled to a ten-minute break every hour.

C.    If, for non-correctable reasons, a qualified Company-approved ophthalmologist notifies the Company and the employee in writing that the employee's continued operation of a video display terminal ("VDT") may result in

damage to the employee's vision, the Company will place the employee in another position at the Company which does not require the operation of a VDT at no loss of pay.  If there are no such positions, the Company will place the employee in the position which requires the least amount of VDT usage.  If there is no such vacancy available, the employee will be placed in the next such available opening.

      D.    Although research to date has not proven that VDTs are a health or safety hazard, in recognition of employee concern about the potential adverse effects involving pregnancy, the Company agrees to the following:  Upon request, the Company will attempt to reassign a pregnant employee to work which does not require the use of a VDT.

      E.    There is a designated smoking area in the building.

      F.    TCI will provide, upon request, support belts (for lifting) and telephone headsets to employees in need of such.

## ARTICLE 30.  CREDIT UNION.

A.    Upon written notice from the T.O.P., LOCAL 2110 Credit Union, the Employer will deduct all Credit Union payments as provided for in the authorization form set forth below, upon the condition that at the time of such notice, the LOCAL 2110 Credit Union shall furnish the Employer with a written authorization executed by the worker in the following form:

> "I hereby authorize and direct my Employer to make deductions from my salary each pay period and transmit monthly such amount to the T.O.P., LOCAL 2110 Credit Union, 71 5th Avenue, New York, New York 10003, to be credited towards my Credit Union Account. This authorization shall be effective until revoked on thirty (30) days' written notice to the Employer."

B.    The Employer agrees that upon individual authorization from members, periodic Credit Union payment shall be deducted by the Employer from

the members' pay each pay period and forwarded to the Credit Union within fifteen (15) days after the end of the month in which the monies were withheld.

          C.     The Employer will notify the Union promptly of any revocation of such authorization received by it.

          D.     The Union shall hold the Company harmless from any and all claims, suits or other proceedings arising out of any action taken by the Company in complying with the above.

## ARTICLE 31.  DURATION AND NOTICE OF CHANGE OF TERMINATION.

          Except as otherwise provided herein, this Agreement shall be effective on October 10, 1998, and shall continue in force and effect until midnight on October 9, 2001, and thereafter shall be automatically renewed from year to year unless notice in writing shall be given by either party to the other of changes desired in the Agreement or of the termination at least 60 days prior to a subsequent applicable expiration date after automatic renewal.  If the parties do not reach an agreement with respect to such proposed changes, or a new agreement in the event

An employee taking prescription or non-prescription drugs must report this use to his or her supervisor when the use of drugs may affect the worker's ability to properly perform his or her assigned duties. This reporting requirement is intended to protect the safety of each employee and his or her co-worker. This information will be kept confidential unless the Company has a reasonable suspicion, as defined below, to believe that the use of these drugs has impaired the employee's performance. Employees failing to follow this instruction may also be subject to disciplinary action.

B. Alcoholic Beverages

The possession, drinking, or working under the influence of alcohol while on Company premises is inconsistent with the Company objective of operation in a safe and efficient manner. Accordingly, no employees, contractor, student or visitor shall use alcoholic beverages during working hours, or while on Company property.

Additionally, no officer, employee, agent, or contractor shall report to work under the influence of alcoholic beverages. Employees in violation of this policy will be subject to discipline up to and including termination of employment.

III. DRUGS AND ALCOHOL SCREENING

A. An employee whose job performance is unsatisfactory due to excessive drinking, or due to an illicit drug problem, will be required to obtain treatment (the cost of which shall not be borne by the Employer), and shall be given an opportunity to recover.

B. After the employee completes the treatment program, he/she must pass a drug and/or alcohol screening prior to being allowed to return to service. If the employee fails the medical re-examination, or refuses to submit to the required screening tests, he/she will be subject to discharge.

C.    If the employee passes the medical re-examination he/she will be permitted to return to work.    Such reinstated employee will be subject to unannounced drug and/or alcohol screening test scheduled at management's discretion for two years following his/her return to work.

D.    Any subsequent positive test result or refusal to submit to a random drug and/or alcohol screening by a reinstated first offender will be considered grounds for discharge.

## IV. REASONABLE SUSPICION DRUG/ ALCOHOL TESTING.

If the college has reasonable cause to believe that an employee's ability to work is impaired by the influence of drugs or alcohol, the College shall have the right to require the employee to submit to a drug/ alcohol test.    Such test shall be performed at the expense of the College during the employee's regular work hours.    The employee shall be informed by the College that the employee has the right to have a Union shop steward present during the test.

The College shall immediately notify the Union, in writing, of its demand for a test and the reasons therefor, and the College shall notify the Union of the test results as soon as the results are available.

The Union has the right to demand a confirmatory test within 48 hours of notification of the results of the initial test, to be performed on the same specimen used by the College and conducted at the College's expense.

The College is required to store the specimen in a proper manner to maintain the integrity of the specimen pending the Union's confirmatory test.

## MEMORANDUM OF AGREEMENT

Agreement made this 10th day of October, 2001, by and between T.O.P LOCAL 2110 UAW — AFL-CIO (the "Union") and TECHNICAL CAREER INSTITUTES, INC. (the "College" or "TCI"). This Agreement amends: (A) the collective bargaining agreement between the parties covering a unit of instructors, laboratory technicians and maintenance employees; and (B) the collective bargaining agreement between the parties covering a unit of office clerical employees. Each of these agreements was in effect from October 10, 1998 through October 9, 2001.

1.    Term of Agreement. The new collective bargaining agreements shall take effect on October 10, 2001 and expire on October 9, 2004.

2.    Wage Increases. Employees shall receive the salary increases set forth in the following schedule:

| Effective Date | Faculty | Non-Faculty |
|---|---|---|
| October 10, 2001 | $40.00 | $40.00 |
| October 10, 2002 | $20.00 | $20.00 |
| April 10, 2003 | $20.00 | $20.00 |
| October 10, 2003 | $20.00 | $20.00 |
| April 10, 2004 | $20.00 | $20.00 |

Evening faculty and part-time clerical employees shall receive the salary increases on a pro rata basis. The base hourly rate for day faculty shall remain base weekly rate x 1/20. The Evening Faculty hourly rate shall also be based on 1/20.

3.    Minimums. All minimums shall be increased by the amounts of the wage increases set forth above.

4.    Paid Time Off for Faculty.

(a) Personal Days. Personal days for evening faculty members shall be increased to two per year, no more than one of which may be taken in a single semester.

(b) Holidays. Evening faculty shall receive Christmas as a paid holiday.

5.    Paid Time Off for Clericals

Clericals shall receive an additional administrative holiday, to be taken during the Spring semester.

