UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ORA MELIE,                                               :
                            Plaintiff,       :        08 Civ. 5226 (HB)
                                      :
            -against-                                  :        OPINION & ORDER
                                      :
EVCI/TCI COLLEGE ADMINISTRATION,                         :
PETER SLATER, SAYED AKHAVI, and                          :
NANNETTE JACOBS,                                         :
                            Defendants.      :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

       Plaintiff Ora Melie ("Plaintiff" or "Melie") brought this action alleging (1) discrimination based on his race and national origin in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981; (2) retaliation in violation of Title VII and § 1981; and (3) wrongful termination in violation of section 510 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.[1]  Defendants EVCI/TCI College Administration[2] ("TCI" or the "College"), Peter Slater ("Slater"), Sayed Akhavi ("Akhavi") and Nannette Jacobs ("Jacobs") (collectively, "Defendants") move for summary judgment on each of Plaintiff's claims.[3]  For the reasons set forth below, Defendants' motion is granted.

## I.  FACTUAL BACKGROUND

       TCI College is a two-year technical school located in New York City, and offers continuing technical education in fields such as website design, health information technology,

---

[1] Plaintiff's Amended Complaint makes no specific allegations of violation of the New York State Human Rights Law ("NYSHRL") or the New York City Human Rights Law ("NYCHRL"), except to allege that this Court has pendant jurisdiction over "all related claims under New York law."  Am. Compl. ¶ 2.  Viewing the Complaint in the light most favorable to the Plaintiff, the Court will address all possible claims under the NYSHRL and NYCHRL.  *See, e.g.*, *Blake v. Bronx Lebanon Hosp. Ctr.*, No. 02 Civ. 3827 (DAB), 2007 U.S. Dist. LEXIS 75770, at *29 (S.D.N.Y. Oct. 10, 2007) ("The same standards that apply to Title VII and Section 1981 employment discrimination claims are applicable to claims brought under the [NYSHRL] and the [NYCHRL].") (citing *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000)).

[2] Plaintiff incorrectly named the College in his Amended Complaint as "EVCI/TCI College Administration."  The correct name of the College is the Technical Career Institutes, Inc. ("TCI").

[3] Included among the many circuitous arguments of Melie's opposition to Defendants' motion, he attempts to cross-move for summary judgment based on the fact that Defendants have not yet filed an answer in this action, and therefore they are "in default."  Putting aside that Plaintiff's motion is procedurally improper under the Local Rules, to say nothing of the lack of any supporting case law cited therein, the Court notes that in this case, Defendants made a pre-answer motion to dismiss under Rule 12(b)(6), which they then withdrew with the Court's permission and converted into a motion for summary judgment.  Plaintiff cites no support for the contention that the Defendants were required to file an answer in the interim.  Accordingly, to the extent Plaintiff moved this court for summary judgment in his favor, such motion is denied.

and electronic engineering technology.  Slater is the Provost and Vice President for Academic Affairs of the College; Akhavi is Dean of Technology in the Engineering and Information Technologies Division; and Jacobs is a member of the College's faculty, and also serves as Unit Chairperson and Chief Union Shop Steward for Local 2110 UAW.  Plaintiff was hired in May 2001 as an instructor of Computer Networking in the Engineering Division of the College.  The College is a party to a collective bargaining agreement ("CBA") with Local 2110 of the UAW (the "Union"), of which Plaintiff is a member, and which represents full-time and part-time faculty members and clerical employees at the College.  At all times during Plaintiff's employment at the College, the terms and conditions of his employment have been subject to the CBA.[4]

In his Amended Complaint and EEOC charges, Plaintiff outlines several incidents over several years that he claims were motivated by race or national origin discrimination.  First, in September 2005, shortly after EVCI purchased TCI College, Dr. John J. McGrath, President of EVCI, held a meeting with College faculty in which he reflected his intention and desire to increase minority enrollment.  During his remarks, McGrath bemoaned the fact that in the near future most back males of 35 years of age would have spent time in prison.  Plaintiff alleges that this remark was discriminatory because Plaintiff was the only black male faculty member in attendance.  Understandably, he took a different position at his deposition and admits in his Rule 56 Statement, that McGrath was not speaking directly to him when he made this comment, and he did not take personal offense at McGrath's comment.  In another far-fetched charge of discrimination, Plaintiff alleges that Jacobs, as the College's Union representative, acted in concert with Akhavi to hire a less-qualified faculty member to head faculty development training.  At his deposition, Plaintiff acknowledged that although he objected to Mr. Fortuna's appointment, he had no facts to support an allegation that Mr. Fortuna's appointment included an iota of race or nationality-based discrimination.  Indeed, in his EEOC charge, Plaintiff acknowledges that it was Chairman Roy Lau, and not Defendants Jacobs or Akhavi, who made the decision to appoint Mr. Fortuna to the faculty training position.