6.    Class Size. There shall be a maximum of 20 students in ESL and remedial writing, English and math classes. The other provisions of Article 23, Section N shall remain unchanged.

7. <u>Salary Increases for Additional Degrees</u>. Salary increases for additional degrees shall only be granted for degrees from: (a) institutions for higher education that are eligible to receive Title IV funds; and (b) comparable foreign and domestic institutions, as determined by the College's Credentials Office. Disputes as to comparability may be resolved through the grievance and arbitration procedure, if necessary. The Arbitrator may only reverse a determination of the Credentials Office if the Arbitrator finds that the Credentials Office abused its discretion, or otherwise acted unreasonably.

8. <u>Middle States Involvement</u>. Faculty involvement in Middle States shall be continued without compensation, on the same basis as set forth in the 1998 to 2001 agreement.

9. <u>Eliminate Smoking Room</u>. The College shall no longer be required to maintain a designated smoking room.

10. <u>Children on Campus</u>. Employees are not permitted to bring their children on campus for child care purposes or for other extended periods of time, except for days such as "Bring Your Daughter to Work Day."

11. <u>Grievance Notices</u>. Grievance notices must be signed or initialed by a shop steward or a Union representative, and provide sufficient information for the College to be able to investigate the grievance. A failure to initial or sign the grievance shall not affect the timeliness of the grievance. The College will not deny a grievance that lacks sufficient information to investigate; it shall request additional information from the Union.

12. <u>Mandatory Overtime</u>. Article 9 in the Clerical agreement shall be amended to provide that mandatory overtime will be equitably distributed.

13. <u>Notice of Union Activity</u>. Except in emergencies, or as otherwise appropriate in the circumstances, the shop steward, unit chair, chief steward or Union shall provide at least one day's notice of a shop steward, unit chair, chief steward or Union activity that would require coverage of his or her work assignment in order for the College to arrange coverage. To be deemed "one day's notice," notice must be received by the College by 4:00 p.m. on the day before the proposed activity, except where meetings require that coverage be provided for five or more employees, in which case notice must be received by 2:00 p.m. on the day before the proposed activity. Upon mutual agreement, the parties may waive or shorten the notice period. Nothing herein shall be deemed to be a waiver of <u>Weingarten</u> rights.

14. <u>Leaves of Absence</u>. Modify Section A of the Leave of Absence provision in each collective bargaining agreement to read as follows:

Except for military service, a leave of absence shall be applied for in writing on the forms to be provided for that purpose. All such

applications shall set forth the reason for the leave, and provide a minimum notice of at least two weeks, except in an emergency. Requests for leaves shall not unreasonably be denied.

15. <u>Improved Dental Plan</u>. The College will cover fully the costs of the improved GHI Dental Plan.

16. <u>Optical Plan</u>. The College will provide coverage under the Davis Vision Plan.

17. <u>Parental Leave</u>. For a documented pregnancy disability, the College will supplement a sixth week (*i.e.*, the seventh week of disability) of an employee's New York State disability pay up to the employee's full salary for the week. The College will provide two weeks of paid maternity leave and two weeks of paid paternity leave for child care purposes for any births after October 9, 2001.

18. <u>Section 125 Plan</u>. The College will make Section 125 medical spending accounts and child care accounts available for all employees.

19. <u>401(k) Savings Plan</u>. The Employer contribution to the 401(k) Savings Plan shall be increased to a 50% match up to 4 1/2%, effective January 1, 2002.

20. <u>Sabbatical Plans</u>. Faculty members must follow their approved sabbatical plans. If a faculty member fails to do so, the College may take appropriate action.

21. <u>Sunday Schedules</u>. The College shall have the same right to schedule Sunday hours as Saturday hours, except that mandatory Sunday assignments shall apply only to Evening Faculty hired after October 9, 2001.

22. <u>Tuition Exemptions</u>. Tuition exemptions shall be available to eligible family members only after the employee has been employed for six months.

23. <u>Faculty Probationary Periods</u>.

a. <u>New Hires</u>. The probationary period for new hires shall be three terms plus one additional term upon request to the Union. Such request shall not be unreasonably denied.

b. <u>Evening Faculty Taking Day Positions</u>. Evening faculty taking day positions shall serve a probationary period of one semester.

c. <u>Effect on Benefits</u>. The longer probationary periods shall have no effect on when affected employees shall become eligible for benefits. For example, health benefits will continue to be granted after 90 days of employment.

24. Access to Campus. An employee who is discharged and/or banned from the campus shall not be permitted to return to campus as a dependent student or in any other capacity unless the College, in its sole, unreviewable discretion, permits such return.

25. Technicians Working Beyond 10:00 P.M. Technicians may be assigned to work a full-time 10:00 p.m. to 6:00 a.m. shift in ETSS or Academic Computing Services (or to a position with responsibilities in both departments), and shall receive a 10% differential for such hours. The College shall offer current staff the opportunity to work this shift on a voluntary basis in seniority order (before attempting to fill the position from the outside). Technicians hired after October 9, 2001 may be required to work such a shift. Technicians hired after October 9, 2001 may be assigned to work mandatory overtime after 10:00 p.m. provided that all such hours are consecutive, and there is no break in work hours between the assigned shift and the overtime hours.

26. Work Study Assignments. On an annual basis, the College shall notify the Union of work study assignments, and provide job descriptions for each assignment.

27. Office Space for Evening Faculty. Evening faculty shall be provided a room with desks, lockers and computers at 500 8th Avenue. Within the next six months, evening faculty shall be provided access to computers with internet access in the main building classrooms.

28. First Week of Classes. The second time in a two-year period that a faculty member fails to teach all of his/her scheduled classes during the first seven calendar days of a semester, such faculty member shall be replaced for the semester unless the faculty member has a documented medical condition or an unforeseeable emergency that justifies the absence. Evening faculty assigned to a class that meets once a week must teach either of the first two classes in a semester to avoid remedial or disciplinary action pursuant to this paragraph.

29. Seniority Groups. Redefine seniority groups in Article 13 as follows: (1) Student Affairs, Academic Administration, Library, Mailroom, Admissions receptionists and switchboard operators; (2) Enrollment Management Services (i.e., Registrar, Data Entry & CVO; (3) Student Financial Services; and (4) Admissions (other than receptionists and switchboard operators).

30. Admissions Representatives. Modify Article 29 in the Clerical agreement to read as follows:

1. Admissions representatives whose enrollments and registrations are at or below 82.5% of the department average for two out of any three consecutive semesters shall be subject to discharge. TCI shall provide individualized counseling and training to an employee who is at or below 82.5% of the department average to assist the employee in raising his/her productivity.