---

[4] Plaintiff's Rule 56 Statement alleges that in addition to the CBA, his employment is also subject to a separate contract that guarantees a full-time position with full benefits and salary of $55,000 per annum at an hourly rate of $63.00 per hour for a forty-hour week in Computer Networking in the College's Engineering Division.  However, the document that Plaintiff references in support of this fact appears not to be an employment contract, but rather a letter confirming an offer of employment.  Moreover, Plaintiff may not rely on this document on his opposition to summary judgment, as he did not provide a copy of it to Defendants in discovery.  *See, e.g.*, *Schratz v. Potter*, 03-CV-6610 CJS, 2008 U.S. Dist. LEXIS 102954, at *21-24 (W.D.N.Y. Dec. 19, 2008); *Stengel v. Black*, 03 Civ. 0495 (GEL), 2004 U.S. Dist. LEXIS 17398, at *13 (S.D.N.Y. Aug. 30, 2004).  Finally, Plaintiff failed to respond to Defendants' request to admit that no individual contract of employment exists between Plaintiff and the College and that the terms and conditions of his employment are governed by the CBA.  By failing to respond to the request to admit, this statement is deemed admitted.  See Fed. R. Civ. P. 36(a)(3).

A third charge grew out of an incident that occurred in approximately March 2006, when Plaintiff engaged in a discussion with Defendant Akhavi in which he expressed his dissatisfaction with an alleged under-payment for a course outline he had written. Although the specific content of the conversation is not clear from either party's rendition of the facts, it appears that at some point, Plaintiff made mention of guns. In his incident report, Akhavi stated that in complaining about his compensation, Plaintiff stated "No, this is serious, I have a gun and will use it if I have to . . . it shoots seven rounds a minute." Plaintiff, on the other hand, characterizes his comments simply as a figure of speech to the effect that he had "big guns" looking into the payment issue. After Akhavi filed his report, the New York City Police Department interviewed Plaintiff. The police asked Plaintiff whether he had a gun, and Plaintiff responded that he did not. Plaintiff was not placed under arrest, and the police took no further action. In April 2006, Slater issued a written warning to Plaintiff for his use of language that could be construed as menacing, but no further disciplinary action was taken following the "gun incident." No allegation claims that whatever happened was even tainted with discriminatory animus.

A fourth allegation took place in June 2006. Plaintiff had a meeting with Defendant Slater to discuss Plaintiff's request to attend a seminar to be held in Boston. During that meeting, Plaintiff alleges that Slater told the Plaintiff that he had a propensity for violence, which Slater attributed to his Nigerian nationality; Plaintiff paraphrased Slater's comments as follows: "Nigeria was a place of unrest where people are always killing each other." Plaintiff does not recall the exact words that Slater used.

Moving right along, at the beginning of August 2006, Dean Pansy James, Vice President of Academic Administration and Student Development, determined that anticipated enrollment in the Networking major in the Engineering and Information Technology Division of the College would be lower than in previous semesters and that cuts in faculty would need to be made.[5] In accordance with the terms of the CBA, the College determined that the three faculty members with the least seniority would be reduced from full-time to part-time course loads. These faculty members were Dr. Shah Alam, Plaintiff, and Mr. Vijilio Morales, in order of descending seniority. Dr. Alam was subsequently restored to full-time status. Mr. Morales, who is fluent in Spanish,

---

[5] Plaintiff attempts to controvert Defendants' contention that enrollment rates were expected to decrease by contending that enrollment was actually up and that the College was not in a financially worse condition than it had been the previous Fall Semester and any reduction in work for Plaintiff was a pretext for discrimination. However, Plaintiff cites to documents that are not authenticated, nor were they provided to the Court in opposition to summary judgment or produced to Defendants during discovery, and may not be considered. *See Stengel*, 2004 U.S. Dist. LEXIS 17398 at *13.

was assigned to teach remedial math in the College's Learning Center to students for whom English was a second language.[6]  Plaintiff does not speak or read Spanish, and has no experience teaching remedial math.  Indeed, in his deposition, Plaintiff acknowledged that Mr. Morales was the logical selection to teach remedial math to Spanish-speaking students.[7]

Plaintiff was provided a part-time schedule for the Fall 2006 semester, beginning in September 2006, supplemented with night courses and tutorials.  During that time, Plaintiff did not receive health insurance benefits because, pursuant to the terms of the CBA, health insurance benefits are provided only to full-time faculty.  Plaintiff was restored to his position as a full-time instructor on March 12, 2007, retroactive to January 18, 2007, at which time his health insurance benefits were fully restored.  Although Plaintiff was again reduced to a part-time adjunct position in the Summer 2007 term due to reduced student enrollment in his department, he was restored to his full-time position for the Fall 2007 semester, and has remained a full-time faculty member to this day.  It appears that the period of time for which Plaintiff complains of his "partial layoff" and denial of benefits was for only one semester – from September 2006 to January 2007.