2.  Prior to discharge, the College shall provide notice of not less than 30 days to the employee and the Union of the intent to discharge. During this period, the Union may file an appeal directly with the President of the College, which shall be treated as a third step appeal under the grievance procedure.  The President of the College and the Union representative and the employee shall meet and discuss the appeal. If the President rejects the appeal, the discharge shall be subject to grievance and arbitration.

31.  <u>Department Chairs and Deputy Chairs</u>.  Department Chairs and Deputy Chairs who are involuntarily removed from their Chair or Deputy Chair position after having served in such a capacity for more than five years, or who voluntarily leave such a position after having served in such a capacity for more than 15 years, shall be paid three extra hours of pay per week.

32. <u>Notice</u>.  The College shall provide each employee semi-annual notice of sick, vacation and personal days used and banked.

33. <u>Appendix A</u>.  Appendix A (regarding job titles and pay grades), as amended, is annexed.

34. <u>Side Letter</u>.  Side letter providing that pending court litigation between the parties will continue is annexed.

35. <u>Vacations</u>.  Article 13 will be modified to reduce the possibility of vacation conflicts, by adding the following language:

Seniority shall only be used to resolve conflicts between "timely" vacation requests.  To be deemed timely, a vacation request for the period December 1st through May 31st must be received by the previous November 1st, and a vacation request for the period June 1st through November 30th must be received by the previous May 1st.  Untimely requests will be granted on a first come, first served basis, and not in accordance with seniority.  In exigent circumstances, requests will not be unreasonably denied.

36. <u>Maintenance and Technical Employee Vacations</u>.  Maintenance and technical employees shall receive the same vacations as clerical employees.

T.O.P. LOCAL 2110, UAW,          TECHNICAL CAREER INSTITUTES,
AFL-CIO                          INC.


_____      _____


_____      _____

H:\COOPERM\TCI\CBA\Local2110MOA-10-10-01.doc

## MEMORANDUM OF AGREEMENT

Agreement made this 10th day of October, 2004, by and between T.O.P. LOCAL 2110 UAW – AFL-CIO (the "Union") and TECHNICAL CAREER INSTITUTES, INC. (the "College" or "TCI"). This Agreement amends: (A) the collective bargaining agreement between the parties covering a unit of instructors, laboratory technicians and maintenance employees; and (B) the collective bargaining agreement between the parties covering a unit of office clerical employees. Each of these agreements was in effect from October 10, 2001 through October 9, 2004.

1.    Term of Agreement. The new collective bargaining agreements shall take effect on October 10, 2004 and expire on October 9, 2007.

2.    Wage Increases. Employees shall receive the weekly salary increases set forth in the following schedule:

| Effective Date | |
|---|---|
| October 10, 2004 | $20.00 |
| October 10, 2005 | $25.00 |
| October 10, 2006 | $20.00 |

Evening faculty shall receive the salary increases on a pro rata basis.

Day faculty minimum salaries shall be $46,000 per year, effective October 10, 2004; $48,000 per year, effective October 10, 2005; and $50,000 per year, effective October 10, 2006. Minimums for non-faculty classifications shall be increased by the same amount as the across-the-board increases. The respective increases made to comply with these minimums shall go into effect after the across-the-board salary increases go into effect on the applicable dates.

3.    Wage Increases Based on Enrollments. All bargaining unit members can earn an additional wage increase in accordance with the following guidelines, based on enrollment figures to be calculated as of the first day of the fourth week of each semester:

a.    If total cumulative enrollments for the three semesters ending with the fall 2007 semester equal at least 9636, all full-time employees shall receive a weekly pay increase of $10.00, retroactive to April 10, 2007. Evening faculty shall receive pro-rata pay, retroactive to April 10, 2007.

b.    If total cumulative enrollments for the three semesters ending with the fall 2007 semester equal at least 11,079, all full-time employees shall receive a weekly pay increase of $20.00, retroactive to April 10, 2007. Evening faculty shall receive pro-rata pay, retroactive to April 10, 2007.

c.    If total cumulative enrollments for the three semesters ending with the fall 2007 semester equal at least 12659, all full-time employees shall receive a weekly pay increase of $30.00, retroactive to April 10, 2007. Evening faculty shall receive pro-rata pay, retroactive to April 10, 2007.

4.    <u>College Closures.</u>

        a.     Definition of Unforeseen Circumstance.  An unforeseen circumstance is an incident that occurs beyond the control of the College.  A power outage, a transit strike, an act of terrorism and inclement weather are examples, among other things, of incidents beyond the control of the College.

        b.     Announcement of Closure.  TCI will, to the extent possible, announce a college closure on 1010 WINS AM radio and on the incoming phone message on (212) 594-4000.  The announcement of a closure can occur prior to the start of the business day or during the middle of a day.

    1.    <u>Closures Prior to 8:00 a.m.</u>  Wherever possible, the College will announce such a closure prior to 6:00 a.m.  TCI will compensate all collective bargaining unit (CBU) members for their regular pay for the entire day in which the closure occurred; for faculty members, pay shall include scheduled overload hours.

    2.    <u>Mid-day Closures.</u>  If the College must close in the middle of a business day, TCI will compensate all CBU members for their regular pay, as noted <u>above,</u> for the entire day in which the closure occurred.

    3.    <u>Additional Consecutive Days of Closure.</u>  If there are additional consecutive days of a closure, TCI will compensate bargaining unit members regular pay, as noted above, for such days.

    4.    <u>Required Work During Closure.</u>  If the College requires an employee to work during a closure, the employee will be paid time-and-a-half for such work.

        c.     Revised Semester Schedule Policies.  If the College must close due to unforeseen circumstances and the day(s) is (are) part of the published semester's schedule (including final's week) and must be made up, the College will institute the following policies:

    1.    The College will replace the day(s) with the most reasonable, proximate day(s), notify the Union of the replacement day(s) and revised schedule, and announce the revised semester schedule as soon as practicable, and will make every effort to ensure that all employees are notified of the revised schedule.

        a.     The College will revise the deadline for final grade submission until 12:00 midnight on the day following the revised last day of exams.

        b.     In a time of emergency or possible closure, it is the responsibility of each faculty and staff member to contact the College to determine the action being taken by the institution.

c.    Instructors are responsible to hold classes based on the College's revised semester schedule.    Faculty will not receive additional pay for time worked during the replacement day(s) of the revised semester schedule.

d.    In those cases where a faculty member can document to the College that scheduled plans conflict with the revised semester schedule, the faculty member is responsible to make every reasonable effort with his/her divisional Dean to ensure that final exams and grades are submitted by the revised deadline.

e.    All faculty and staff will provide and/or update the following contact information to the College's Human Resources Manager.  Such information may be used by the College to contact faculty and staff during or after a College closure.

    i.    home address
    ii.    home telephone number
    iii.    emergency telephone number
    iv.    daytime telephone number (for evening faculty only)
    v.    email address

5.    <u>Class Size Overages</u>.

a.    The current provision with regard to class size overages will be retained, except that the limit for speech classes (Hum 110) will be reduced to 30.

b.    Class size overages will be determined as of the first day of the fourth week of each semester.