In addition to his teaching responsibilities, Plaintiff had been involved in certain extra curricular activities.  On August 6, 2006, Plaintiff was appointed as coach of the men's soccer team, and was to be compensated $2,500.00 for the season lasting from September 1 through November 24, 2006.  However, Plaintiff was removed from the soccer coach position effective October 5, 2006 by the Athletic Director of the College, Pernell Hosier, a black male.  Plaintiff testified at his deposition that he did not believe that his removal as coach had anything to do with his race or nationality, and that his removal was probably a consequence of Mr. Hosier's dissatisfaction with Plaintiff's performance as a soccer coach.[8]  In addition, Plaintiff was removed

---

[6] Plaintiff disputes the fact that Mr. Morales was assigned to teach remedial math, and asserts instead that he taught English as a Second Language ("ESL"), for which no Spanish language skills are required.  While Plaintiff's Rule 56 Statement provides no support, he does attach a copy of a portion of the College's English and Literature Department's course catalog, which shows no listing for any course in the Arts and Sciences program that fit Defendants' description of the course assigned to Mr. Morales (i.e., remedial math/ESL).  Unfortunately, Plaintiff may not rely on documents that were not produced in discovery.  This was not.  Moreover, even if this document could be relied upon, it is a listing of courses offered through the College's English Department, and not of courses offered through the College's Learning Center, which is the program in which Mr. Morales was assigned.

[7] Once again, Plaintiff attempts to contradict Defendants' statement of undisputed facts (and his own deposition testimony) by citing to a September 25, 2006 email, that was neither attached to his summary judgment papers nor produced in discovery, that purports to illustrate the College's dissatisfaction with Mr. Morales's performance as a Learning Center tutor.  Plaintiff may not use these unsupported, unauthenticated hearsay statements as an end-run around summary judgment.  Plaintiff's contentions in this regard will not be considered.

[8] Although in his Rule 56 Statement, Plaintiff contends that Mr. Hosier "was simply acting upon instructions from defendants," this statement is unsupported by any citation to the record and is apparently pure conjecture.  Thus, Plaintiff has failed adequately to raise a genuine issue of fact in this regard, and I treat this portion of Defendants Rule 56.1 Statement as undisputed for the purposes of this motion.  See *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.

from his volunteer position at open house events for prospective students as a consequence of his disparaging emails regarding his grievances against TCI following his partial layoff.

### III.  PROCEDURAL HISTORY

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 25, 2006 alleging discrimination based on his race and national origin.  On October 23, 2006, the EEOC issued a Dismissal and Notice of Rights to Plaintiff, advising him that any private lawsuit that is filed based on the EEOC charge must be filed in United States District Court within ninety (90) days of his receipt of the notice.  Plaintiff failed to file a federal lawsuit within the 90-day window, but on February 27, 2007, he filed a second charge with the EEOC alleging race, color and national origin discrimination and retaliation.  The EEOC issued a second Dismissal and Notice of Rights on March 5, 2008.  Plaintiff commenced this suit in time on May 30, 2008, and filed an Amended Complaint on August 19, 2008.

### IV.  DISCUSSION

**A.     Legal Standard on a Motion for Summary Judgment**

A motion for summary judgment must be granted if the moving party shows "there is no genuine issue as to any material fact" and it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In showing the existence of a genuine issue of material fact, "the non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  *Golden Pac. Bancorp v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004).  Rather, he "must come forward with evidence sufficient to allow a reasonable jury to find in [his] favor."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in [the] rule, . . . the adverse party's response . . . must set forth

---

2001) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion."); *see also Vinson v. City of New York*, 04 Civ. 7769 (JGK), 2007 U.S. Dist. LEXIS 23550, at *6-7 (S.D.N.Y. Mar. 30, 2007) (citing *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 68 (E.D.N.Y. 2002)).

*specific facts* showing that there is a genuine issue for trial.") (emphasis added). The facts must be presented in a form that would be admissible at trial. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Even if the parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Courts should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). However, summary judgment in a discrimination case "may still be appropriate if the plaintiff relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. New York City Health & Hosps. Corp.*, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007). "Indeed, the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trial – apply no less to discrimination than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("Trial courts should not treat discrimination differently from other ultimate questions of fact.").

## B.     TIMELINESS OF TITLE VII CLAIMS[9]

Title VII requires that a plaintiff file a complaint of discrimination in a United States district court within 90 days of receiving a Notice of Right to Sue from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996); *see also Tubner v. West*, 97-7151, 1998 U.S. App. LEXIS 22347, at *6 (2d Cir. Mar. 27, 1998) (affirming dismissal of Title VII claims as time-barred where federal lawsuit was filed 92 days after receipt of notice of right to sue). As noted, Plaintiff received his first Notice of Right to Sue on October 23, 2006, but did not file suit within 90 days thereafter. Plaintiff subsequently filed a second charge with the EEOC on February 27, 2007, and received a second Notice of Right to Sue on March 5, 2008. Plaintiff argues that his Title VII claims are timely because he filed suit within 90 days of the second notice.