6.    <u>ESL/Prep Tech</u>.

a.    At the option of the College, the guaranteed ESL/Prep Tech position in the Learning Center may be held by one employee as a full-time position, or by two employees as half-time positions.

b.    If a faculty member is assigned to an ESL/Prep Tech position on a half-time basis, the remainder of the faculty member's full-time schedule may consist of teaching hours, substitute teaching hours, student advisement hours (including the 5:05 p.m. to 6:05 p.m. hour in an Evening Student Advisement Center), advising an academic club, assisting faculty in publisher, vendor and book selection activities, and other non-clerical Library functions.  Any hours that would be deemed a faculty contact hour shall be counted as two hours toward the faculty member's total schedule.

7.    <u>Evening Student Advisement Center</u>.  If the College establishes an Evening Student Advisement Center, it shall be staffed by day faculty for hours prior to 6:05 p.m., and by evening faculty for hours after 6:05 p.m.

3

8.    _Department Coordinators_.  Department Coordinators shall receive the same pay and benefits as Deputy Chairs.  Department Coordinators shall be given direction and assignments by their Department Chairs and Deans.

9.    _Professional Development_.

a.    Day-faculty members shall use their best efforts to participate in at least one professional development workshop, seminar or conference annually.

b.    Tutors shall be permitted to participate in professional development activities on the same basis as faculty members.

c.    Participation in professional development activities shall continue to be at the discretion of the College, and shall be paid by the College.

10.    _401(k) Plan_.  The College will amend its 401(k) Plan to comply with IRS maximum employee contribution levels whenever those maximums are changed.

11.    _Tech Shifts_.  The permissible hours for technicians shall be from 7:30 a.m. to 10:00 p.m.

12.    _Accreditation Activities_.  The contract provision dealing with Middle States accreditation shall be modified to apply to all accreditation activities, and to make all such activities voluntary.

13.    _Tuition Exemptions_.  In addition to waiving the tuition for employees who take courses at TCI, the College shall waive all fees associated with such courses.

14.    _Tuition Reimbursement_.  The separate tuition reimbursement pools described in each of the collective bargaining agreements shall be replaced by a single reimbursement pool of $60,000 per year, which shall be available for use by all employees, regardless of which collective bargaining agreement applies.  Any unused pool money from the two $30,000 reimbursement pools from the last year of the 2001 to 2004 collective bargaining agreements (but not from the prior two years) shall be rolled into the pool for the first year of the new collective bargaining agreements.  All eligibility and utilization rules set forth in the 2001 to 2004 collective bargaining agreements shall remain in effect, except as set forth above, and except for the following additional changes:

a.    The maximum reimbursement rate shall be raised to twice SUNY's per credit charge.

b.    The yearly contract year cap for reimbursable tuition shall be $5,000 per employee, except that evening faculty members shall be capped at $2,500 per contract year.

c.    Any pool money that remains after the first year of the collective bargaining agreements shall be rolled over to the second year of the agreements.

4

d.    Any pool money that remains after the second year of the collective bargaining agreements shall be rolled over to the third year of the agreements.

e.    Requests for reimbursement must be made within 60 days of the receipt of a grade for any course for which reimbursement is being sought.

15.    Labor-Management Committee.    A Labor-Management Committee will be formed.  Four members will be appointed by the Union and four members will be appointed by the College.    Other bargaining unit members and management representatives may also participate in Committee meetings where they have relevant expertise or input.  The Committee, which will meet at least four times a year, will consider and make recommendations regarding class size, salary equity, licenses, certificates, a faculty ranking system, and enrollment and recruitment issues.  The Local Union representative will be copied on all documents produced by the Committee, and may participate in Committee meetings.

16.    Department and/or Deputy Chairs.    There will be an ESL Department Chair and/or Deputy Chair.

17.    Election of Department Chairs.    Department Chairs will be selected through the following procedure:

a.    Each Dean will select a slate of three faculty members from the applicants for the position for consideration by the full-time faculty in the department at the same time department chairs are currently appointed.   The full-time faculty members in the department shall vote, and the successful candidate shall become the department chair.

b.    There shall be no change in the three-year term that department chairs serve, or in the right of the College to remove a department chair, except that no department chair shall be removed during the first six months of his/her term, except for cause.

18.    Limitation on Course Preps.    The College shall use its best efforts not to give a full-time faculty member a schedule that requires the faculty member to prepare for more than six classes in a semester for his/her base load.  It is understood that teaching multiple sections of a single course does not constitute multiple preps.

19.    Severance Pay.    Employees who are laid off shall receive one week's severance pay for each year of service at the College, capped at five weeks.  Laid-off employees who have successfully completed their probationary period shall receive a minimum of one week's severance pay.

20.    Supply Allowance.    Tutors shall receive the same supply allowance as faculty members.

21.    Computers and Telephones for Tutors.    The College will upgrade the computers that are made available to tutors, and will provide e-mail access for each tutor.  The College will also provide each tutor with a telephone with an extension and voice-mail.

22.    Incentive Plan for Admissions Representatives.

1.    TCI will create a federally acceptable incentive plan. The incentive plan will be placed into effect January 2005 for any semester that exceeds, by at least 5%, the total number of students completing 24 credit hours when compared to the same semester of the previous year. For example: students starting in the A41 semester will be measured after the A43 semester to count those earning 24 credits. This count would be compared to the A51 students and the corresponding count of those students who complete 24 credits after A53.

2.    The minimum size of the incentive pool is $3000 per term. As long as the minimum is met, the size of the incentive pool will be set at the discretion of the College. (The incentive pool shall be $3500 for the first term of this collective bargaining agreement). If the bonus trigger of 5% is exceeded, the incentive pool will be increased by the percentage over 5%.

3.    The incentive pool will be divided among the Admissions representatives as follows: At the completion of three semesters, the College will determine the number of students who have achieved 24 credits. The top three-quarters of the admissions representatives will be eligible for the incentive program. Representatives will be ranked in order of the total number of students each representative has enrolled who have achieved 24 credit hours within the past three semesters. The top 25% of the representatives will equally share 45% of the bonus money with the remainder of the bonus eligible representatives equally sharing 55% of the bonus money. The bottom 25% of the representatives will not receive an incentive award.