Ordinarily, when a plaintiff has been issued two right-to-sue letters, the time to sue on a Title VII claim runs from the receipt of the first letter, not the second. *E.g.*, *Spencer v. New York City Transit Auth.*, 99-7212, 1999 U.S. App. LEXIS 29682, at *5 (2d Cir. Nov. 5, 1999) (citing *Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986)). However, it remains within

---

[9] As individuals are not subject to liability under Title VII, this Court addresses Plaintiff's Title VII claims only with respect to the allegations against the College. *See Patterson v. County of Oneida,*, 375 F.3d 206, 221 (2d Cir. 2004) (internal citations omitted).

the district court's discretion to determine whether the doctrine of equitable tolling is applicable so as to extend the limitations period on an otherwise time-barred claim. *See Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 81 (2d Cir. 2003); *Reyes v. North Shore-Long Island Jewish Health Sys.*, No. 00-CV-6400 (FB) (SAC), 2002 WL 31180961, at *2 (E.D.N.Y. Oct. 2, 2002). But, equitable tolling is appropriate only in "rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass*, 333 F.3d at 80 (internal quotations, alterations and citations omitted). In determining whether equitable tolling applies, the Court must consider whether the plaintiff has (1) acted with reasonable diligence during the time period he seeks to have tolled, and (2) proved that the circumstances are so extraordinary that the doctrine should be applied. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 F.3d 506, 512 (2d Cir. 2002); *see also Harrison v. Potter*, 323 F. Supp. 2d 593, 601 (S.D.N.Y. 2004).

Here, Plaintiff has presented no reason why his 90-day period in which to file suit after receiving his first right-to-sue letter should be equitably tolled. Thus, Plaintiff is time-barred from bringing suit for any claims based on facts that formed the basis of the October 23rd right-to-sue letter. Defendants argue that Plaintiff's two EEOC charges contained identical allegations based on identical facts. Defendants are mistaken. Although Plaintiff's second EEOC charge does repeat many of the same factual allegations, it also alleges, for the first time, a retaliation claim relating to his removal from the College's open house program. Thus, "the existence of the [first] right-to-sue letter will not preclude the current suit to the extent that plaintiff's Complaint is based on allegations in the second EEOC complaint which did not appear in the first EEOC complaint." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 370 (S.D.N.Y. 2006) (citing *Dahbany-Miraglia v. Queensboro Cmty. Coll.*, No. 03 Civ. 8052 (SAS), 2004 U.S. Dist. LEXIS 9709, at *20 (S.D.N.Y. May 27, 2004)) (alterations omitted). Here, Plaintiff filed the instant lawsuit 86 days after receiving his second right-to-sue letter. Thus, his retaliation claim, the only claim unique to his second EEOC charge, was timely filed.

**C.     RACE AND NATIONAL ORIGIN DISCRIMINATION CLAIMS UNDER § 1981, NYSHRL and NYCHRL**

Unlike Title VII, claims under § 1981, NYSHRL and NYCHRL do not require exhaustion of administrative remedies. *See, e.g.*, *Mincey v. University of Rochester*, 01-CV-6159, 2004 U.S. Dist. LEXIS 17188, at *2 (W.D.N.Y. Aug. 19, 2004) (citing *Hernandez v. Kellwood Co.*, No. 99 Civ. 10015 (LTS)(KNF), 2003 U.S. Dist. LEXIS 17862, at *40 n.4 (S.D.N.Y. Oct. 8, 2003));

7

*Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997).  Therefore, the time-bar that exists under Title VII does not apply to the balance of Plaintiff's discrimination and retaliation claims. Rather, the NYSHRL and NYCHRL are subject to a three-year statute of limitation, *See Butts v. N.Y. City Dep't of Hous. Preservation & Dev.*, No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534, at *24-25 (S.D.N.Y. Jan. 29, 2007); N.Y.C. Admin. Code § 8-502(d), while §1981 is subject to a four-year statute of limitation. *See* 29 U.S.C. § 1658; *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004).  Under these applicable limitations periods, Plaintiff's claims for racial and/or national origin discrimination under § 1981, NYSHRL and NYCHRL are timely.