4.    If the College reorganizes the Admissions Department in a way that makes it impractical to continue an individual incentive plan, the College will convert the incentive plan into a group incentive plan. The same minimum incentive pool size and thresholds for payouts shall be maintained in any such group incentive plan.

23.    Performance Standards for Admissions Representatives.

Modify Article 29 in the Clerical agreement to read as follows:

1.    Admissions representatives whose enrollments and registrations are below 85% of the department average for two out of any three consecutive semesters shall be subject to discharge. The College will issue a probationary letter as well as provide individualized counseling and training to any representative who is below 85% of the department average to assist the employee in raising his or her productivity.

1a. The College will review each individual representative's conversion rate of accepted-to-registered students in each of the following sub-categories: ATB CELSA, ATB ACCUPLACER, NON-ATB ESL, NON-ATB ENGLISH. If an employee who failed to meet the 85% standard listed in paragraph 1 meets the department average in any two of the four sub-categories, the probation letter will be withheld.

24.    High School Recruiters. The following provisions shall apply to high school recruiters:

6

    a.     High school recruiters shall be classified as pay grade 4.

    b.     High school recruiters shall constitute a separate seniority group, except ~~that admissions representatives on the payroll as of October 9, 2004, shall be grandfathered as having seniority in the high school recruiter seniority group, as well as in their own seniority~~ group.

    c.     High school recruiters shall have a probationary period of two full semesters.

    d.     The College shall have the right to adopt an incentive compensation plan for high school recruiters that is comparable to the incentive plan for admissions representatives.

25.    <u>Release Time for Chief Union Stewards</u>.  The release time provisions in the collective bargaining agreements shall be applied to two chief union stewards, one for the faculty/tech/maintenance unit and one for the clerical unit.

26.    <u>Evening Faculty Space</u>.  The College and the Union will cooperate in a good faith effort to find space for an evening faculty office.  The College will provide evening faculty members with a telephone extension, voice mail and internet access.

27.    <u>Educational Leave</u>.

    a.     All full-time employees shall be entitled to unpaid leave for up to one year in order to go to school on a full-time basis.

    b.     Employees on unpaid educational leave shall be entitled to tuition reimbursement along the same lines as other eligible employees, except that faculty members must be back at work for at least a full semester before they will be eligible for reimbursement, and all other eligible employees must be back at work for 120 days before they will be eligible for reimbursement.

    c.     Requests for reimbursement for courses taken during an educational leave must be submitted within 60 days after the return to work from the educational leave of absence.

28.    <u>Breaks</u>.  Techs, maintenance employees and tutors shall be entitled to two paid 15 minute breaks per day.

29.    <u>Disability Pay</u>.  Disability pay shall be increased to 50% of salary to a maximum of $300 per week until long-term disability begins.

30.    <u>Record Retention</u>.  The record retention provisions of the collective bargaining agreements shall be amended to provide that disciplinary actions for sexual harassment shall be retained in a personnel file for two years.

31.    <u>Breathalyzer Test</u>. Collective bargaining agreements shall be modified to provide that breathalyzer tests are an acceptable method to detect alcohol consumption, and that the Union or the employee who wants a confirmatory test must request one immediately upon receiving the results of a breathalyzer test.

T.O.P. LOCAL 2110, UAW,
AFL-CIO

TECHNICAL CAREER INSTITUTES,
INC.

H:\COOPERM\TCI\CBA\MOA 101004.doc

8

[Type text]

## MEMORANDUM OF AGREEMENT

Agreement made this 10th day of October, 2007, by and between T.O.P. LOCAL 2110 UAW – AFL-CIO (the "Union") and TECHNICAL CAREER INSTITUTES, INC. (the "College" or "TCI"). This Agreement amends: (A) the collective bargaining agreement between the parties covering a unit of instructors, laboratory technicians and maintenance employees; and (B) the collective bargaining agreement between the parties covering a unit of office clerical employees. Each of these agreements was in effect from October 10, 2004, through October 9, 2007.

1.    Term of Agreement. The new collective bargaining agreements shall take effect on October 10, 2007, and expire on October 9, 2010.

2.    Wage Increases. Employees shall receive the weekly salary increases set forth in the following schedule:

Effective Date
October 10, 2007    $40.00
October 10, 2008    $30.00
October 10, 2009    $20.00
April 10, 2010      $20.00

Evening faculty shall receive the salary increases on a pro rata basis.

3.    Bonuses Based on Gross Revenue.

| Year | 10% Increase | 15% Increase | 20% Increase |
|------|--------------|--------------|--------------|
| FY 2008: 2009 Bonus | 1% | 2% | 3% |
| FY 2009: 2010 Bonus | 1% | 2% | 3% |
| FY 2110: 2011 Bonus | 1% | 2% | 3% |

Bonus payments are lump sum payments, and do not become part of base salary.

4.    Evening Faculty Recognition Pay

a.    On October 10, 2007, all evening faculty who have at least five years of service will receive one-half week's pay.

b.    On October 10, 2008, all evening faculty who have at least five years of service will receive one-half week's pay.

5.    401(k) Savings Plan.

TCI's contribution to the 401(k) Savings Plan shall be increased to a 50% match up to 5 ½%, effective October 10, 2009.

[Type text]

6.    Evening Faculty Sick and Personal Days.

Evening faculty sick and personal days will be paid per contact hours assigned.

7.    Administrative Days.

Clericals shall receive a third administrative day, to be taken during the summer semester.  Tutors shall receive three administrative days, and maintenance employees shall receive one administrative day.

8.    Department Chairs, Deputy Chairs and Department Coordinators.

Department Chairs, Deputy Chairs and Department Coordinators who are involuntarily removed from their positions after having served in such a capacity for more than five years, or who voluntarily leave such a position after having served in such a capacity for more than 9 years, shall be paid three extra hours of pay per week.

9.    Distinguished College Professor.

a.    At its discretion, TCI can appoint an individual with exceptional achievements in one of the fields taught at TCI to the position of "Distinguished College Professor."  The position is unpaid and has no teaching responsibilities.  As an honorary position, the Distinguished College Professor is not part of the collective bargaining agreement.

b.    Distinguished College Professors will be expected to give an occasional lecture, seminar or workshop by means of which they will share their knowledge and experience with the TCI community.  They may also be invited to meet with Programs, Divisions, and Industrial Advisory Councils.

c.    The term of a Distinguished College Professor is unlimited.  No more than four individuals can hold this position at the same time.

10.    Temporary Employees.

Temporary employees can be hired for a specified period under specific circumstances, subject to the following restrictions:

a.    While conducting an active job search to fill a non-faculty vacancy, or during registration, the College may use a temporary employee for a period of up to 45 days.  The College may hire a temporary employee to fill a special project for up to 90 days.  In the event that such an employee is made a regular employee in the same or substantially similar position to the position in which the employee was a temporary employee, the time worked as a temporary employee will count towards the probationary period.  If a temporary employee is made a regular employee in any other position, the time spent in the temporary position shall not count towards the probationary period; however, the period of temporary employment shall be credited toward his/her seniority.