Plaintiff's remaining claims are analyzed under the burden-shifting approach enunciated in *McDonnell Douglas*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* analysis, the plaintiff must first establish a *prima facie* case of discrimination based on race by demonstrating that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent.  *Id.* at 802.  After the plaintiff has satisfied this "minimal" initial burden, *see, e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004), the burden of going forward shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse employment action.  *Id.*  This showing must be supported by admissible evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.  *Id.*  The plaintiff then has an opportunity to demonstrate that the defendant's reasons were merely a pretext for discrimination.  *Id.*  Throughout this analysis, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Thus, even where plaintiff's evidence is sufficient to raise a question as to one part of the burden-shifting inquiry, the ultimate question is whether there is sufficient evidence for a jury to find that she was discriminated against because of her race.  *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 93-94 (2d Cir. 2001).  Where a plaintiff has not met that burden, summary judgment is appropriate.

In this case, there is no dispute that Melie is in a protected class because he is Black and is originally from Nigeria.  Defendants also do not appear to dispute the fact that Plaintiff was qualified for his position.[10]  Defendants' motion for summary judgment is therefore based on the

---

[10] To the extent Plaintiff's discrimination claim is based on his removal as coach for the men's soccer team, Defendants have adduced some evidence that Plaintiff was not a particularly good coach, and that the Director of Athletics became dissatisfied with his performance.  However, as Defendants have not expressly challenged Plaintiff's

8

contentions that Plaintiff did not suffer any adverse employment action, and that even if he did, such employment action failed to provide discriminatory animus of any kind.

An adverse employment action in the racial and national origin discrimination context is one that constitutes a "materially adverse change in the terms and conditions of employment," examples of which include "termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Thus, to be materially adverse, an employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citation omitted). Defendants argue that Melie suffered no adverse employment action with respect to his claims. I disagree. For example, the reduction of Plaintiff's teaching hours to part-time status constituted a material change not only in his responsibilities, but also came with an attendant decrease in salary and loss of health insurance benefits. That such a change was accomplished in accordance with the CBA does not necessarily immunize it from constituting an adverse employment action.[11] Second, I also find that Plaintiff has raised an issue of fact as to whether his removal as soccer coach was materially adverse. The coaching position imposed additional terms and conditions, including the benefit of an additional $2,500 in compensation for his coaching services for the season. A reasonable jury could well find that the loss of that rather significant supplemental income was a materially adverse change. Finally, the parties agree that Melie was compensated for his position as representative at the open house events at his regular hourly wage, pursuant to which Melie asserts he was paid an additional six hours per open house. A reasonable jury could find that the loss of this additional supplemental income was an adverse employment action.

The fly in the ointment is the lack of a scintilla of proof that any adverse employment action came with discriminatory animus. With respect to his coaching position, while Plaintiff's Rule 56 Statement baldly asserts that Mr. Hosier, the athletic director of the College, "was simply

---

qualifications for the coaching position, and the evidence on that score is equivocal, I will view the evidence in the light most favorable to the Plaintiff and find that he has satisfied the second prong of his *prima facie* case.

[11] Defendants cite *Oliveras v. Garage Management Corp.*, 99 Civ. 1352 (LAP), 2000 U.S. Dist. LEXIS 12928, for the proposition that a change in employment accomplished pursuant to the terms of a CBA are not adverse employment actions. Defendants' reliance on *Oliveras* is misplaced. In that case, the Plaintiff, who brought a claim for religious discrimination, requested a transfer from one garage location to a different location, where his schedule would not interfere with his pastoral duties. The court found that the employer's refusal to honor the transfer request was not an adverse employment action because the result was the plaintiff's continued (full-time) employment under the terms of his CBA. Thus, nothing about the plaintiff's salary, benefits or responsibilities had changed. The facts of *Oliveras* are therefore distinguishable from the facts in this case.

acting upon instructions from defendants," this statement is completely unsupported by the record. Indeed, Plaintiff's own deposition testimony confirmed that Mr. Hosier dismissed Plaintiff from his coaching post, not because of any discriminatory animus or on direction from Defendants, but because Mr. Hosier had become dissatisfied with Plaintiff's performance as coach.  There is no evidence whatsoever to suggest that Defendants had any part in the decision to dismiss Plaintiff as soccer coach.  Likewise, Plaintiff has presented no evidence to support an inference that he was removed as an open house representative as a consequence of his race or national origin.  Rather, it is clear from the undisputed facts that he was removed because the College administration was concerned that he was likely to make disparaging remarks to prospective students, hardly the goodwill ambassador the institution was looking for.[12]

With respect to his claim arising out of the partial layoff, from what little this Court can make of the remainder of Plaintiff's arguments in opposition, much of which is hard to understand and is clearly lacking in support by citations to caselaw or evidence in the record, it appears that Plaintiff contends that taken together, several incidents indicate a discriminatory animus: (a) Dr. McGrath's 2005 speech to faculty; (b) appointment of Mr. Fortuna to the faculty training position; (c) the "gun incident;" (d) Dr. Slater's comment to Plaintiff about Nigeria; and (e) Mr. Morales' reinstatement to a full-time teaching position after the partial layoff went into effect.  I can find no connection between the remarks alleged and discriminatory conduct by the Defendants.