2

[Type text]

    b.    In the event a non-faculty employee is on leave, the College may appoint a temporary to fill in for the length of the leave of absence. Such individual shall receive no less than the minimum for the position he/she is filling, and shall be paid for holidays which occur during the period of the temporary appointment. In the event that the period of temporary employment lasts longer than 90 days, such individual shall be covered by the provisions of the contract with the exception of severance and recall rights. In the event that such individual becomes a regular employee, such individual shall be covered by all provisions of the contract and the period of temporary employment shall be credited toward his/her seniority.

    c.    While conducting an active search to fill a faculty vacancy or in the event of a temporary vacancy as a result of a faculty leave, the College may appoint a temporary instructor for one semester. The period may be extended for an additional semester subject to agreement by the Union, which shall not be unreasonably withheld. Prior to appointing a temporary instructor from outside TCI, the College shall first endeavor to appoint a qualified TCI adjunct faculty member to the temporary position. The adjunct faculty member shall receive the benefits of a full-time faculty member during the period of temporary employment. In the event that he/she receives a permanent full-time appointment, the period of temporary employment shall be credited toward his/her seniority. If no qualified adjunct instructor is available for full-time work, the College shall endeavor to distribute the hours among existing qualified instructors as overage hours. If no qualified instructors are available for overage hours, the College may hire a temporary instructor from outside the bargaining unit. Such temporary instructors shall be paid no less than the minimum rate for the full-time position but shall not receive benefits during the period of temporary employment. In the event that the temporary instructor receives a permanent appointment, the period of temporary employment shall be credited toward his/her seniority.

    d.    The College shall notify the Union of any temporary hires, including the name, rate of pay, dates of hire, the reason for the temporary hire, and the nature of the special project, if applicable. In the event that a temporary faculty vacancy will last over 30 days, the College shall post the vacancy no less than 30 days in advance, or as soon as practicable in the circumstances. Postings shall include the department, subject matter, and projected dates of the vacancy and a copy shall be forwarded to the Union at the time of the posting.

    11.    <u>Sabbaticals</u>.

Faculty who receive a Sabbatical must return to TCI for one year.

    12.    <u>Distribution of Leads in the Admissions Department</u>.

    a.    <u>Equitable Distribution</u>.

    Leads shall be equitably distributed.

    b.    <u>Lead Protection Policy</u>.

3

[Type text]

Admissions representatives have 10 days from the initiating date to work a lead provided to them.  After that time period, any lead can be re-circulated and reassigned.  In the case of a duplicate lead, the admissions representative who takes the interview receives the lead and the student.  This policy can be modified during peak periods of registration, consistent with the principle of equitable distribution of leads.

c.    Reports.

All admissions representatives will receive a weekly report showing the number and types of leads assigned to each representative and the conversion rate for each representative.

13.    Incentive Plan for Admissions Representatives.

1.    TCI will create a federally acceptable incentive plan.  The incentive plan will be placed into effect January 2008 for any semester that exceeds the total number of students completing 24 credits when compared to the same semester of the previous year by the amounts specified below.  For example: students starting in the A71 semester will be measured after the A73 semester to count those earning 24 credits. This count would be compared to the A81 students and the corresponding count of those students who complete 24 credits after A83.

2.    The minimum size of the incentive pool shall be $5,000 per semester.  The size of the incentive pool shall be $5,000 if there is an increase of 5% in the total number of students completing 24 credits per semester, and $15,000 if there is an increase of 10%.

3.    The incentive pool will be divided among the admissions representatives as follows: At the completion of three semesters, the College will determine the number of students who have achieved 24 credits.  The top three-quarters of the admissions representatives will be eligible for the incentive program. Representatives will be ranked in order of the total number of students each representative has enrolled who have achieved 24 credits within the past three semesters. The top 25% of the representatives will equally share 45% of the bonus money with the remainder of the bonus eligible representatives equally sharing 55% of the bonus money. The bottom 25% of the representatives will not receive an incentive award.

4.    If the College reorganizes the Admissions Department in a way that makes it impractical to continue an individual incentive plan, the College will convert the incentive plan into a group incentive plan.  The same minimum incentive pool size and thresholds for payouts shall be maintained in any such group incentive plan.

4

[Type text]

14.    Admissions Performance Standard.

a.    Registrations.

Admissions representatives whose registrations are below 90% of the department average for two out of any three consecutive admissions recruitment periods (*i.e.*, the 14 weeks ending one week after the start of classes) shall be subject to discharge. The College will issue a probationary letter as well as provide individualized counseling and training to any representative who is below 90% of the department average to assist the employee in raising his/her productivity. In calculating the department average, an adjustment shall be made—along the lines described below with regard to enrollments—to eliminate the effect of voluntary overtime on total registrations. Where there are extensive absences (that are authorized by the collective bargaining agreement) during any admissions recruitment period, management shall act reasonably in determining whether it would be equitable to apply the above standard for that admissions recruitment period.

b.    Enrollments.

Each admissions recruitment period shall be broken into 7 two-week periods. An admissions representative who fails to achieve at least 90% of the department average enrollments in any 4 of these 7 two-week periods—in two of any three consecutive admissions recruitment periods—may be discharged at the end of the second admissions recruitment period in which the admissions representative fails to achieve 90% of the department average enrollments in at least 4 of these two-week periods, except that: if an admissions representative meets or exceeds 90% of the department average post purge registrations for the semester, that shall erase the effect of the failure to achieve the enrollment standard during the applicable admissions recruitment period.

In determining the department average enrollments, any employee who has worked voluntary overtime in one of the two-week periods described above shall have his/her enrollments reduced proportionately for that two-week period to reflect what the employee would have produced had the employee worked only his/her regular hours and mandatory overtime (and no voluntary overtime) during that two-week period. The calculation of such an employee's enrollments during regular work hours and mandatory overtime for the two-week period will be as follows:

(Regular hours plus mandatory OT) divided by (voluntary hours plus regular hours plus mandatory OT) X actual enrollments = proportionately reduced enrollments. Regardless of the preceding, in measuring an individual representative's enrollment numbers against the department average, all of the individual's enrollments will be counted including any achieved while working voluntary overtime.

c.    To ensure that admissions representatives have a meaningful understanding of the goals for each enrollment period, all admissions representatives will be given a weekly run rate plan. The run rate will be a calculation of TCI's budgeted goal divided by the number of admissions representatives, and then divided by week,

5

[Type text]

month and semester. The budgeted goal will use historic data plus the increase needed to make TCI's start goal the week before classes start.

     d.    The above standards shall go into effect beginning with the fall 2007 admissions recruitment period, except that for fall 2007 only, three out of five two-week periods (instead of four out of seven) shall be considered.

     e.    In administering b through d above, TCI will take into account legitimate absences (*i.e.*, absences authorized by the collective bargaining agreement), as follows:

     i.    If an employee is absent for four or more days in a two-week period, that period will not be treated as a two-week period in which the employee failed to meet the 90% enrollment standard.

     ii.    If an employee is absent for one to three days in a two-week period, the employee's enrollments for that period shall be increased proportionately to determine if the employee achieved the 90% standard. Thus, for example, if an employee is absent for two of ten days in a two-week period, the employee's enrollments will be multiplied by 10/8 to determine if he/she has met the 90% standard.