Since none of Plaintiff's arguments raises a genuine issue of material fact as to whether the circumstances surrounding his adverse employment actions gave rise to an inference of discrimination, I find that Plaintiff has failed to establish his *prima facie* claim of discrimination. However, even if he had met the burden to make out the *prima facie* claim, he has failed to raise a genuine issue of material fact as to whether Defendants' reasons for imposing the partial layoff or for removing him as soccer coach were pretextual.  Defendants have made an adequate showing of a legitimate nondiscriminatory purpose for all adverse employment actions: the layoffs were based on an anticipated drop in enrollment in the Networking major in the Engineering and Information Technology Division of the College, Plaintiff's dismissal as soccer coach was based on the athletics director's determination that Plaintiff was not performing his job satisfactorily, and his

---

[12] Indeed, Plaintiff acknowledges that the purpose of his attendance at the open house events was to recruit prospective students to attend the College.  Moreover, Plaintiff contends he received correspondence from Dr. Slater that he, Slater, was "responsible for denying [Melie] the opportunity to do open house work" and that stemmed from Melie's having been openly critical of TCI and its administration.  Melie admitted during his deposition that he had openly criticized the College, including in an email that was copied to numerous faculty members and administrators, including Bernard Price, a member of the College's Admission Department responsible for open houses.

10

removal from the open houses was due to his disparaging remarks about the College. Melie has failed to show that any of these proffered justifications was merely pretextual.[13]

For all the foregoing reasons, I find that Plaintiff has failed to show the existence of any genuine issues of material fact, whether examined separately or together, from which a reasonable jury could find discrimination based on his race and/or national origin. Accordingly, Defendants' motion for summary judgment on Plaintiff's claims of discrimination under § 1981, NYSHRL and NYCHRL is granted.

## D.   RETALIATION CLAIMS UNDER TITLE VII, § 1981, NYSHRL AND NYCHRL

Motions for summary judgment on claims based on retaliation are analyzed under the same burden-shifting framework described above. *E.g.*, *Slattery*, 248 F.3d at 94; *Bastian v. New York City Dep't of Educ.*, 04 Civ. 7450 (PAC), 2008 U.S. Dist. LEXIS 57467, at *20-21 (S.D.N.Y. July 29, 2008). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal relationship between the protected activity and the adverse employment action. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). If the plaintiff satisfies this initial prong, the burden of going forward shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action, and then back to the plaintiff to show the proffered reason is merely pretext for discriminatory animus. *Id.*

In this case, Plaintiff claims that he was retaliated against for having filed complaints against the College and its administration, and that those retaliatory acts were based on discriminatory animus. Specifically, he claims that his partial layoff, his removal as soccer coach and removal from his position as a representative at the College's open house events were in retaliation for his complaints against the school. As noted above, the only conduct that is actionable under Title VII is Melie's removal as open house representative.

---

[13] As to the soccer coach position, as discussed above, Plaintiff's deposition testimony confirms his understanding that Mr. Hosier's dissatisfaction with his performance was the reason behind his dismissal as soccer coach. With respect to his partial layoff, Plaintiff relies on documents neither produced in discovery nor attached to his summary judgment opposition and opines that enrollment was actually on the rise. These assertions are wholly unsupported by any citation to the record. Plaintiff must produce competent proof to support his conclusion, evidence that would be admissible at trial; the Court cannot accept bald assertions and conclusions so as to permit a plaintiff to manufacture a genuine issue of fact for trial. Thus, because the sworn affidavit of Dean James that attests to the legitimate nondiscriminatory purpose for the actions by the College stands uncontroverted, Plaintiff fails to raise a genuine issue of material fact with respect to the College's enrollment rates. Finally, although it is quite plain that Plaintiff disagreed with Defendants' business decisions, the rule in this Circuit is well-established that "it is not the function of a fact-finder to second-guess business decisions" where there is no evidence such decisions are made under a pretext of discrimination. *Dister*, 859 F.2d at 1116; *see also Gaffney v. Department of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 469 (S.D.N.Y. 2008). Plaintiff has not borne his burden in this regard.