15.    <u>High School Recruiters</u>.

High school recruiters shall be classified as pay grade 5.

16.    <u>Registration Advising</u>. TCI will notify all faculty members with regard to registration advising positions each semester. TCI will offer training to all faculty members who express an interest in such a position in response to the notification. Interested faculty will be selected in seniority order. At its discretion, TCI may refuse to renew a faculty member in such a position due to inadequate performance. TCI may continue to use student workers in these positions as it has in the past.

17.    <u>Class Size Overages</u>. The parties will establish a pilot project in three sections each of remedial English courses 081 and 082, and in three sections of remedial math course 099. In round-robin seniority order, up to three faculty members teaching these courses will be permitted to decline to teach a section in which there is an overage. An assessment of the pilot will be undertaken by the Labor/Management Committee. If the Labor/Management Committee determines that the pilot is successful, the program will be phased in, to the extent feasible, to other remedial courses, and then into other parts of the curriculum.

18.    <u>Limitation on Class Preparations</u>. TCI will do its best to schedule no more than five class preparations for full-time faculty in their base load. To allow for the constraints and contingencies of scheduling, up to 25% of the full-time faculty can receive a base load with six course preparations. If this proportion is exceeded, any full-time faculty member with more than five course preparations in their base load will receive $200 for each extra preparation, payable at the end of the semester.

6

[Type text]

19.    Severance Pay.  Employees who are laid off shall, after a 45-day waiting period, receive one week's severance pay for each year of service at the College, capped at 10 weeks.  Laid-off employees who have successfully completed their probationary period shall receive a minimum of one week's severance pay.

20.    Record Retention.  The record retention provisions of the collective bargaining agreements shall be amended to provide that disciplinary actions for sexual harassment shall be retained in a personnel file for three years.  Where a disciplinary action for sexual harassment occurs within three years of a subsequent disciplinary action for sexual harassment, the older discipline will not be removed from the file until a full three years passes with no discipline for sexual harassment.  All other disciplinary actions shall be retained for 18 months.

21.    Union Rights.

An evening steward will receive three hours of paid release time per week for the purpose of representing evening faculty.

22.    Zero Tolerance for Violence.

a.    Beginning with the 2008-2009 Student Handbook, there will be a separate statement in the handbook reflecting TCI's zero tolerance for violence policy.

b.    TCI shall include a statement during orientation reflecting the zero tolerance for violence policy, and shall post the statement on the TV monitors in the building.

23.    Tuition Reimbursement.

The cap for full-time employees will be raised to $6,375.  The cap for part-time employees will be raised to $3,188.  All fees will be paid by TCI.

24.    Middle States Committees.

Annually, committee chairs and secretaries shall receive their normal hourly rate of pay for time spent at committee meetings, capped at $3,000 per year.  Steering committee members who are not chairs or secretaries shall receive their regular hourly rate of pay for time spent at steering committee meetings, capped at $1,500 per year.

25.    Academic Deans.

Academic Deans and other qualified personnel may be scheduled to perform bargaining unit work up to one full base load per week, provided that such assignment will not cause a lay off.  The internal five-hour bargaining unit work limitation set forth in Article 3, Section C.2 of the collective bargaining agreement is eliminated.

7

[Type text]

26.    <u>Probation Period for Admissions</u>.

Whenever an admissions representative begins employment, the end date of his/her probation period shall be no sooner than the end of his/her first full semester, but in no event will the probation period be less than six months.

27.    <u>Appendix A</u>.

Appendix A. II. B. will be amended to allow use of alcoholic beverages at approved events.

28.    <u>Non-Discrimination</u>.

Include age, disability, sexual orientation and gender identity and expression as protected categories.

29.    <u>Housekeeping (Faculty Agreement)</u>.

a.   Article 1.17b – "outcoming" to be changed to "outgoing."
b.   Article 10 G - remove 19 hours.
c.   Article 10 H – change course names and codes and "1/20" to "pro-rata."
d.   Article 10 I b – change "Prep Tech" to "Remedial."

30.    <u>Bereavement Leave</u>.

a.    Bereavement leave shall be granted for domestic partners, with proper verification.

b.    Bereavement leave for evening faculty shall be increased to three days.

8

[Type text]

31.    <u>Voting for Department Chair.</u>

Day and evening faculty may vote for department chairs.

32.    <u>Integration of Clerical Pay Chart.</u>

The chart showing pay grades and minimums for the clerical bargaining unit shall be integrated into the body of the clerical collective bargaining agreement.

33.    <u>Transfer Between Day College and Evening College.</u>

a.    Article 14 G1: "twelve units" should be updated to "nine units."
b.    Article 14 G2: "four units" should be updated to "three units."

T.O.P. LOCAL 2110, UAW,
AFL-CIO
(Subject to ratification by the membership of TCI)

TECHNICAL CAREER INSTITUTES,
INC.
(Subject to ratification by TCI Board of Directors)

H:\COOPER\TCI\CBA\MOA 101007.DOC

# EXHIBIT 7



technical career institutes, inc.
320 west 31st street
new york, ny 10001
212.594.4000
www.tcicollege.edu

## Men's Soccer Coach
### 2006

Mr. Ora Melie will serve as Head Coach of the TCI Men's Division III Soccer Team from September 1, 2006 through November 24, 2006 under the following terms and conditions:

1.  Mr. Melie will be responsible for all activities related to the organization and operation of the team including but not restricted to the following:

    a) Recruiting student / athletes for the Men's Soccer Program
    b) Maintain lists of interested prospects
    c) Follow up with interested prospect for the purpose of enrolling them in TCI in the summer and fall term
    d) Assist with transportation of players to and from games and practices
    e) Assist the Athletic Director with the preparation of all reports required of the National Junior College Athletic Association
    f) Assist the Athletic Director in ensuring that team members are meeting all the requirements of academic eligibility according to the regulations of the NJCAA
    g) Obtaining and maintaining all equipment, uniforms, etc. associated with the team
    h) Additional related duties assigned by the Athletic Director

2.  Mr. Melie compensation will be $2,500.00 during the term of this agreement to be paid in 7 equal installments every two weeks beginning on the pay date of Friday, September 1, 2006 and ending on the pay date of November 24, 2006.