With respect to the first prong of the retaliation inquiry, Melie's EEOC charges are certainly sufficiently "protected activities" under the relevant statutes. *See, e.g.*, *Mugavero v. Arms Acres, Inc.*, 03 Civ. 05724 (PGG), 2009 U.S. Dist. LEXIS 30431, at *23-24 & n.8 (S.D.N.Y. Mar. 31, 2009) (collecting cases). As discussed above, each of the actions of which he complains also is sufficiently adverse to satisfy the second prong of the retaliation analysis. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (finding that plaintiff alleging retaliation must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

However, to the extent Plaintiff's retaliation claim is premised on retaliation for having filed an EEOC charge, it must fail as to the partial layoff, as this adverse employment action occurred before he filed his first discrimination charge with the EEOC. Therefore, although filing an EEOC charge is surely a protected activity, such activity cannot serve as the basis of a retaliation claim under the facts of this case. *See, e.g.*, *Ebanks v. New York City Dep't of Envtl. Prot.*, 05-CV-3172 (RRM)(LB), 2009 U.S. Dist. LEXIS 27402, at *19-20 (E.D.N.Y. Mar. 31, 2009) (finding EEOC charge cannot be the cause of adverse employment actions where the adverse employment actions of which plaintiff complained preceded the EEOC filing). Thus, it is impossible for Plaintiff to establish the final prong required to make out a *prima facie* case of retaliation – *i.e.*, causation – for his retaliation claim based on his partial layoff. *Id.* at *20.

Plaintiff argues, however, that his retaliation claims are based not on his EEOC filing, but on his filing of a grievance with his union, which he argues constitutes the protected activity. This argument, too, must fail. First, while Plaintiff has attached several emails to his Union Stewards, he did not produce any such emails in discovery, and thus may not rely on them in opposing Defendants' motion. *See Stengel*, 2004 U.S. Dist. LEXIS 17398 at *13. Second, even if he could rely on these documents, and even if they were to be considered "union grievances" (which is in itself unclear from the face of the documents), Plaintiff's *prima facie* claim would nonetheless fail because his union grievances did not complain of or otherwise mention any allegation of discrimination, *i.e.*, the protected activity. As such, they cannot be considered to constitute a protected activity for purposes of Plaintiff's retaliation claims. *See, e.g.*, *Ebanks*, 2009 U.S. Dist. LEXIS 27402 at *19; *Malaney v. El Al Israel Airlines*, 07 Civ. 8773 (DLC), 2008 U.S. Dist. LEXIS 1709, at *17 (S.D.N.Y. Jan. 4, 2008); *Saviano v. Town of Westport*, 04-CV-522 (RNC), 2007 U.S. Dist. LEXIS 15586, at *9-10 (D. Conn. Mar. 3, 2007); *Vital v. Interfaith Med. Ctr.*, No.

96 CV 363 (FB) (SMG), 2001 U.S. Dist. LEXIS 11554, at *20-21 (E.D.N.Y. July 31, 2001). Thus, on his alternative theory, too, Melie has failed to satisfy the first element of the *prima facie* claim.

This leaves Melie's claims that his removal as soccer coach and open house representative, which both occurred after his first EEOC charge, was in retaliation for having filed that charge. First, although Melie's EEOC charge was filed on September 25, 2006, the Notice of Charge of Discrimination was not issued by the EEOC until October 16, 2006. Thus, it is not clear from the record whether the College or its administration had notice of the EEOC claim at the time of his removal from the extracurricular positions, each of which occurred between September 25 and October 16. As discussed above, if the College was unaware of the EEOC charge at the time it took these actions, there could not have been a causal relationship between the charge and the actions. However, even assuming that the College was aware of the EEOC charge, Melie has failed to adduce any competent admissible evidence of a causal relationship between the filing of the EEOC charge and his removal from these extracurricular positions. Moreover, even if Melie had satisfied that burden, he has failed to provide any evidence as to why the Defendants' proffered reasons for their actions were pretextual. Without any such showing, Plaintiff cannot prevail. Accordingly, Defendants' motion for summary judgment on Plaintiff's retaliation claims is granted.

### E. Wrongful Termination under ERISA § 510

Plaintiff also claims that his partial layoff from full-time to part-time violated section 510 of ERISA, which provides in part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan.]" 29 U.S.C. § 1140. Specifically, Plaintiff alleges that until his partial layoff in 2006, he had been legally entitled to and was receiving benefits in the form of, *inter alia*, health insurance, and that Defendants intentionally interfered with his employment for the wrongful purpose of depriving him of this ERISA-protected benefit. Am. Compl. ¶ 11-12. Defendants move for summary judgment on Plaintiff's ERISA claim because (1) he failed to exhaust administrative remedies, and (2) his claim fails as a matter of law.