3.  Mr. Melie must conduct himself in a highly professional manner at all times as a representative of TCI.

4.  It is acknowledged that the position of Head Coach is not a union position

5.  This agreement expires November 31, 2006.

| | | |
|---|---|---|
| James F. Melville Jr. Ph.D | Pernell Hosier | Ora Melie |
| President | Athletic Director | Head Soccer Coach |
| 8/9/06 | 8/9/06 | 8/9/06 |
| Date | Date | Date |

CC:    Karen Romaine
       Ellis Waterton

# EXHIBIT 8

**tci**

COLLEGE OF TECHNOLOGY

technical career institutes, inc.
320 west 31st street
new york, ny 10001
212.594.4000
www.tcicollege.edu

August 29, 2006

Mr. Ora Melie
62 Danforth Avenue
Jersey City, NJ 07305

Dear Mr. Melie:

The final assessment of TCI's Fall, 2006 schedule indicates that there will not be enough sections running to offer classes to all of our faculty. Courses have been staffed in accord with the union's rules regarding seniority. Unfortunately, you will be among the faculty not receiving a full-time teaching schedule for the upcoming term.

Your many services to TCI have been much appreciated. We will notify you if and when the situation changes.

Sincerely,

Dr. Peter Slater
Vice President and Provost for Academic Affairs

cc:    J. Melville
       P. James
       M. Rosenstein
       Union Stewards
       Personnel File

# EXHIBIT 9



**technical career institutes, inc.**
320 west 31st street
new york, ny 10001
212.594.4000
www.tcicollege.edu

To Whom It May Concern:

October 5, 2006

As of October 5, 2006 <u>Mr. Ora Melie</u> is no longer our men's soccer coach.
Please stop all payment. Mr. Melie's contract has been terminated.

Pernell Hosier
Athletic Director

# EXHIBIT 10

# PAYROLL CHANGE NOTICE

TO: ACCOUNTING DEPARTMENT

Please enter the following change(s) in your records to take

Effect __1|18|2007__
     *(Date)*

Employee __Ora Mllie__     ☐ Full Time   ☐ Part Time

Title _____

Dept. _____

## THE CHANGE(S)

| *check all applicable boxes* |
| --- |

☐ Salary Increase:  From $ _____ Per _____ To $ _____ Per _____

☐ Dept. Transfer:  From _____ To _____

☐ Hired: Starting Salary  $ _____ /year  or  $ _____ /week  and or  $ _____ /hour

☐ Promoted To _____
                              *(Title)*

☐ Resigned

☐ Terminated

☐ Graduated               *Per memo*

☐ Leave of absence from _____ until _____
                         *(Date)*              *(Date)*            *ok*

☐ Other _____

_____

Remarks: ___ *Learning ctr + Teaching to make up base load*

_____

_____

AUTHORIZED SIGNATURES _____ DATE _____

_____ DATE _____

_____ DATE _____

**Erves, Shirley**

| | |
|---|---|
| **From:** | Melville, James |
| **Sent:** | Wednesday, March 14, 2007 12:20 PM |
| **To:** | Erves, Shirley |
| **Subject:** | RE: |

The first day of the semester was Jan 18th.

---

**From:** Erves, Shirley
**Sent:** Wednesday, March 14, 2007 12:13 PM
**To:** Melville, James
**Subject:** RE:

I need the retro date to pay him the difference in pay. Thanks

*Shirley Erves*
**HR/Pyroll Director**

**Technical Career Institutes, Inc.**
**320 W. 31st Street**
**New York, NY  10001**
**212 594.4000 ext. 5265**
Fax: 212 330.0896
serves@tcicollege.edu

---

**From:** Melville, James
**Sent:** Wednesday, March 14, 2007 12:02 PM
**To:** Erves, Shirley
**Subject:**

Shirley, please return Mr. Melie to full time status. Calculate the salary differential between his current pay and his regular full time pay. We owe him the difference. Thank you.

3/14/2007

# EXHIBIT 11

# PAYROLL CHANGE NOTICE

TO: ACCOUNTING DEPARTMENT

Please enter the following change(s) in your records to take

Effect ___5/10/07___
_____(Date)

Employee _Ora Medley_____  ☐ Full Time  ☑ Part Time

Title _Instructor_____

Dept. _____

## THE CHANGE(S)

| *check all applicable boxes* |
|---|

☐ Salary Increase:  From $ _____ Per _____  To $ _____ Per _____

☐ Dept. Transfer: From _____ To _____

☐ Hired: Starting Salary $ _____ /year  or  $ _____ /week  and or  $ _____ /hour

☐ Promoted To _____
                              (Title)

☐ Resigned

☐ Terminated

☐ Graduated

☐ Leave of absence from _____ until _____
                              (Date)                      (Date)

☒ Other _From full-time status to adjunct._

_____

_____

Remarks: _____

_____

_____

_____

AUTHORIZED SIGNATURES _____  DATE _5/23/07_

_____  DATE _____

_____  DATE _5/23/07_

*WHITE – ACCOUNTING*      *YELLOW – PERSONNEL*      *PINK – DEPT. MGR.*

# EXHIBIT 12



technical career institutes, inc.
320 west 31st street
new york, ny 10001
212-594-4000
www.tcicollege.edu

# PAYROLL CHANGE NOTICE

TO: ACCOUNTING DEPARTMENT

Please enter the following change(s) in your records to take

Effect _1/14/08_
(Date)

Employee _Ora Delie_    ☐ Full Time    ☐ Part Time

Title _Faculty_

Dept. _Academics_

## THE CHANGE(S)

*check all applicable boxes*

☐ Salary Increase: From $ _Part-time_ _____ Per _____ To $ _Full time_ _____ Per _____

☐ Dept. Transfer: From _____ To _____ /week and or $ _____ /hour

☐ Hired: Starting Salary $ _____ /year or $ _____

☐ Promoted To _____ (Title)

☐ Resigned

☐ Terminated

☐ Graduated

☐ Leave of absence from _____ until _____
                         (Date)          (Date)

☒ Other: _____

_____

Remarks: _____

_____

AUTHORIZED SIGNATURES _Nancy James_    DATE _1/14/08_

                                       DATE _____

                                       DATE _____

WHITE - ACCOUNTING          YELLOW - PERSONNEL          PINK-DEPT MGR.