As the Second Circuit has held, "[s]ection 510 [of ERISA] was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister*, 859 F.2d at 1111. Thus, "an essential

13

element of plaintiff's proof under the statute is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." *Id.* However, there is "no cause of action under section 510 where the loss of . . . benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, (2d Cir. 1997) (quoting *Dister*, 859 F.2d at 1111). To survive summary judgment, a plaintiff must "adduce some evidence from which a reasonable jury could conclude that [the defendant] terminated his employment with the intent to reduce his . . . benefits." *Id.* Thus, Plaintiff is required to prove more than the single fact that he was deprived of health insurance benefits during his partial layoff; he must demonstrate the College's unlawful purpose in firing him. *Dister*, 859 F.2d at 1111. Because the existence of this specific intent "is critical in § 510 cases – yet is seldom the subject of direct proof," the section 510 inquiry is analyzed under the familiar burden-shifting framework of *McDonnell Douglas*. *Id.* at 1112-13. Thus, Melie must first make out a *prima facie* case under § 510 by showing that he (1) belongs to a protected group, (2) was qualified for his position, and (3) was discharged or denied employment under circumstances that give rise to an inference of discrimination under § 510. The burden of going forward then shifts back to the employer to articulate a legitimate purpose for the employment action, and then back to the plaintiff to demonstrate pretext. Numerous recent district court cases in this Circuit have applied this analysis to grant summary judgment on § 510 claims. *E.g.*, *Cohen v. Federal Express Corp.*, 544 F. Supp. 2d 334 (S.D.N.Y. 2008); *Ozemebhoya v. Edison Parking Corp.*, 02-CV-10057 (BSJ), 2007 U.S. Dist. LEXIS 66552 (S.D.N.Y. Sept. 7, 2007); *Quinby v. WestLB AG*, 04 Civ. 7406 (WHP), 2007 U.S. Dist. LEXIS 28657 (S.D.N.Y. Apr. 19, 2007); *O'Reilly v. Consolidated Edison Co. of N.Y., Inc.*, 374 F. Supp. 2d 278 (E.D.N.Y. 2005), *aff'd*, 173 Fed. Appx. 20 (2d Cir. Mar. 9, 2006); *Ancekewicz v. Long Island Univ.*, 02-CV-4490 (DRH) (ARL), 2005 U.S. Dist. LEXIS 11662 (E.D.N.Y. June 15, 2005); *Hayles v. Advanced Travel Mgmt. Corp.*, 01 CIV. 10017 (BSJ) (DFE), 2003 U.S. Dist. LEXIS 23407 (S.D.N.Y. Jan. 5, 2004).

Similarly, here, Plaintiff has failed to adduce any evidence whatsoever, beyond pure conjecture, that the College reduced his course load to part-time with the intent to reduce his benefits. Rather, the evidence makes plain that the loss of his health insurance was merely an unintended consequence of, rather than a motivation behind, his partial layoff. Even if he had produced sufficient evidence to establish his *prima facie* claim of discrimination under § 510, as discussed above, Plaintiff has failed to show that the College's legitimate non-discriminatory

14

justification for his reduction to part-time was merely a pretext. Accordingly, Defendants' motion for summary judgment as to Plaintiff's ERISA claim is granted.[14]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's Amended Complaint is dismissed. The Clerk of this Court shall enter judgment in favor of the Defendants, close all open motions and remove this matter from my docket.

IT IS SO ORDERED.
New York, New York
May 20, 2009

_____
U.S.D.J.

---

[14] Because I find that Plaintiff's ERISA claim fails as a matter of law, I need not squarely address Defendants' alternative argument that the claim should be dismissed for failure to exhaust administrative remedies. However, it does bear noting that, notwithstanding Defendants' argument that such exhaustion is a prerequisite to bringing his ERISA claim in federal court, the Second Circuit recently has rejected that view, finding instead that exhaustion of administrative remedies is merely an affirmative defense. *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006) ([W]e hold that a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense."); *see also Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 208 (2d Cir. 2007) (finding that *Paese* held failure to exhaust administrative remedies under ERISA "does not deprive courts of subject matter jurisdiction (despite language in prior cases in this Circuit suggesting otherwise) because, *inter alia*, ERISA contains no statutory exhaustion requirement; rather, the requirement is purely a judge-made concept that has little or no bearing on the existence of a claim.") (Straub., J., concurring) (internal citations omitted). Thus, although Defendants cite a "long line of Second Circuit precedent [that] clearly establishes that a claimant must exhaust administrative remedies before an action may be brought," the cases Defendants cite all pre-date the Second Circuit's decision in *Paese*, and therefore fail to reflect the current state of the law on this issue. Accordingly, I would not find that Plaintiff is jurisdictionally barred from bringing his ERISA claim in this Court. It should be noted that, although Defendants have not yet filed an answer in this matter asserting this affirmative defense, "in this Circuit, it is well established that an affirmative defense may be asserted even at summary judgment where the party opposing the affirmative defense has the opportunity to respond effectively to that defense, and has otherwise suffered no prejudice as a result of its late pleading." *Feeney v. Dunham*, No. 06cv310 (DJS), 2007 U.S. Dist. LEXIS 28808, at *9-10 (D. Conn. Apr. 18, 2007) (citing *Astor Holdings Inc. v. Roski*, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003)). However, as noted, because I find that Plaintiff's ERISA claim fails on the merits, I need not address Defendants' alternative argument.

15